# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. 06-391 (GMS) |
| v. | ) ) | |
| HYUNDAI MOTOR AMERICA, BMW OF NORTH AMERICA, LLC and KIA MOTORS AMERICA, INC., | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

## OPENING BRIEF IN SUPPORT OF BMW OF NORTH AMERICA, LLC'S
## MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

*Attorney for Defendant*
*BMW of North America LLC*

Joseph P. Lavelle
Thomas M. Dunham
HOWREY LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

Dated: November 22, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ............................................... 1

NATURE AND STAGE OF RELATED PROCEEDING ....................................... 1

SUMMARY OF ARGUMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 2

ARGUMENT ............................................................................................................. 3

I.   TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN IS
     APPROPRIATE ................................................................................................. 3

     A.   The Governing Legal Principles ................................................................ 3

     B.   The Convenience of the Parties Favors Transfer .................................... 4

     C.   The Convenience of the Third-Party Witnesses Favors Transfer ............ 4

     D.   The Public Interest Factors Favor Transfer ............................................ 7

          1.   Practical Considerations Making Trial Easier,
               Expeditious, or Less Expensive Favor Transfer ............................... 7

          2.   Local Interest in Deciding Local Disputes Favors
               Transfer ............................................................................................. 8

CONCLUSION ......................................................................................................... 8

# TABLE OF AUTHORITIES

## CASES

*3Com Corp. v. D-Link Systems, Inc.*,
   C.A. No. 03-014-GMS, 2003 U.S. Dist. LEXIS 7120
   (D. Del. Apr. 25, 2003)..................................................................................3, 5, 7

*Affymetrix, Inc. v. Synteni, Inc.*,
   28 F. Supp. 2d 192 (D. Del. 1998)................................................................3, 4

*IKOS System, Inc. v. Cadence Design System, Inc.*,
   C.A. No. 02-1335-GMS, 2002 U.S. Dist. LEXIS 20574 (D. Del. Oct.
   21, 2002)....................................................................................................8

*Nilssen v. OSRAM Sylvania, Inc.*,
   C.A. No. 00-695-JJF, 2001 WL. 34368395 (D. Del. May 1, 2001).............4, 5, 7

*Sherwood Medical Co. v. IVAC Medical System, Inc.*,
   C.A. No. 96-305-MMS, 1996 U.S. Dist. LEXIS 18194
   (D. Del. Nov. 25, 1996).................................................................................5

## NATURE AND STAGE OF THE PROCEEDINGS

On June 16, 2006, Automotive Technologies International, Inc. ("ATI") filed this action against Hyundai Motor America, BMW of North America, LLC ("BMWNA") and Kia Motors America, Inc. alleging infringement of eleven patents.   On September 8, 2006, BMWNA filed its Answer and Counterclaims stating that the District of Delaware may not be the most appropriate forum in which this action should proceed and, indeed, it is not.  Prior to the issuance of a scheduling order, BMWNA now moves to transfer this case to the Eastern District of Michigan, the forum in which ATI's claims should be litigated.  This is BMWNA's opening brief in support of its motion to transfer.

## NATURE AND STAGE OF RELATED PROCEEDING

On March 17, 2006, ATI filed another action against Elesys North America, Inc. ("Elesys"), General Motors Corporation, Inc. ("GM"), and American Honda Motor Company, Inc. ("Honda") for alleged infringement of eleven patents (the "ATI/Honda case").  On May 3, 2006, ATI filed a First Amended Complaint, adding two additional patents and withdrawing one of the previously asserted patents.   Therefore, currently there are twelve patents at issue in the ATI/Honda case.  The ATI/Honda case involves ten of the eleven patents that are asserted against the defendants in this case.

## SUMMARY OF ARGUMENT

ATI's filing of this lawsuit in Delaware is a blatant example of inappropriate forum shopping.  Over the past seven years, ATI has made a business out of filing lawsuits in the Eastern District of Michigan against the primary players in the automotive industry – including the defendants in this litigation – without any success.  After seven years of bad luck in Michigan, ATI realized that it should attempt to find a more sympathetic forum.  So, ATI vacated its metropolitan Detroit area office on the eve of filing the ATI/Honda case, seemingly to eliminate any obvious connection to the eastern District of Michigan, and has established Delaware as its new litigation forum.

This Court, however, has very little connection with the parties, the material witnesses or the allegedly-infringing conduct. Most of the witnesses and documents in this case are located in or near Detroit. The principal suppliers of the allegedly infringing product are in Detroit. And although the defendants are incorporated in Delaware, such contact is minimal because it is Delaware's only connection to the case. This Court is not a convenient forum for deciding this case, and keeping the case here would unnecessarily burden the Court and the parties. A more appropriate – and the most logical – forum is the Eastern District of Michigan, which is where this case could and should have been brought in the first place.

Therefore, the Court should exercise its discretion under 28 U.S.C. § 1404(a) to transfer this case to the United States District Court for the Eastern District of Michigan.

## STATEMENT OF FACTS

Prior to the filing of the ATI/Honda case, ATI maintained offices in the Eastern District of Michigan, in Auburn Hills and Romeo, Michigan. (Exhibit 1 hereto, D&B Report). The primary reason ATI opened the only physical office space it ever had in Michigan was for the "convenience" of being able to interact with its customers (automotive suppliers and manufacturers). (Exhibit 2 hereto, Declaration of David Breed). ATI still maintains this Michigan facility despite its decision to vacate the premises on the eve of the lawsuit. ATI's Michigan presence is further confirmed by its listing in the *Michigan Automotive Research & Development Directory* 16 (2d ed. 2005) (Exhibit 3 hereto). Although Plaintiff ATI is a Delaware corporation, ATI does not appear to have any facilities, employees or other physical presence in Delaware. None of ATI's material witnesses is believed to reside in Delaware. Moreover, ATI claims to conduct its research and prototyping activities in the Ukraine. (Exhibit 2 hereto).

Although it is a Delaware limited liability company, BMWNA does not have any other contacts with Delaware. On the other hand, BMWNA's primary supplier of the

accused products, Siemens VDO, has a facility in the Eastern District of Michigan, at Auburn Hills, Michigan. Likewise, a number of the named inventors and other third-party witnesses are located in the Eastern District of Michigan.

## ARGUMENT

### I.     TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN IS APPROPRIATE

#### A.     The Governing Legal Principles

Section 1404(a) provides that a district court may transfer an action to any other district where it could have been brought if warranted by the convenience of the parties and witnesses, and if the proposed transfer is in the interest of justice. 28 U.S.C. § 1404(a); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 196 (D. Del. 1998). It is the movant's burden to establish that a transfer is appropriate. *3Com Corp. v. D-Link Systems, Inc.*, C.A. No. 03-014-GMS, 2003 U.S. Dist. LEXIS 7120, at * 2 (D. Del. Apr. 25, 2003) (Exhibit 4 hereto) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3rd Cir. 1995)). When considering a motion to transfer, a court should determine whether, on balance, the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum. *Id.* The inquiry involves a multi-factor balancing test embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but also any other relevant factors, including certain private and public interests. *Id.* at *2-3.

The private interests include the plaintiff's choice of forum, the defendants' preference, whether the claim arose elsewhere, and the location of the books and records, to the extent they could not be produced in the transferor forum. *Id.* The relevant public interests include the enforceability of the judgment, practical considerations that would make the trial easier, more expeditious or less expensive in the proposed transferee forum, the relative administrative difficulty in the two fora due to court congestion, the

3

local interest in deciding local controversies at home, and any relevant public policies of the fora. *Id.* at *3.

Finally, while the plaintiffs choice of forum is a "paramount consideration" that "should not be lightly disturbed", the weaker the connection between the selected forum and either the plaintiff or the subject matter of the lawsuit, the easier it is for the defendant to show the requisite inconvenience that will tip the balance of convenience in favor of transfer. *See Affymetrix Inc.*, 28 F.Supp.2d at 198-199.

**B.    The Convenience of the Parties Favors Transfer**

Although it is a Delaware corporation, ATI's connection with this forum ends there. Moreover, Delaware has no special connection with the subject matter of this lawsuit -- the alleged infringement of products manufactured, tested, installed and sold by the automotive industry. None of the relevant documents or likely party witnesses is in Delaware.

This is not a case where BMWNA is merely seeking to shift the inconveniences. There is no other more convenient forum than the Eastern District of Michigan. Detroit is the hub of the U.S. auto industry. ATI's representatives certainly travel to the Eastern District of Michigan on a frequent basis. In addition, during 1999-2004, ATI filed no less than five patent infringement lawsuits in the Eastern District of Michigan, including one against BMWNA. ATI's litigation history confirms that ATI, rather than viewing the Eastern District of Michigan as inconvenient, considers it the *most* convenient forum for the litigation of its patent disputes.

**C.    The Convenience of the Third-Party Witnesses Favors Transfer**

The convenience of third-party witnesses is one of the most significant factors in determining whether a case should be transferred. *Nilssen v. OSRAM Sylvania, Inc.*, No. 00-695-JJF, 2001 WL 34368395, at *2 (D. Del. May 1, 2001) (Exhibit 5 hereto).

4

"'Convenience of the witnesses' is a phrase encompassing both the geographic location of the witnesses relative to the forum and an 'interest of justice' consideration," *i.e.*, whether the witnesses are subject to compulsory process in either of the competing fora. *Sherwood Medical Co. v. IVAC Medical Sys., Inc.*, C.A. No. 96-305-MMS, 1996 U.S. Dist. LEXIS 18194, at *10 (D. Del. Nov. 25, 1996) (Exhibit 6 hereto).

In the present case, none of the material third-party witnesses is presently believed to be located in Delaware, and, therefore, they are not subject to compulsory process here. By comparison, many of the likely third-party witnesses are located in and around the Eastern District of Michigan. Several are subject to compulsory process there. And, with respect to those witnesses who are not subject to compulsory process, the relative convenience of the Eastern District of Michigan could very well play a role in securing their voluntary attendance at trial. Thus, this factor weighs very heavily in favor of transfer. *See Nilssen*, 2001 WL 34368395 at *3 (noting that video-taped depositions are not an adequate substitute for live testimony when conducting a transfer analysis).

Two of the seven named inventors – Morin and Xu – reside in the Eastern District of Michigan.[1] Accordingly, they are subject to compulsory process in the Eastern District of Michigan. *See 3Com*, 2003 U.S. Dist. LEXIS 7120, at *6 (granting motion to transfer where one of the named inventors resided in the transferee district); *Sherwood*, 1996 U.S. Dist LEXIS 18194, at *4 (granting motion to transfer where three named inventors resided in transferee forum). Not only are they subject to compulsory process there, but also the Eastern District of Michigan is undoubtedly more convenient for these third-party witnesses. *See 3Com*, 2003 U.S. Dist. LEXIS at *6 (it is relatively more convenient for witnesses to travel to a court in the state of their residence or employment).

---

[1]    There are total of seven different named inventors on the eleven patents in suit. With the exception of David Breed (who is also the President of ATI), six of the named inventors are believed to be non-party witnesses.

With respect to the four third-party inventors who are not subject to compulsory process, the Eastern District of Michigan is a more convenient forum for at least three of them. Inventors Chen, Duvall, and Johnson reside closer to the Eastern District of Michigan than they do to the District of Delaware. Chen lives in Windsor, Ontario – less than ten miles from the courthouse in the Eastern District of Michigan. Duvall lives in Reed Springs, Missouri. And Johnson lives in Chowchilla, California.[2]

The relative driving distances for the third-party, inventor witnesses are set forth below:

| Name and address | Distance from Delaware Court | Distance form E. District MI Court (Detroit) |
|---|---|---|
| Jeffrey L. Morin 911 Saint Johns Blvd. Lincoln Park, MI 48146 | 565.04 | 12.79 miles |
| Kunhong Xu 2792 Broadmoor Dr. Rochester Hills, MI 48309 | 604.43 miles | 29.40 miles |
| Tie-Qi chen Cousineau Road Windsor, ON N9H CANADA | 580.75 miles | 9.73 miles |
| Wilbur Duvall Reed Springs, MO | 1134.31 miles | 804.83 miles |
| Wendell C. Johnson 210 Riverside Ave. Chowchilla, CA 93610 | 2867.80 miles | 2443.01 miles |
| Michael E. Kussul Kiev (Kyiv), Ukraine | 4780 miles (from escapeartist.com) | 4891 miles (from escapeartist.com) |

*See* Exhibits 7, 8 hereto.

Other likely third-party witnesses also reside in the Eastern District of Michigan, and, therefore, are subject to compulsory process there. For example, Autoliv, Inc. is a licensee under at least some of the patents in suit. Autoliv is a Swedish company with a

---

[2]   The remaining named inventor, Kussul, apparently resides in Kiev, Ukraine. In Mr. Kussel's case, neither the Eastern District of Michigan nor this district are likely convenient for him.

North American Headquarters in the Eastern District of Michigan, at Auburn Hills, Michigan. *See* Opening Brief in Support of Defendants' Joint Motion to Transfer Pursuant to 28 U.S.C. §1404(a), C.A. No. 06-187-GMS. The Autoliv witnesses are material on the issue of a reasonably royalty. *See Nilssen*, 2001 WL 34368395 at *3 (licensee of patents in suit will provide relevant testimony about a reasonable royalty). The court in the Eastern District of Michigan can compel a corporate representative from Autoliv to appear live at trial even if ATI's dealings with Autoliv took place with Swedish personnel. *See 3COM*, 20003 LEXIS 7120, at *2.

In summary, the convenience of the witnesses undoubtedly weighs very strongly in favor of transfer to the Eastern District of Michigan.

### D.    The Public Interest Factors Favor Transfer

#### 1.    Practical Considerations Making Trial Easier, Expeditious, or Less Expensive Favor Transfer

The trial of this matter in the Eastern District of Michigan will be less expensive and more expeditious than if this case remains in this forum.

BMWNA has identified many witnesses who are located in and around the Eastern District Michigan. The cost (both travel and lodging) of obtaining the attendance of these witnesses would be substantially greater if these witnesses were required to travel to the District of Delaware. Moreover, because of their closer proximity to the court in the Eastern District of Michigan, their travel times will be less. Also, these witnesses will be available on shorter notice, which will greatly simplify the logistics of coordinating the sequence and timing of these witnesses at trial. In addition, the Eastern District of Michigan is familiar with ATI and has relevant experience with its sensor-related patents.

2.    **Local Interest in Deciding Local Disputes Favors Transfer**

The citizens of the Eastern District of Michigan have a strong local interest in resolving this controversy due to the nature of this dispute. This dispute involves the U.S. auto industry, which is centered in Detroit. It involves significant players in that industry. *See IKOS Sys., Inc. v. Cadence Design Sys., Inc.*, C.A. No. 02-1335-GMS, 2002 U.S. Dist. 20574 at *5 (D. Del. Oct. 21, 2002) (Exhibit 9 hereto) (in granting motion to transfer to the Northern District of California, this Court noted that "while patent disputes are often not properly characterized as 'local' in nature or otherwise unique to a particular locale [citation omitted]", one factor favoring transfer was that the relevant industry, the Electric Design Automotive Industry, "is apparently located in Silicon Valley.").

There is no corresponding local interest in Delaware. As a result, this factor also weighs heavily in favor of transferring this case to the Eastern District of Michigan.

**CONCLUSION**

For the foregoing reasons, BMWNA respectfully requests that this court transfer this action to the Eastern District of Michigan.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph P. Lavelle
Thomas M. Dunham
HOWREY LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

Dated: November 22, 2006

By:    */s/ David E. Moore*
       Richard L. Horwitz (#2246)
       David E. Moore (#3983)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, Delaware 19801
       Tel: (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

       *Attorney for Defendant*
       *BMW of North America LLC*

763638 / 30458

8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 22, 2006, the foregoing document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Richard K. Herrmann
Mary Matterer
Morris, James, Hitchens & Williams
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

Paul E. Crawford
Patricia S. Rogowski
Connolly Bove Lodge & Hutz LLP
The Nemours Building, 8th Floor
1007 North Orange Street
Wilmington, DE 19801

I hereby certify that on November 22, 2006, I have Electronically Mailed the documents to the following non-registered participants:

Andrew Kochanowski
Sommers Schwartz, P.C.
2000 Town Center, Suite 900
Southfiled, MI 48075
akochanowski@sommerspc.com

Michael H. Baniak
Baniak Pine & Gannon
150 N. Wacker Drive, Suite 1200
Chicago, IL 60606
baniak@bpglaw.com

Jeffrey K. Sherwood
Frank C. Cimino
Paul A. Gennari
Jin-Suk Park
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
jsherwood@akingump.com
fcimino@akingump.com
pgennari@akingump.com
jspark@akingump.com

By:  */s/ David E. Moore*
      Richard L. Horwitz
      David E. Moore
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware 19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

749385

# EXHIBIT 1

D&B Business Information Report: AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC          Page 1 of 5

# D&B Business Information Report

Copyright 2006 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber 291000591L

ATTN: **jjackson@brinkshofer.com**

Report Printed: MAR 27 2006
**In Date**

## BUSINESS SUMMARY

**AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC**
  ATI
**2740 Auburn Rd**
**Auburn Hills, MI 48326**

This is a **headquarters** location.
Branch(es) or division(s) exist.

| | |
|---|---|
| **Mailing address:** | PO Box 8 |
| | Denville, NJ 07834 |
| **Web site:** | www.ati-l.com |
| **Telephone:** | 248 852-6944 |
| **Chief executive:** | DAVID BREED, CHAIRMAN |
| **Year started:** | 1988 |
| **Employs:** | 10 (9 here) |
| **History:** | CLEAR |
| **SIC:** | 8731 |
| **Line of business:** | Commercial physical research |

**D-U-N-S Number:**     60-385-4555

**D&B Rating:**     **1R3**
**Number of employees:**     1R is **10 or more**
employees.

**Composite credit**     3 is **fair**.
**appraisal:**

**D&B PAYDEX®:**

**12-Month D&B PAYDEX: 73**
When weighted by dollar amount, payments to
suppliers average 11 days beyond terms.

Based on trade collected over last 12 months.

## SUMMARY ANALYSIS

**D&B Rating:**          **1R3**
   **Number of employees:**     1R Indicates **10 or more** employees.
   **Composite credit appraisal: 3 is fair**.

The 1R and 2R ratings categories reflect company size based on the total number of employees for the business.
They are assigned to business files that do not contain a current financial statement. In 1R and 2R Ratings, the 2, 3,
or 4 creditworthiness indicator is based on analysis by D&B of public filings, trade payments, business age and other
important factors. 2 is the highest Composite Credit Appraisal a company not supplying D&B with current financial
information can receive. For more information, see the D&B Rating Key.

Below is an overview of the company's rating history since 01/01/91:

| D&B Rating | Date Applied |
|---|---|
| 1R3 | 08/27/04 |
| 1R2 | 06/28/03 |
| -- | 08/03/01 |
| 1R3 | 05/12/98 |
| 2R3 | 09/05/97 |
| -- | 08/07/91 |
| BB2 | 01/01/91 |

The Summary Analysis section reflects information in D&B's file as of March 27, 2006.

## CUSTOMER SERVICE

If you have questions about this report, please call our Customer Resource Center at 1.800.234.3867 from anywhere
within the U.S. If you are outside the U.S. contact your local D&B office.

D&B Business Information Report: AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC     Page 2 of 5

*** Additional Decision Support Available ***

Additional D&B products, monitoring services and specialized investigations are available to help you evaluate this company or its industry. Call Dun & Bradstreet's Customer Resource Center at 1.800.234.3867 from anywhere within the U.S. or visit our website at www.dnb.com.

## HISTORY

The following information was reported **12/23/2005**:

**Officer(s):**     DAVID BREED, CHAIRMAN

**DIRECTOR(S):**     The officers identified by (+) and Rino Castelli and Warren Van Genderen.

Business started 1988 by the officers. Relocated Jul 1993 from Mountain Lakes, NJ. David Breed, CHM, owns the majority of the stock. The remainder is owned by employees, consultants and outside stockholders. No one individual with the exception of David Breed owns 20% or more.

DAVID BREED born 1938. Graduated Columbia University, New York, NY PhD, 1966. OCCUPATIONAL BACKGROUND: 1965-66 attended Columbia University, New York, NY. 1966-87 vice president of Breed Corporation, Boonton, NJ. 1987-88 president of Breed Automotive, Boonton, NJ. 1988-present active here.

Business address has changed from 2910 Waterview Dr, Rochester Hills, MI, 48309 to 2365 Avon Industrial Dr, Rochester Hills, MI, 48309.

Business address has changed from 2365 Avon Industrial Dr, Rochester Hills, MI, 48309 to 2740 Auburn Rd, Auburn Hills, MI, 48326.

## CORPORATE FAMILY

Click below to buy a Business Information Report on that family member.
For an expanded, more current corporate family view, use D&B's Global Family Linkage product.

**Branches (US):**
Automotive Technologies International, Inc  Romeo, MI     DUNS # 83-562-3054
Automotive Technologies International, Inc  Boonton, NJ     DUNS # 96-194-6019

## OPERATIONS

12/23/2005

**Description:**     Automotive safety research and development.

Has 3 account(s). Sells to manufacturers.

Nonseasonal.

**Employees:**     10 which includes officer(s) and 5 part-time. 9 employed here.

**Facilities:**     Leases 8,000 sq. ft. in brick building.

**Branches:**     The company maintains a branch location in Boonton, NJ.

## SIC & NAICS

**SIC:**

Based on information in our file, D&B has assigned this company an extended 8-digit SIC. D&B's use of 8-digit SICs enables us to be more specific to a company's operations than if we use the standard 4-digit code.

The 4-digit SIC numbers link to the description on the Occupational Safety & Health Administration (OSHA) Web site. Links open in a new browser window.

**NAICS:**

541710   Research and Development in the Physical, Engineering, and Life Sciencess

D&B Business Information Report: AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC    Page 3 of 5

87310204    Engineering laboratory, except testing

**D&B PAYDEX**

The D&B PAYDEX is a unique, dollar weighted indicator of payment performance based on up to 10 payment experiences as reported to D&B by trade references.

**3-Month D&B PAYDEX: 80**
When weighted by dollar amount, payments to suppliers average within terms.

Based on trade collected over last 3 months.

**12-Month D&B PAYDEX: 73**
When weighted by dollar amount, payments to suppliers average 11 days beyond terms.

Based on trade collected over last 12 months.

When dollar amounts are not considered, then approximately 84% of the company's payments are within terms.

**PAYMENT SUMMARY**

The Payment Summary section reflects payment information in D&B's file as of the date of this report

Below is an overview of the company's dollar-weighted payments, segmented by its suppliers' primary industries:

| | Total Rcv'd (#) | Total Dollar Amts ($) | Largest High Credit ($) | Within Terms (%) | Days Slow <31 | 31-60 | 61-90 | 90> (%) |
|---|---|---|---|---|---|---|---|---|
| **Top industries:** | | | | | | | | |
| Air courier service | 2 | 750 | 500 | 34 | 33 | 33 | - | - |
| Telephone communictns | 1 | 750 | 750 | 100 | - | - | - | - |
| Management services | 1 | 250 | 250 | 100 | - | - | - | - |
| Nonclassified | 1 | 250 | 250 | 100 | - | - | - | - |
| Short-trm busn credit | 1 | 100 | 100 | 100 | - | - | - | - |
| Data processing svcs | 1 | 100 | 100 | 100 | - | - | - | - |
| Radiotelephone commun | 1 | 0 | 0 | - | - | - | - | - |
| **Other payment categories:** | | | | | | | | |
| Cash experiences | 0 | 0 | 0 | | | | | |
| Payment record unknown | 2 | 300 | 250 | | | | | |
| Unfavorable comments | 0 | 0 | 0 | | | | | |
| **Placed for collections:** | | | | | | | | |
| With D&B | 0 | 0 | | | | | | |
| Other | 0 | N/A | | | | | | |
| Total in D&B's file | 10 | 2,500 | 750 | | | | | |

The highest **Now Owes** on file is $250

The highest **Past Due** on file is $250

D&B receives over 600 million payment experiences each year. We enter these new andupdated experiences into D&B Reports as this information isreceived.

**PAYMENT DETAILS**

**Detailed Payment History**

| Date Reported (mm/yy) | Paying Record | High Credit ($) | Now Owes ($) | Past Due ($) | Selling Terms | Last Sale Within (months) |
|---|---|---|---|---|---|---|

D&B Business Information Report: AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC    Page 4 of 5

| 03/06 | Ppt | 250 | 250 | 0 | | 1 mo |
|---|---|---|---|---|---|---|
| 02/06 | Ppt | 100 | 100 | 0 | | 1 mo |
| | Ppt | 100 | 100 | 0 | | 1 mo |
| 12/05 | Ppt | 250 | 100 | 0 | | 1 mo |
| 10/05 | (005) | 250 | 250 | 250 | N30 | 1 mo |
| 08/05 | Ppt | 0 | 0 | 0 | | 2-3 mos |
| 12/04 | Ppt | 750 | 0 | 0 | | 6-12 mos |
| | Ppt-Slow 60 | 500 | 0 | 0 | | 4-5 mos |
| | Slow 30 | 250 | 250 | 250 | | 1 mo |
| 11/04 | (010) | 50 | 0 | 0 | N30 | 6-12 mos |

**Payments Detail Key:**  red = 30 or more days beyond terms
Payment experiences reflect how bills are met in relation to the terms granted. In some instances payment beyond terms can be the result of disputes over merchandise, skipped invoices etc.

Each experience shown is from a separate supplier. Updated trade experiences replace those previously reported.

**FINANCE**

**12/23/2005**

Repeated attempts to contact business were unsuccessful.

**PUBLIC FILINGS**

The following Public Filing data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

**SUITS**

| | |
|---|---|
| **Status:** | Pending |
| **CASE NO.:** | 04056984CK |
| **Plaintiff:** | BOHDANA P URBANOVYCH |
| **Defendant:** | AUTOMOTIVE TECHNOLOGIES INTERNATIONAL INCORPORATED, ROMEO, MI AND OTHERS |
| **Where filed:** | OAKLAND COUNTY CIRCUIT COURT, PONTIAC, MI |
| **Date status attained:** | 03/18/2004 |
| **Date filed:** | 03/18/2004 |
| **Latest Info Received:** | 03/31/2004 |

| | |
|---|---|
| **Status:** | Dismissed |
| **CASE NO.:** | 98002826CK |
| **Plaintiff:** | 10000 - ANDREW VARGA |
| **Defendant:** | AUTOMOTIVE TECHNOLOGIES INTERNATIONAL INC |
| **Where filed:** | OAKLAND COUNTY CIRCUIT COURT, PONTIAC, MI |
| **Date status attained:** | 06/01/1999 |
| **Date filed:** | 01/06/1998 |
| **Latest Info Received:** | 10/23/2001 |

If it is indicated that there are defendants other than the report subject, the lawsuit may be an action to clear title to property and does not necessarily imply a claim for money against the subject.

The public record items contained in this report may have been paid, terminated, vacated or released prior to the date this report was printed.

**GOVERNMENT ACTIVITY**

D&B Business Information Report: AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC    Page 5 of 5

**Activity summary**

| | |
|---|---|
| Borrower (Dir/Guar): | NO |
| Administrative debt: | NO |
| Contractor: | NO |
| Grantee: | YES |
| Party excluded from federal program(s): | NO |

**Possible candidate for socio-economic program consideration**

| | |
|---|---|
| Labor surplus area: | N/A |
| Small Business: | YES (2006) |
| 8(A) firm: | N/A |

The details provided in the Government Activity section are as reported to Dun & Bradstreet by the federal government and other sources.

---

Copyright 2006 Dun & Bradstreet - Provided under contract for the exclusive use of subscriber 291000591L

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AUTOMOTIVE TECHNOLOGIES
INTERNATIONAL, INC.,
a Delaware corporation,

      Plaintiff,

vs.

AMERICAN HONDA MOTOR COMPANY,
a California corporation,
ELESYS NORTH AMERICA, INC.,
a Georgia corporation, and
GENERAL MOTORS CORPORATION,
a Delaware corporation,

      Defendants.
_____/

Case No. 1:06-CV-00187-GMS
Hon. Judge Gregory M. Sleet

### DECLARATION OF DAVID BREED

I, David Breed, under penalty of perjury do testify as follows:

1.     I am the Chairman and Chief Executive Officer of Plaintiff, ATI, Inc. I have a degree from Carlton College, a BA in physics, a Bachelors and Masters Degrees in mechanical engineering from MIT, a Masters Degree in industrial management from MIT, and a Ph.D. in mechanical engineering from Columbia University in 1972. While in school, beginning in the early 1960's, I began work with Breed Corporation, a company formed by my brother and myself. I worked at Breed Corporation on a full time basis from 1963 to 1988.

2.     In the late 1960's Breed Corporation began being involved in developing automotive sensors. I am intimately familiar with the automotive safety sensor business.

3.     When I left Breed Corporation in 1988, I acquired ATI to develop next-generation auto safety products. These included crash sensors for occupant restraint systems, other

occupant sensors, airbag designs, and related projects. I have over 150 issued patents in this field. While ATI has from time to time been involved in developing commercial products, the bulk of our work lies in research and patent development.

4.    Since acquiring ATI, I have had the company primarily engaged in research and development towards automotive safety products. At various times the company has had a physical office in the Metropolitan Detroit area for convenience, to allow us to present talks and lectures to various automotive suppliers and manufacturers, as well as to conduct some of our prototype activities. However, towards the end of 2005, we made a decision to close that office, which was only staffed by one or two people, and to conduct our prototyping and research activities largely off-shore. For the past four or five years, ATI has employed on a consulting basis a variety of scientists in Ukraine. The bulk of our research activity, to the extent is has a physical location, has been conducted in Ukraine throughout this time.

5.    I understand that references have been made in Defendants' motion to transfer regarding my ownership of a summer home in Pentwater, Michigan. First, I do not own that home, it is held in joint tenancy with a relative. Second, I use that home for brief summer vacations. Third, I may point out that the home in located in the Western District of Michigan. My primary residence is in Boonton Township, New Jersey.

6.    All of the patents involved in this case were prosecuted by Brian Roffe, ATI's long-standing patent lawyer. Some of the initial applications that led to the patents-in-suit were prepared by Karl Milde. Mr. Roffe lives in the greater New York area, and Mr. Milde in Westchester County, New York.

2

7.    All of our material business dealings with Autoliv, including our licenses with Autoliv, were with Autoliv's Swedish personnel, and took place in Sweden.

FURTHER AFFIANT SAYETH NOT.

DAVID S. BREED

June 20, 2006

# EXHIBIT 3

# MICHIGAN



## AUTOMOTIVE RESEARCH & DEVELOPMENT DIRECTORY

SECOND EDITION

# MICHIGAN

## AUTOMOTIVE RESEARCH & DEVELOPMENT DIRECTORY

SECOND EDITION

**CONTACT INFORMATION**
The Michigan Automotive Research and Development
Directory is now online as a searchable database.
This database is continually being updated with new
Michigan R&D facilities.

For the complete and most up-to-date searchable
database of Michigan's automotive R&D facilities, go to:
**michigan.org/autotech**

**UPDATE INFORMATION**
This directory contains a listing of companies that
have automotive-related research and development
(R&D) facilities within the state of Michigan.  If you
would like to include your company or make changes,
please contact Gary Krause at 517.335.0838 or
krauseg@michigan.org

2

## Automotive Technologies International, Inc

430 South Almont
ph: 810.444.4274    fx: 248.852.7136

Imlay City    48065
www.ati-i.com/

**PARENT ORGANIZATION**

**PRINCIPALS**
Stu Davis, VP Marketing

**PROFESSIONAL STAFF**
Engineers: 9
PhD Scientists: 2
Technician: 1

**TOTAL EMPLOYMENT**
14

**AUTOMOTIVE R&D SPENDING**
100%

**ECONOMIC ACTIVITY**
Not Available

**R&D ACTIVITES**
Develop automotive safety systems

**PRODUCTS**
Sensors

**FACILITY DESCRIPTION**
Lab and prototype facility

**OTHER SERVICES & ADDITIONAL INFORMATION**
Develop systems in partnership with other companies

05/2005

## AVL Powertrain Engineering, Inc

47519 Halyard Drive
ph: 734.414.9600    fx: 734.414.9690

Plymouth    48170
www.avl.com/pei

**PARENT ORGANIZATION**
AVL List GMBH

**PRINCIPALS**
Ray Corbin, President

**PROFESSIONAL STAFF**
Development Engineers
Software Engineers

**TOTAL EMPLOYMENT**
200

**AUTOMOTIVE R&D SPENDING**
Not Available

**ECONOMIC ACTIVITY**
Not Available

**R&D ACTIVITES**
Testing and engineering

**PRODUCTS**
Modern gasoline and diesel engines as well as alternatively fueled power plants for a world-wide customer base. Totally new design and development of an engine or engine family and improvement of existing engines

**FACILITY DESCRIPTION**
Complete test cell facility including powertrain validation testing with 20 dispersed test sites including vehicle facilities

**OTHER SERVICES & ADDITIONAL INFORMATION**
Testing

05/2005

## AW Transmission Engineering USA, Inc

14920 Keel Street
ph: 734.454.1710    fx: 734.454.1091

Plymouth    48170
www.awtec.com

**PARENT ORGANIZATION**
Aisin AW Co, LTD

**PRINCIPALS**
Not Available

**PROFESSIONAL STAFF**
Not Available

**TOTAL EMPLOYMENT**
Not Available

**AUTOMOTIVE R&D SPENDING**
Not Available

**ECONOMIC ACTIVITY**
Not Available

**R&D ACTIVITES**
Product engineering, redevelopment and testing

**PRODUCTS**
Powertrains

**FACILITY DESCRIPTION**
Not Available

**OTHER SERVICES & ADDITIONAL INFORMATION**
Powertrain re-manufacturing

Web2005

**MICHIGAN'S AUTOMOTIVE / VEHICLE RESEARCH AND DEVELOPMENT INDUSTRY** continues to grow as one of the world's leading industrial intelligence centers. For example, when this directory was published in 2002, there were fewer then 150 companies listed. Just three years later, we have more than 215 facilities for this second edition of the directory.

For the complete and most up-to-date searchable database of Michigan's automotive R&D facilities, go to:

## michigan.org/autotech

For additional printed copies of this directory, comments or additions, contact Gary Krause at 517.335.0838 or krauseg@michigan.org

MICHIGAN ECONOMIC DEVELOPMENT CORPORATION[SM]

# EXHIBIT 4

LEXSEE 2003 US DIST LEXIS 7120

**3COM CORPORATION, Plaintiff v. D-LINK SYSTEMS, INC., Defendant.**

**C.A. No. 03-014 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2003 U.S. Dist. LEXIS 7120**

**April 25, 2003, Decided**

**DISPOSITION:** [*1] Defendant's motion to transfer case to United States District Court for Northern District of California granted.

**COUNSEL:** For 3COM Corporation, PLAINTIFF: John W Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For D-Link Systems Inc, DEFENDANT: John G Day, Steven J Balick, Ashby & Geddes, Wilmington, DE USA.

For D-Link Systems Inc, COUNTER-CLAIMANT: John G Day, Steven J Balick, Ashby & Geddes, Wilmington, DE USA.

For 3COM Corporation, COUNTER-DEFENDANT: John W Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

On January 7, 2003, the plaintiff, 3Com Corporation ("3Com") filed the instant action alleging infringement of three patents relating to network interface adapters. The defendant, D-Link Systems, Inc. ("D-Link"), moves to transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) (D.I. 11). For the following reasons, the court will grant the defendant's motion.

**II. DISCUSSION**

D-Link moves to [*2] transfer this action to the District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "for convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). It is the movant's burden to establish the need for transfer, and 'the plaintiff's choice of venue [will] not be lightly disturbed.' *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted).

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the [*3] defendant's preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. n1 *Id.* at 879. Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> N1 The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.*, 28 F. Supp. 2d 192 (D. Del. 1998).

Upon consideration of these factors, the court finds

  

that D–Link has met its burden of demonstrating that transfer [*4] is appropriate. First, it is clear that this case could have been brought in the Northern District of California. Any federal district court possesses subject matter jurisdiction over federal patent law claims such as those at issue in the present action. 28 U.S.C. §§ 1331 and 1338. Further, venue is proper in the Northern District of California because the defendant is a California corporation with its sole place of business in that state. 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides ....").

Having determined that the case could be properly heard in the Northern District of California, the court now considers whether it would more conveniently proceed in that forum and whether the interest of justice supports a transfer to that district. Again, the court finds that these criteria are met. First, the court notes that although 3Com is a Delaware corporation, its principal place of business is in Santa Clara, California. D–Link is a California corporation with its sole place of business in Irvine, California. Although some of D–Link's products, including [*5] the accused products, are sold in Delaware, the connection to this forum ends there. Neither 3Com nor D-link maintains or owns any facility, property, or personnel in Delaware. Instead, the headquarters of both parties are located in California. Neither party has any books, records, or other documents in this district. Apparently, none of the acts related to the development of the accused products occurred in this district, while many, if not all, of these acts occurred in California. Clearly, litigating this case there would cause less disruption to business operations of each corporation, while eliminating the cost and time of cross-country transportation of persons and documents. In addition, D–Link was forced to retain local counsel for purposes of litigating in this district. Were the case transferred to California, this additional expense would not be required.

In addition, none of the anticipated third-party witnesses is subject to compulsory process in Delaware, but they may be compelled to testify in the Northern District of California. These witnesses include individuals involved in the development of the accused products, such as employees of the manufacturers of the products, [*6] Realtek Semiconductor Corp. ("Realtek") and Via Technologies, Inc. ("Via"). Realtek and Via are Taiwanese companies with offices and/or agents in northern California. Futhermore, at least one of the inventors of the accused products and one of the prosecuting attorneys could not be compelled to testify in this court. By contrast, each appears to live in northern California, and would be subject to compulsory process there. Finally, at least two witnesses with knowledge of allegedly invalidating prior art are subject to compulsory process in northern California, but not Delaware. Even if these witnesses were willing to travel to Delaware to testify in this court, it is certainly very inconvenient for them to do so, especially compared to traveling to a court in the state of their residence and employment. Convenience, cost, and expediency, then, favor a transfer.

The remaining factors of court congestion, the enforceability of the judgment, and the public polices of the fora neither favor nor counsel against transfer. These factors remain neutral in the court's analysis.

## III. CONCLUSION

In short, Delaware seems to have little interest in the present dispute between these [*7] parties, while justice, convenience, cost, and expediency favor a forum in California. The court recognizes that the Northern District of California is not the plaintiff's choice of forum for the present action; however, it is an exceedingly more convenient and appropriate forum than Delaware. In other words, the movant has shown that 'the litigation would more conveniently proceed and the interest of justice be better served by transfer' to California. *Jumara,* 55 F.3d at 879 (citations omitted). As such, transfer is appropriate.

For the aforementioned reasons, IT IS HEREBY ORDERED that:

> 1. The defendant's Motion to Transfer the case to the United States District Court for the Northern District of California (D.I. 11) is GRANTED.

Dated: April 25, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

  

# EXHIBIT 5



Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**

Briefs and Other Related Documents
Nilssen v. Osram Sylvania, Inc.D.Del.,2001.Only
the Westlaw citation is currently available.

United States District Court,D. Delaware.
Ole K. NILSSEN and Geo Foundation, Ltd.,
Plaintiffs,
v.
OSRAM SYLVANIA, INC. and Osram Sylvania
Products, Inc., Defendants.
**No. Civ.A. 00-695-JJF.**

May 1, 2001.

Donald F. Parsons, Jr., and Mona A. Lee, of Morris,
Nichols, Arsht & Tunnell, Wilmington, Delaware,
Harry J. Roper, Raymond N. Nimrod, John E. Titus,
and Jonathon Hill, of Roper & Quigg, Chicago,
Illinois, for Plaintiffs, of counsel.
Richard K. Herrmann, of Blank Rome Comisky &
Mccauley LLP, Wilmington, Delaware, Brian D.
Sieve, Thomas G. Pasternak, Andrew M. Johnstone,
and Kevin J. O'Shea, of Kirkland & Ellis, Chicago,
Illinois, for Defendants, of counsel.

*MEMORANDUM OPINION*
FARNAN, J.
**\*1** Presently before the Court is Defendants' Motion
to Transfer Pursuant to 28 U.S.C. § 1404(a) (D.I.15)
. For the reasons stated below, the Court will grant
the motion.

BACKGROUND

Ole K. Nilssen ("Mr.Nilssen") is a Florida resident
with his principal place of business in Chicago,
Illinois.[FN1] (D.I. 1 at ¶ 4). Mr. Nilssen is engaged
in the business of "identifying, formulating plans
for, developing know-how and technology for, and
implementing (via licensing agreements) promising
new business opportunities in the field of
electronics, including electronic ballasts." (D.I. 1 at

¶ 8). Geo Foundation ("Geo") is a non-profit
corporation incorporated in the Cayman Islands,
British West Indies. (D.I. 1 at ¶ 5)(Mr. Nilssen and
Geo collectively referred to as "Plaintiffs").

> FN1. Mr. Nilssen contends that his
> ongoing business in Illinois, Innovations
> Center, "is now defunct." (D.I. 24, Exh. 1
> at ¶ 8). However, Plaintiffs' Complaint
> alleges that Mr. Nilssen is currently
> engaged in "business opportunities." (D.I.
> 1 at ¶ 4). Further, Mr. Nilssen admits that
> he still travels to Illinois regularly to "
> bring closure to [his] other business
> dealings that take place in Illinois." (D.I.
> 24, Exh. 1 at ¶ 8). The Court concludes
> that, for purposes of the instant motion,
> this record sufficiently establishes that Mr.
> Nilssen's principal place of business is in
> Illinois.

OSRAM Sylvania, Inc. and OSRAM Sylvania
Products, Inc. (collectively "Defendants") are
Delaware corporations with their principal places of
business in Danvers, Massachusetts. (D.I. 13 at ¶
6-7). Defendants are engaged in the business of
making and selling electronic ballasts. (D.I. 13 at ¶
¶ 11).

Plaintiffs filed the instant action against Defendants
on August 1, 2000. In their Complaint, Plaintiffs
contend that Defendants wilfully infringe twenty-six
patents that were invented and are owned by Mr.
Nilssen and of which Geo holds exclusive licenses.
[FN2] (D.I. 1 at ¶¶ 9, 10, 13). On January 24,
2001, Defendants filed the instant motion to transfer
the case to the United States District Court for the
Northern District of Illinois. (D.I.15).

> FN2. These patents include U.S. Patent
> No. B1 4,667,345; U.S. Patent No.
> 4,857,806; U.S. Patent No. 4,954,754;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 2

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

U.S. Patent No. 4,983,887; U.S. Patent No. 5,013,974; U.S. Patent No. 5,047,690; U.S. Patent No. 5,164,637; U.S. Patent No. 5,185,560; U.S. Patent No. 5,189,342; U.S. Patent No. 5,191,262; U.S. Patent No. 5,214,356; U.S. Patent No. 5,233,270; U.S. Patent No. 5,341,067; U.S. Patent No. 5,343,123; U.S. Patent No. 5,402,043; U.S. Patent No. 5,416,386; U.S. Patent No. 5,432,409; U.S. Patent No. 5,446,347; U.S. Patent No. 5,471,118; U.S. Patent No. 5,479,074; U.S. Patent No. 5,481,160; U.S. Patent No. 5,510,680; U.S. Patent No. 5,510,681; U.S. Patent No. 5,621,279; U.S. Patent No. 5,736,819 and U.S. Patent No. 6,002,210. (D.I. 1 at ¶ 9).

## DISCUSSION

Under 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Since it is undisputed that Plaintiffs could have brought the instant action in the Northern District of Illinois, the Court's only task is to determine whether the factors enumerated in § 1404(a) warrant a transfer under the circumstances.

In determining whether or not to transfer venue under § 1404(a), a district court must consider a number of different factors. These factors include several private interests: (1) the convenience of the parties due to their relative physical and financial conditions, (2) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (3) the location of books and records, to the extent that these books and records could not be produced in a certain forum. *Memminger v. InfoCure Corp.,* C.A. No. 00-707-JJF, slip op. at 4 (D.Del. Nov. 14, 2000)(citing *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995))[FN3] These factors also include several public interests:

FN3. *Jumara* also listed the following

private interests that district courts should consider: (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, and (3) whether the claim arose elsewhere. 55 F.3d at 879. Subsequent decisions of this Court, however, have determined that these interests are subsumed by the other *Jumara* factors. *Memminger,* slip op. at 5. Therefore, to avoid considering the same interests twice, the Court will not considered them separately. *Id.*

(1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulties due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.
**\*2** *Id.* (citing *Jumara,* 55 F.3d at 879-80). When determining whether or not transfer is warranted under the circumstances, district courts must balance all of the relevant factors. *Jumara,* 55 F.3d at 883. "The burden is upon the [moving party] to establish that the balance of the [factors] strongly weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Memminger,* slip op. at 4-5. Below, the Court will analyze the factors relevant to the instant motion.

## A. Convenience of the Parties

The Court concludes that the convenience of the parties due to their relative physical and financial conditions weighs slightly in favor of transfer. Defendants' principal places of business are located in Danvers, Massachusetts. (D.I. 16 at 5). Many of Defendants' accused products are manufactured in Lake Zurich, Illinois, which is within the Northern District of Illinois. (D.I. 16 at 5). Defendants' contacts with Delaware, on the other hand, are minimal: Defendants are incorporated under Delaware law, Defendants have one salesperson who works out of a home office in Delaware, and some of Defendants' accused products are sold in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Delaware.[FN4] (D.I. 16 at 5). *See Memminger,* slip op. at 6-7 (recognizing that the mere fact a defendant is incorporated in a given forum does not mean that transfer to another forum is not warranted); *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.,* 11 F.Supp.2d 729, 730-30 (S.D.N.Y.1998)(holding that the Southern District of New York's connection to the litigation was " tenuous" for purposes of venue transfer analysis when the defendant was incorporated in New York and over 100 of the defendant's allegedly infringing products were sold in New York). Also supporting the requested transfer is the fact that Mr. Nilssen's principal place of business is in Illinois, and that several of his current and former employees reside in Illinois.

> FN4. Plaintiffs' contention that their "claim arose" in Delaware, because some of Defendants' accused products are sold in Delaware, lacks merit. Defendants' products are sold nationwide; therefore, Delaware does not have any special " connection" to the case that would weigh against the requested transfer.

Based on these considerations, the Court concludes that it would be more convenient to litigate in the Northern District of Illinois rather than in Delaware. However, this factor weighs only slightly in favor of transfer because both Defendants are large companies that are financially capable of litigating in a distant forum. *Motorola Inc. v. PC-Tel Inc.,* 58 F.Supp.2d 349, 358 (D.Del.1999)(holding that when the party seeking transfer is a multimillion dollar company, unless the company can articulate " some unique or unexpected burden" associated with litigating in a distant forum, this factor only weighs slightly in favor of transfer).

### B. Convenience of the Witnesses

The Court concludes that the convenience of the witnesses weighs strongly in favor of transfer. The convenience of the witnesses is the most important factor in venue transfer analysis. *Mentor Graphics v. Quickturn Design Sys., Inc.,* 77 F.Supp.2d 505,

510 (D.Del.1999). The convenience of a witness is only relevant, however, "to the extent that the witness may actually be unavailable for trial in one of the fora." *Asten Inc. v. Weavexx Corp.,* 2000 WL 1728354, at *4 (D.Del. Feb. 11, 2000)(quoting *Jumara,* 55 F.3d at 879). A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power. *Mentor Graphics,* 77 F.Supp.2d at 511. However, witnesses employed by the parties are not considered by a court conducting venue transfer analysis because the parties are obligated to procure the presence of their own employees at trial. *Id.*

*3 In the instant case, Defendants contend that no witnesses reside in Delaware but that a number of principal witnesses reside in the Northern District of Illinois, including: (1) Dale Fiene-an employee of Mr. Nilssen, (2) Robert Schneider-a former employee of Mr. Nilssen, (3) employees of Defendants, (4) employees of Motorola, Inc, and (5) employees of Advance Transformer, Inc. (" Advance"). (D.I. 16 at 10). In response, Plaintiffs contend that Defendants' contentions are unavailing because (1) Defendants have failed to explain the nature of these witnesses' testimony, and in several cases, have even failed to name the witnesses, (2) Defendants have failed to show that the use of videotaped deposition testimony would be an inadequate substitute for live trial testimony, and (3) Defendants have not alleged that any witnesses actually will be unavailable for trial. (D.I. 25 at 11).

The Court concludes that Plaintiffs' second and third arguments can be summarily rejected. As to Plaintiffs' third argument, as previously discussed, a party only needs to establish that witnesses might be unavailable for trial. As to Plaintiffs' second argument, the Court concludes that videotaped depositions are not an adequate substitute for live trial testimony when conducting venue transfer analysis because "[v]ideo depositions ... are unlikely to hold the rapt attention of a jury." *AlliedSignal, Inc. v. Cooper Auto., Inc.,* 1997 U.S. Dist. LEXIS 22902, at *11 n. 4 (D.Del. July 30, 1997).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 4

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiffs' first argument warrants more consideration. One of these witnesses, Dale Fiene, is a current employee of Mr. Nilssen; therefore, the Court concludes that Mr. Fiene should not be considered in the analysis. [FN5] (D.I. 24 at 9). The Court also agrees that Defendants' employees do not weigh into the analysis. However, Mr. Schneider, a former employee of Mr. Nilssen, and employees from Motorola and Advance do warrant consideration because they are potential third party witnesses.

> FN5. To the extent that Mr. Nilssen admits that Mr. Fiene is a current employee, such admission belies Mr. Nilssen's attempt to downplay the extent of his business contacts in Illinois.

Plaintiffs contend that these potential third party witnesses do not weigh in favor of transfer because Defendants have failed to specifically identify many of these witnesses by name and/or the content of their testimony. (D.I. 24 at 10-11). However, Defendants specifically identify Mr. Schneider and note that his testimony is relevant because Mr. Schneider has submitted a number of affidavits to the PTO on Mr. Nilssen's behalf. (D.I. 16 at 10). Mr. Schneider's knowledge is relevant to Defendants' affirmative defenses, especially Defendants' allegations of inequitable conduct by Mr. Nilssen during the prosecution of many of the patents in suit.

Defendants' potential witnesses from Motorola and Advance have not been identified by name. However, Defendants indicate that Motorola's employees will testify about Motorola's business dealings with Mr. Nilssen and about prior art to the patents in suit. (D.I. 16 at 10). Defendants also indicate that Advance's employees will provide relevant testimony about a reasonable royalty and about prior art.[FN6] (D.I. 16 at 10). The Court concludes that such identification, especially when fact discovery has yet to take place and when Plaintiffs have yet to specify the specific patent claims and products implicated in the lawsuit, is sufficient for purposes of venue transfer analysis. [FN7] Therefore, the Court concludes that the

convenience of the witnesses strongly weighs in favor of transfer.

> FN6. Advance's employees are knowledgeable on such issues because Advance has a license agreement with Mr. Nilssen. (D.I. 16 at 10).

> FN7. The cases cited by Plaintiffs in which the Court refused to afford unnamed witnesses any weight in the analysis involved situations where the movant merely stated that some witnesses existed that would not be available for trial. (D.I. 24 at 10-11)(citing *Motorola*, 58 F.Supp.2d at 359; *Sunds Defribator, Inc. v. Durametal Corp.*, 1997 WL 74660, at *3 (D.Del. Jan. 31, 1997)). Defendants' identification of the witnesses distinguishes the instant case from *Motorola* and *Sunds Defribator*.

C. Practical Considerations

*4 The Court also concludes that practical considerations regarding the ease, speed, or expense of trial strongly weigh in favor of the requested transfer. If related cases are pending in the district to which transfer is sought, such fact weighs in favor of the transfer. *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 206 (D.Del.1998). In a recent case granting a motion to transfer, the Court relied heavily on the existence of patent litigation in another forum involving "a parent patent of the one at issue" and a patent involving a similar type of product which was arguably "directly related" to the patent at issue. *Brunswick Corp. v. Precor Incorp.*, 2000 WL 1876477, at *3, n. 2 (D.Del. Dec. 12, 2000).

In the instant action, Plaintiffs allege infringement of twenty-six patents, at least six of which are also being litigated in the Northern District of Illinois. [FN8] In the Illinois cases, *Markman* rulings have already been issued and case dispositive motions have already been filed. (D.I. 16 at 4). Therefore, the Court concludes that the waste of judicial resources in requiring two different courts to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 5

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

construe at least six of the same patents, [FN9] and to render *Markman* rulings on each of these patents, is a factor that strongly weighs in favor of transfer. [FN10]

> FN8. The number of patents in the instant case that overlap with patents involved in cases pending in the Northern District of Illinois is in dispute. Defendants contend that thirteen of the patents in this case are being litigated in *Nilssen v. Motorola, Inc.,* Case No. 96-5571, and that three of these patents are also being litigated in *Nilssen v. MagneTek, Inc.,* Case No. 98-2229. (D.I. 16 at 4). Plaintiffs respond that only six patents overlap between the *Motorola* case and the action presently before the Court. (D.I. 24 at 12 & n. 4). The Court concludes that it is unnecessary to determine exactly how many of the patents overlap and will accept as true, for purposes of this motion, that only six patents overlap.

> FN9. Defendants point out that the file wrapper for one of the overlapping patents consists of over 1,700 pages.

> FN10. Plaintiffs contend that the doctrine of collateral estoppel will prevent any waste of judicial resources by precluding duplicative litigation. However, collateral estoppel only applies when a final judgment is rendered, so it could take months or years for collateral estoppel to become applicable. If *Markman* rulings are issued in the instant case that conflict with those rendered in the Northern District of Illinois prior to collateral estoppel becoming applicable, this could result in inconsistent judgments virtually guaranteeing that one of the judgments will get reversed on appeal. This judicial waste can be avoided by granting the instant motion to transfer.

CONCLUSION

In balance, the Court concludes that the relevant factors strongly weigh in favor of a transfer to the Northern District of Illinois. Both the convenience of the witnesses and practical considerations strongly weigh in favor of transfer, and the convenience of the parties weighs slightly in favor of transfer. On the other hand, no factors weigh against the requested transfer. [FN11] As a result, the Court concludes that a transfer to the Northern District of Illinois is warranted under the circumstances.

> FN11. Plaintiffs contend that they have a legitimate desire to litigate in Delaware in order to quickly resolve the matter, and that this factor weighs in favor of transfer. (D.I. 24 at 12). However, the statistical evidence submitted by Defendants reveal that civil cases are, on average, resolved more quickly in the Northern District of Illinois than in Delaware; however, in cases that ultimately go to trial, Delaware is a more expedient forum. (D.I.16, Exh. H). Furthermore, Plaintiffs have admitted that the slow pace in the cases pending in the Northern District of Illinois is "due to the pace set by the lawyers." (D.I. 25, Exh. B at 2). Plaintiffs nonetheless assert that, because a trial date has already been set in the instant case for February 11, 2002, the instant suit will be resolved more quickly if tried in Delaware. However, in complex patent cases such as this, the initial trial date is often pushed back as discovery problems arise. Considering the number of patents at issue in this case and that discovery has yet to commence, the February 11, 2002 trial date looks unrealistic.
> After the briefing in this matter was completed, Plaintiffs sent two letters to the Court (D.I. 27; D.I. 28) indicating that the summary judgment motions pending in the Northern District of Illinois cases were going to be further delayed because the motions had been referred to a special master. However, the Northern District of Illinois's referral order, which is attached

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                          Page 6

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

> to one of Plaintiffs' letters, highlights the
> fact that quick resolution of the lawsuit in
> this District is unlikely. The Order stated
> that: "the voluminous documents and
> arguments involved in the case" and "the
> legal and factual complexity of the case"
> would be such a drain on judicial resources
> that the appointment of a special master is
> warranted. (D.I.28). The Court concludes
> that requiring two different courts to
> duplicate much of the same work would be
> inefficient and would not produce a more
> expedient resolution in this forum.

An appropriate Order will be entered.

### ORDER

At Wilmington, this *1* day of May, 2001, for the
reasons set forth in the Memorandum Opinion
issued this date;

IT IS HEREBY ORDERED that Defendants'
Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)
(D.I.15) is *GRANTED*

D.Del.,2001.
Nilssen v. Osram Sylvania, Inc.
Not Reported in F.Supp.2d, 2001 WL 34368395
(D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00cv00695 (Docket) (Aug. 01, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 6

LEXSEE 1996 U.S. DIST. LEXIS 18194

**SHERWOOD MEDICAL COMPANY, a Delaware Corporation, d/b/a SHERWOOD, DAVIS & GECK, Plaintiff, v. IVAC MEDICAL SYSTEMS, INC., a Delaware Corporation, Defendant.**

Civil Action No. 96-305 MMS

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

1996 U.S. Dist. LEXIS 18194

November 25, 1996, Decided

**NOTICE:** [*1]  FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:**  IVAC's motion to transfer venue granted.

**COUNSEL:** Josy W. Ingersoll, Esq., and John W. Shaw, Esq., of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware; Of Counsel: Michael J. Sweedler, Esq., Beverly B. Goodwin, Esq., and Pierre R. Yanney, Esq., of Darby & Darby, New York, New York, attorneys for plaintiff.

Kent A. Jordan, Esq., and Joseph R. Slights, III, Esq., of Morris, James, Hitchens & Williams, Wilmington, Delaware; Of Counsel: Richard A. Bardin, Esq., Thomas A. Runk, Esq., and Paul T. LaVoie, Esq., of Fulwider Patton Lee & Utecht, LLP, Los Angeles, California, attorneys for defendant.

**JUDGES:** Murray M. Schwartz, Senior District Judge

**OPINION BY:** Murray M. Schwartz

**OPINION:**

**MEMORANDUM OPINION**

Dated: November 25, 1996
Wilmington, Delaware

**Murray M. Schwartz, Senior District Judge**

**INTRODUCTION**

Plaintiff Sherwood Medical Company ("Sherwood") filed a complaint on June 11, 1996, against IVAC Medical Systems, Inc. ("IVAC") alleging patent infringement. See Docket Item ("D.I.") 1. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1338. Venue is proper under 28 U.S.C. § 1400(b).

Two patents are at issue: (1) U.S. Patent No. 5,293,862, [*2] entitled "Disposable Speculum with Bonding Ring," filed on April 13, 1992, and (2) U.S. Patent No. 5,516,010, entitled "Sanitary Speculum for Tympanic Thermometer Probe," filed September 1, 1994. Defendant IVAC is alleged to have sold a product that infringes upon these patents, the "P90 Probe Cover," within the District of Delaware and elsewhere.

On July 30, 1996, IVAC, relying upon 28 U.S.C. § 1404(a), moved to transfer venue from this district to the Southern District of California. Sherwood opposed the motion at oral argument held on November 13, 1996. For the reasons stated below, IVAC's motion to transfer venue will be granted.

**FACTS**

**A. Sherwood Facts**

Sherwood is incorporated in Delaware, and is a wholly-owned subsidiary of American Home Products Corp. ("American Home"), also a Delaware Corporation. D.I. 15, at 1. Sherwood's headquarters is in St. Louis, Missouri. Id. at 8. Sherwood sells the products under the patents at issue in Delaware, and nationwide. Id. at 1. Currently, sales and marketing of the products under these patents is performed in St. Louis, research and development in Hazlewood, Missouri, and manufacturing in Watertown, New York, and Norfolk, [*3] Nebraska. Id. at 3-4. Sherwood has no offices in Delaware. D.I. 11, at 6.

Much of the development of Sherwood's patents in suit occurred in San Diego, which is within the judicial district of the Southern District of California. D.I. 15, at 9. The inventions took place in San Diego, and a company called Intelligent Medical Systems, Inc. ("IMS"), was formed there to market and manufacture the inventions. Id. In 1992, IMS was acquired by American

  

1996 U.S. Dist. LEXIS 18194, *3

Home, which is located in Madison, New Jersey. Id. In December 1994, IMS was merged into Sherwood. Id. at 9–10. Following the merger, IMS' San Diego operations were reduced, and now, according to counsel at oral argument, all that remains in the San Diego area is a small group comprising less than thirty employees.

## B. IVAC Facts

IVAC also is incorporated in Delaware and sells the allegedly infringing P90 Probe Covers in Delaware. D.I. 11, at 6. IVAC's headquarters is in San Diego, id. at 2, and the research and development of the P90 Probe Cover occurred there. Id. at 7. IVAC has no facilities or employees in Delaware. Id. at 2. It asserts no relevant documents are located in Delaware, and that most of its [*4] documents are located in San Diego. Id. at 3. IVAC's probe cover is manufactured in Ohio and the inventory is stored in North Carolina. Id. at 7.

## C. Related Pending Litigation

Sherwood recently was sued over one of the two patents at issue in this case by Thermoscan, Inc. D.I. 15, at 4. That litigation was filed in the Southern District of California. Id. Discovery was taken and two motions were resolved in that court before the case was settled in November, 1995. Id. at 11. The case subsequently was transferred to this Court for entry of a consent judgment and supervision of issues relating to the settlement, and was pending at the time Sherwood filed its action against IVAC. Id. at 13. A status conference also was held by this Court in connection with a potential problem requiring court supervision. Id. The matter has since been resolved and the case statistically closed.

## D. Witnesses

According to IVAC, nine out of ten non-party witnesses important to its case reside within the subpoena power of the Southern District of California, as does an eleventh witness, an IVAC employee. Included in this list are the three inventors of Sherwood's patents [*5] in suit, Gary O'Hara, Kishan Hingorani and David Philips. O'Hara, who still is employed by Sherwood, resides in the San Diego area, as does Hingorani, who is no longer a Sherwood employee. Philips resides in Annapolis, Maryland. The attorney who prosecuted Sherwood's patents, Michael Jester, whom IVAC may wish to call, has offices in San Diego.

Additionally, three of IVAC's former employees who helped develop its P90 probe cover live within the subpoena power of the San Diego court. They are Michael DeFrank, Robert Rosati and Tom Sternweiler. Finally, one Thermoscan employee, Jacob Fraden, as well as two outside contractors, David Hollings and Marvin Taylor,

all of whom IVAC may wish to call, live within the subpoena power of the San Diego court. IVAC has asserted that no fact witnesses live in Delaware. D.I. 11, at 2–3.

Sherwood urges Delaware is more convenient for "Sherwood, its trial counsel and its witnesses." D.I. 15, at 17. n1 At oral argument, Sherwood produced a list of its prospective witnesses, all of whom are either employees of Sherwood or experts hired for purposes of this lawsuit. Sherwood's counsel represented that Hingorani and Jester would be available to testify [*6] at trial. Sherwood's counsel further indicated Sherwood's belief that Philips lived within the subpoena power of this Court. At oral argument, counsel for Sherwood acknowledged its experts and employees would be in attendance whether the trial was held in the Delaware District or the Southern District of California.

> n1 To the extent Sherwood urges that the convenience of counsel is relevant to the analysis, its position is rejected. Burstein v. Applied Extrusion Technologies, Inc., 829 F. Supp. 106, 112 (D. Del. 1992).

## DISCUSSION

28 U.S.C. § 1404(a) governs transfer:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Sherwood does not contest this action could have been brought in the Southern District of California. As a consequence the Court must examine (1) the convenience of the parties, (2) the convenience of witnesses and (3) the interest of justice. [*7] In evaluating the statutory criterion, the Third Circuit Court of Appeals has directed the district courts within the circuit to examine "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). While cautioning that "there is no definitive formula or list of the factors to consider," id., the court identified a number of potential factors which it characterized as either private or public interests:

> The private interests have included: plaintiff's forum preference as manifested in the original choice, . . . the defendant's preference, . . . whether the claim arose elsewhere, . . . the convenience of the parties

  

1996 U.S. Dist. LEXIS 18194, *7

as indicated by their relative physical and financial condition, . . . the convenience of the witnesses — but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, . . . and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum), . . .

The public interests [*8] have included: the enforceability of the judgment, . . . practical considerations that could make the trial easy, expeditious, or inexpensive, . . . the relative administrative difficulty in the two fora resulting from court congestion, . . . the local interest in deciding local controversies at home, . . .[and] the public policies of the fora . . .

Id. (citations omitted).

Jumara, acknowledging deference to plaintiff's choice of forum, does not purport to modify Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910, 27 L. Ed. 2d 808, 91 S. Ct. 871 (1971). 55 F.3d at 879. Jumara also has not changed the principle in Shutte that the party seeking the transfer, IVAC, bears the burden of establishing the need for transfer. Id. An often-quoted passage from Shutte states:

It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice ". . . should not be lightly disturbed." . . . . In accord with that sound doctrine, one district court recently correctly observed: "The decision to transfer is in the court's discretion, [*9] but a transfer is not to be liberally granted." . . . . The burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer . . . and ". . . unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail."

431 F.2d at 25 (citations omitted).

Utilizing the Jumara test of "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum," 55 F.3d at 879, the Court will analyze the interests of the parties implicated by IVAC's motion to transfer this case.

### A. Private Interests

The Third Circuit appellate court has set forth a number of factors which may be appropriate to consider under this heading, including the parties' respective choices, where the claim arose, the parties' respective financial conditions, and the convenience of witnesses and location of books and records to the extent that either the witnesses or the records might not be made available for trial.

Weighing most of these private interests does not lead to a result that [*10] strongly favors either party. The parties are both national companies with sales in the millions of dollars, thereby rendering financial conditions a wash as a factor to be considered in transfer. Similarly, infringement allegedly occurred throughout the United States negates "where the claim arose" as a factor to be weighed. Books and records could be made available in either fora — Sherwood would have to transfer its documents from St. Louis to whichever district is the trial forum. However, IVAC's records are in San Diego, giving IVAC a slight edge on this factor.

"Convenience of the witnesses" is a phrase encompassing geographic location of witnesses relative to the forum and an "interest of justice" consideration, i.e., whether the witnesses are physically available for trial in either of the competing fora. As between geographic proximity of witnesses and being assured a court will hear live testimony, the latter in most instances will be the far more important consideration. That is not to say that the party that shows that more of its witnesses will be unavailable for trial will prevail on a transfer motion. Rather, what is key at this nascent stage of the litigation is the [*11] Court's impression of the nature of prospective testimony to be given by the witness — does it go to an important issue, is it cumulative, is a witness employed by a party and therefore available in any fora, and like considerations.

The Supreme Court, in the context of a motion for dismissal based on the doctrine *forum non conveniens*, has commented on the desirability of holding a trial in a forum in which a court could not compel the personal attendance of witnesses. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839 (1947). "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants. Nor is it necessarily cured by the statement of plaintiff's counsel that [plaintiff] will see to getting many of the witnesses to the trial . . . ." Id. at 511.

Apparently agreeing with that basic premise, the par-

  

1996 U.S. Dist. LEXIS 18194, *11

ties devoted much time at oral argument to discussing each side's proffered witness list and the possible relevance of each witness' testimony, in an effort to persuade the Court that certain [*12] witnesses would, or would not, be necessary for trial. Sherwood's counsel agreed that all the witnesses on Sherwood's list would be present at trial regardless of where it is held, because all its witnesses are either current employees or expert witnesses hired for the purposes of this litigation. IVAC, on the other hand, pointed to nine witnesses who are not currently employed by either party, whom it expects to call at trial.

As set forth above, those witnesses include Kishan Hingorani, a former Sherwood employee and named inventor of the patents in suit; Michael Jester, the attorney who prosecuted the patents; Jacob Fraden, a Thermoscan employee; David Hollings and Marvin Taylor, outside contractors who worked on scaling up the development of Sherwood's probe covers; and DeFrank, Rosati and Sternweiler, former IVAC employees who participated in the development of IVAC's P90 Probe Cover.

Counsel for Sherwood responded by assuring the Court that Hingorani and Jester would be available for trial. n2 With respect to the testimony of Fraden, Hollings and Taylor, whom IVAC indicated it may call to testify regarding prior art, Sherwood urged that the testimony of these three individuals [*13] would not be helpful to IVAC at trial. According to Sherwood, Fraden has knowledge of the Thermoscan thermometer, not its probe covers, and Hollings and Taylor have never claimed inventorship.

> n2 Sherwood also indicated its belief that Philips was within the subpoena power of this Court, and therefore could be compelled to attend trial here.

Sherwood's assurances that two of the three named inventors, Hingorani and O'Hara, would appear at trial is not the same as having them amenable to the subpoena power of the trial court. Further, that still leaves IVAC unable to produce at trial in person the three developers of its alleged infringing product. Nor is it satisfactory that the IVAC witnesses could appear by video deposition at trial. Video depositions of product development are unlikely to hold the rapt attention of a jury. Further, to the extent Sherwood argues DeFrank, Rosati and Sternweiler, developers of the IVAC probe, are cumulative and unnecessary witnesses because their supervisor will testify, the [*14] short answer is that Sherwood's proposal infringes on IVAC's right to put forth its case through whom it wants.

Sherwood's choice of forum and other less important factors must be balanced against the fact that two of the three inventors and the three developers of IVAC's alleged infringing probe are not within the subpoena power of this Court. These five potential, critical witnesses n3 are subject to the compulsory process power of the Southern District of California. The balance between Sherwood and IVAC must be resolved in favor of transfer. n4

> n3 Given the Court's outcome, it is unnecessary to evaluate whether the absence of the other IVAC witnesses would in and of itself outweigh plaintiff's choice of forum.

> n4 The public interests as defined in Jumara, 55 F.3d at 878, have no application to IVAC's motion to transfer.

An appropriate order will issue transferring this case to the Southern District of California.

  

# EXHIBIT 7

Yahoo! People Search                                                                        Page 1 of 1

# YAHOO! PEOPLE SEARCH   Sign In
New User? Sign Up

Search
the Web _____  [ Search ]

People Search Home - H

**Your People Search:**

Create / Edit My Listing - Remove My Listi

first  Jeffrey      |  last | Morin      city | Lincoln Park      state  Michigan      [ ]   [ Yahoo! Search ]

**SPONSOR RESULTS BY INTELIUS**  (What's this?)

- **Jeffrey Morin - New Phone Number, Address and Address History Available.** Find Any Unlisted
  Number and Address with Age, Date of Birth, and Family Members. Search by Maiden name, Spouse Name, Phone Numbe
  or Social Security Number.
  www.intelius.com

**PEOPLE SEARCH RESULTS** 1 - 1 out of about 1.

| Name | ADVERTISEMENT | Address | Phone |
|------|---------------|---------|-------|
| **Jeff Morin** | More Information Background Check | 911 Saint Johns Blvd Lincoln Park, MI Add to Address Book, Map | 3137695030 |

Showing **1 - 1** of **1**                                                              First | Previous | Next | Las

**SPONSOR RESULTS BY INTELIUS**  (What's this?)

- **Found Current Phone Number and Address for Jeffrey Morin in Public Records-** Records incluc
  Current Address, Phone Number, Age, Date of Birth, Address History and Family Members.
  find.intelius.com

---

**Search the Web:**  | Jeffrey Morin, Lincoln Park, Michigan      [ Yahoo! Search ]      Advanced Web Search

---

Copyright © 2006 Yahoo! Inc. All rights reserved.
Privacy Policy - Terms of Service - Copyright/IP Policy

Yahoo!  My Yahoo!  Mail

# YAHOO! PEOPLE SEARCH

Sign In
New User? Sign Up

Search
the Web _____ Search

People Search Home - H

**Your People Search:**

Create / Edit My Listing - Remove My Listi

first  Kunhong    last  Xu    city    state  Michigan    [  ]    [ Yahoo! Search ]

SPONSOR RESULTS BY INTELIUS  (What's this?)

- **Kunhong Xu - New Phone Number, Address and Address History Available.** Find Any Unlisted
  Number and Address with Age, Date of Birth, and Family Members. Search by Maiden name, Spouse Name, Phone Numbe
  or Social Security Number.
  www.intelius.com

PEOPLE SEARCH RESULTS 1 - 1 out of about 1.

| Name | ADVERTISEMENT | Address | Phone |
|---|---|---|---|
| **Kunhong Xu** | More Information<br>Background Check | 2792 Broadmoor Dr<br>Rochester Hills, MI<br>Add to Address Book, Map | 2483758920 |

Showing **1 - 1** of **1**

First | Previous | Next | Las

SPONSOR RESULTS BY INTELIUS  (What's this?)

- **Found Current Phone Number and Address for Kunhong Xu in Public Records-** Records include
  Current Address, Phone Number, Age, Date of Birth, Address History and Family Members.
  find.intelius.com

Search the Web:  Kunhong Xu, Michigan    [ Yahoo! Search ]    Advanced Web Search

Copyright © 2006 Yahoo! Inc. All rights reserved.
Privacy Policy - Terms of Service - Copyright/IP Policy

Yahoo! Canada People Search                                                      Page 1 of 1

 **PEOPLE SEARCH** 

**Sign In**
New User? Sign Up

Search the Web [_____] [Search]

People Search Home - Help


Looking for love?
The Wise Guys explain the dating game.   ROGERS YAHOO! PERSONALS   chatelaine

---

**Welcome, Guest User**                    Create My Listing - Remove My Listing - Sign In

first | T        last  Chen       city  Windsor    | province  Ontario    [ ]   [ Search ]

## Detailed Information

Your Search: **T Chen** (New Search)

### T Chen

691 Cousineau Rd
Windsor, ON N9G1V6 (map)

Tel.: (519) 250-9879

**Tools:** Add to my Yahoo! Address Book - vCard

---

**Search the Web:**   T Chen, Windsor, Ontario          [ Yahoo! Search ]        Advanced Web Search

---

Data by Acxiom - copyright notice

Copyright © 2005 Yahoo! Inc. All rights reserved.
Privacy Policy - Terms of Service - Additional Terms - Copyright Policy

You may use this information only for personal purposes.
You are prohibited from using the information for commercial or illegal purposes.

Yahoo!  My Yahoo!  Mail

# YAHOO! PEOPLE SEARCH  Sign In
New User? Sign Up

People Search Home - H

**Your People Search:**                    Create / Edit My Listing - Remove My Listi

first Wilbur        last Duvall        city            state Missouri            Yahoo! Search

**SPONSOR RESULTS BY INTELIUS** (What's this?)

- **Wilbur Duvall - New Phone Number, Address and Address History Available.** Find Any Unlisted
  Number and Address with Age, Date of Birth, and Family Members. Search by Maiden name, Spouse Name, Phone Numbe
  or Social Security Number.
  www.intelius.com

**PEOPLE SEARCH RESULTS** 1 - 1 out of about 1.

| Name | ADVERTISEMENT | Address | Phone |
|------|---------------|---------|-------|
| **Wilbur Duvall** | More Information<br>Background Check | Reeds Spring, MO<br>Add to Address Book, Map | 4173384957 |

Showing **1 - 1** of **1**                    First | Previous | Next | Las

**SPONSOR RESULTS BY INTELIUS**  (What's this?)

- **Found Current Phone Number and Address for Wilbur Duvall in Public Records-** Records
  include Current Address, Phone Number, Age, Date of Birth, Address History and Family Members.
  find.intelius.com

---

Search the Web: Wilbur Duvall, Missouri        Yahoo! Search        Advanced Web Search

---

Copyright © 2006 Yahoo! Inc. All rights reserved.
Privacy Policy - Terms of Service - Copyright/IP Policy

Yahoo! People Search                                                                  Page 1 of 1

Yahoo!  My Yahoo!  Mail

# YAHOO!® PEOPLE SEARCH

Sign In
New User? Sign Up

Search
the Web

People Sea

**Your People Search:**                                          Create / Edit My Listing - Rem

first  Wendell/c    last  Johnson    city            state  California        Yahoo! Se

SPONSOR RESULTS BY INTELIUS  (What's this?)

- **Wendell/c Johnson - New Phone Number, Address and Address History Available.**
  Unlisted Number and Address with Age, Date of Birth, and Family Members. Search by Maiden name, Spouse
  Number or Social Security Number.
  www.intelius.com

PEOPLE SEARCH RESULTS 1 - 1 out of about 1.

| Name | ADVERTISEMENT | Address | Phone |
|---|---|---|---|
| **Wendell C Johnson** | More Information Background Check | 210 Riverside Ave Chowchilla, CA Add to Address Book, Map | 5596651252 |

Showing **1 - 1** of **1**                                                       First | Previous

SPONSOR RESULTS BY INTELIUS  (What's this?)

- **Found Current Phone Number and Address for Wendell/c Johnson in Public Reco**
  Records include Current Address, Phone Number, Age, Date of Birth, Address History and Family Members.
  find.intelius.com

**Search the Web:**  Wendell/c Johnson, California        Yahoo! Search      Advanced We

Copyright © 2006 Yahoo Inc. All rights reserved.
Privacy Policy - Terms of Service - Copyright/IP Policy

# YAHOO! PEOPLE SEARCH   Sign In
New User? Sign Up

Search the Web [_____] Search

People Search Home - H

**Your People Search:**                    Create / Edit My Listing - Remove My Listi

first  David        last  Breed        city              state  New Jersey        [ Yahoo! Search ]

**SPONSOR RESULTS BY INTELIUS**  (What's this?)

- **David Breed - New Phone Number, Address and Address History Available.** Find Any Unlisted
  Number and Address with Age, Date of Birth, and Family Members. Search by Maiden name, Spouse Name, Phone Numbe
  or Social Security Number.
  www.intelius.com

**PEOPLE SEARCH RESULTS** 1 - 1 out of about 1.

| Name | ADVERTISEMENT | Address | Phone |
|---|---|---|---|
| **David Breed** | More Information / Background Check | 48 Hillcrest Rd Boonton, NJ Add to Address Book, Map | 9732638575 |

Showing 1 - 1 of **1**                                    First | Previous | Next | Las

**SPONSOR RESULTS BY INTELIUS**  (What's this?)

- **Found Current Phone Number and Address for David Breed in Public Records-** Records include
  Current Address, Phone Number, Age, Date of Birth, Address History and Family Members.
  find.intelius.com

---

**Search the Web:**  | David Breed, New Jersey        [ Yahoo! Search ]    Advanced Web Search

---

Copyright © 2006 Yahoo! Inc. All rights reserved.
Privacy Policy - Terms of Service - Copyright/IP Policy

# N Neural Network Team



Aleksandr M. Reznik
(Doctor of Science)

Michael E. Kussul (PhD)

Aleksandr S. Sitchov (PhD)

Elena G. Sadovaya (MS)

Elena A. Kalyna (PhD)

Dimitri W. Nowicki (PhD)

Victor V. Sovetov (MS)

Alla A. Galinskaya
(MS, PhD student)

Oleksiy K. Dekhtiarenko
(MS, PhD student)

Oleg Kireev
(MS, PhD student)

Konstantin M. Kuzhel
(MS, PhD student)

KIEV, UKRAINE

## members

PROJECTS · SOFTWARE · HARDWARE · MEMBERS · PARTNERS · ARTICLES

home - members - Michael E. Kussul

## Michael E. Kussul



13, Uritskogo Str., apt. 16
Kiev, 03035
Ukraine
Tel. +380 (44) 526-2572
e-mail: kussul@nnteam.org.ua

### Skills

**Management:** Project manager, Lead Analyst, Head of Neuro-Computing Department

**Special:** Artificial Neural Networks, Classifiers, Signal processing, Mathematical modeling, Solid state Electronics, Ultrasonic and Optic sensors

**Programming Languages/Tools/Frameworks:**
C/C++, Visual Studio, Builder C++, Java, FORTRAN, Micro-assembler, PCAD, XACT Step, Viewlogig PRO Series, MathCAD

**Software:** Microsoft Office (Word, Excel etc.) etc., Team Source

**OS/Platforms:** DOS, Windows (3.1, 95, 98, 2000, XP), Unix

**Hardware:** FPGA, PLD, RISC Processors, PIC Processors, Intel x386 and higher

### Experience in
- Artificial Neural Networks, Classifiers, Pattern recognition (14 years)
- Data processing (14 years), Mathematical modeling (17 years)
- System programming, Assembler, C/C++ (12 years)
- Hardware design (8 years)
- Solid state electronics/sensors (5 years)

### Education
- **PhD in Engineering (Solid-state Electronics and Microelectronics),** Polytechnic Institute of Kiev, Kiev, 1990
- **MS in Electronics (Dielectrics and Semiconductors),** Polytechnic Institute of Kiev, Kiev, 1986
- **BS in Engineering,** Polytechnic Institute of Kiev, Kiev, 1983

### Experience
**2001 - Present** Consultant, International Scientific Research, LLC (Mundelein, IL, USA)

Consulting on Neural networks and Tools development for wide range of recognition tasks. Solutions for smart airbag ultrasonic and optical systems.

**1996 - 2000    Senior Program Engineer, Automotive Technology International, Inc. (Denville, NJ, USA)**

Neural network research and comparative analysis of neural network paradigms using theoretical investigation and modeling. Investigation and development neural networks for smart safety system of vehicle; Design and Development Neural Network Tool for wide range of recognition tasks.

**1992 - Present    Senior Scientific Researcher, Institute of Mathematical Machine and Systems (Kiev, Ukraine)**

Development and Investigation of new neural network paradigms as, for example, «Perceptron in Subspaces Classifier». Design and development of software tools and neural network processor hardware. Applying neural networks to power engineering tasks. Carrying-out numerous of neural government projects as, for example, project of Government Committee of Science, Technique and Manufacturing #6.03.03 "Neuro-Computer".

**1995 - 1996    Lead Analyst of Ukrainian Team, "S3 Technologies" (Columbia, MD, USA)**

Technology transfer project of development of the full scope simulator of nuclear power plants. Member of project for the Khmelnitsky nuclear power plant.

**1992 - 1993    Coordinator of Project, WACOM Co. (Tokyo, Japan)**

Design and development of the associative projective neural-computer B512M for the wide range of cognition tasks. Pre-production model was done using FPGA of XILINX company.

**1990 - 1992    Head of Neuro-Computing Department, Informatika (Kiev, Ukraine)**

Development neural-computers and design preprocessor hardware for the recognition and control tasks. Design and development built-in neural coprocessor for IBM PC compatible computers by request of "Orion" company (Moscow, Russia).

**1989 - 1990    Lecturer in Physics, Polytechnic Institute of Kiev (Kiev, Ukraine)**

Development and investigation thin solid sandwich structures ferroelectric semiconductor. Design photoelectric sensors. Development of models and technology of the sensors.

**1986 - 1989    Graduate Researcher, Polytechnic Institute of Kiev (Kiev, Ukraine)**

Investigation the resonance ferroelectric sensors. Development and investigation the thin solid films of semiconductor on the ferroelectric.

## Publications and Presentations

Scope - more than 40 publications dedicated to signal processing, neural networks theory and applications, pattern recognition and solid-state electronics. The results were discussed on numerous conferences including international conferences IJCNN'02, EUFIT'97, UEES'97, ICIAM'95 etc. Co-author of 8 patents.

**Languages:**    English: good
             Russian and Ukrainian: native

**Grants and Awards:**
- 1994 - 1996 President of Ukraine Scholarship for Junior Scientists

NN Team - Members - Michael E. Kussul

- 1996 - 1998 President of Ukraine Scholarship for Junior Scientists
- Grant INTAS-93-0560, High Performance Classification Based on Neural Networks with Fast Training
- Grant INTAS-96-2248, Selective three-dimensional electrodeposition of nanophase and amorphous moving microstructures for application in micromachining and microelectromechanical systems.

Completed: June 2005

Designed by Programmix

©2003-2005 Neural Network Team Home - News - Visitors Quotes - Contact Us

EXHIBIT 8
(part 1)

Driving Directions from 911 Saint Johns Blvd, Lincoln Park, MI to 844 N King St, Wilmington, DE    Page 1 of 3



| **START** 911 Saint Johns Blvd | **END** 844 N King St |
|---|---|
| Lincoln Park, MI 48146-4234, US | Wilmington, DE 19801-3519, US |

**Total Est. Time:**
9 hours, 20 minutes

**Total Est. Distance:**
565.04 miles

## Maneuvers                                  Distance

| | | | Distance |
|---|---|---|---|
| **START** | **1:** | Start out going WEST on ST JOHNS BLVD toward FERRIS AVE. | 0.1 miles |
| | **2:** | Turn LEFT onto FERRIS AVE. | <0.1 miles |
| | **3:** | Turn RIGHT onto CLOVERLAWN BLVD. | 0.2 miles |
| NORTH 85 | **4:** | Turn RIGHT onto FORT ST / MI-85 N. | <0.1 miles |
| SOUTH 85 | **5:** | Make a U-TURN onto FORT ST / MI-85 S. | 0.7 miles |
| | **6:** | Turn RIGHT onto NORTHLINE RD. | 0.6 miles |
| | **7:** | Turn LEFT onto TOLEDO. | 2.6 miles |
| | **8:** | TOLEDO becomes TOLEDO RD. | 1.2 miles |
| | **9:** | TOLEDO RD becomes DIX TOLEDO HWY. | 0.2 miles |
| SOUTH 75 | **10:** | Merge onto I-75 S via the ramp on the LEFT toward TOLEDO (Crossing into OHIO). | 37.2 miles |
| SOUTH 280 | **11:** | Merge onto I-280 S via EXIT 208 on the LEFT toward I-80 / I-90 / TURNPIKE. | 12.6 miles |
| EAST 80 | **12:** | Merge onto I-80 E via EXIT 1A toward CLEVELAND (Portions toll). | 146.8 miles |
| EAST 76 | **13:** | Merge onto I-76 E via the exit on the LEFT (Portions toll) (Crossing into PENNSYLVANIA). | 335.8 miles |
| 312 EXIT | **14:** | Take the PA-100 exit- EXIT 312- toward POTTSTOWN / WEST CHESTER. | 0.4 miles |

| | | |
|---|---|---|
| **SOUTH 100** | **15:** Merge onto PA-100 S toward DOWNINGTOWN. | 7.6 miles |
| **SOUTH 202** | **16:** Take US-202 S (Crossing into DELAWARE). | 16.4 miles |
| **SOUTH 202** | **17:** US-202 S becomes DE-202 S. | 1.2 miles |
| **SOUTH 13 BR** | **18:** Turn RIGHT onto N MARKET ST / US-13 BR. Continue to follow US-13 BR S. | 0.7 miles |
| **END** | **19:** End at **844 N King St** Wilmington, DE 19801-3519, US | |

**Total Est. Time:** 9 hours, 20 minutes     **Total Est. Distance:** 565.04 miles

Driving Directions from 911 Saint Johns Blvd, Lincoln Park, MI to 844 N King St, Wilmington, DE    Page 3 of 3



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.



**START** **911 Saint Johns Blvd**
Lincoln Park, MI 48146-
4234, US

**END** **231 W Lafayette Blvd**
Detroit, MI 48226-2700, US

**Total Est. Time:**
20 minutes

**Total Est. Distance:**
12.79 miles

| Maneuvers | Distance |
|---|---|
| **START** **1:** Start out going WEST on ST JOHNS BLVD toward FERRIS AVE. | 0.3 miles |
| **85** **2:** Turn RIGHT onto FORT ST / MI-85 N. | 1.6 miles |
| **3:** Turn RIGHT onto PARK AVE. | <0.1 miles |
| **4:** Turn LEFT onto MCKINLEY ST. | <0.1 miles |
| **5:** Turn LEFT onto SOUTHFIELD RD. | 0.4 miles |
| **75** **6:** Merge onto I-75 N toward DETROIT. | 8.1 miles |
| **49 EXIT** **7:** Take EXIT 49 toward M-10 / LODGE FWY / ROSA PARKS BLVD / CIVIC CENTER. | 0.3 miles |
| **EXIT** **8:** Take the exit on the LEFT toward M-10 / LODGE FWY / CIVIC CENTER. | 0.2 miles |
| **EXIT** **9:** Take the M-10 S exit toward CIVIC CENTER. | 0.6 miles |
| **10** **10:** Merge onto JOHN C LODGE FWY / MI-10 S. | 0.2 miles |
| **EXIT** **11:** Take the HOWARD ST exit toward COBO ROOF. | 0.1 miles |
| **12:** Keep LEFT at the fork to go on 5TH ST. | <0.1 miles |
| **13:** Turn LEFT onto W LAFAYETTE BLVD. | 0.4 miles |
| **END** **14:** End at **231 W Lafayette Blvd** Detroit, MI 48226-2700, US | |

**Total Est. Time: 20 minutes    Total Est. Distance:**
12.79 miles

Driving Directions from 911 Saint Johns Blvd, Lincoln Park, MI to 231 W Lafayette Blvd, Detroit, MI   Page 2 of 2



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability
or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from
such use.



**START 2792 Broadmoor Dr**
Rochester Hills, MI 48309-1368, US

**END 844 N King St**
Wilmington, DE 19801-3519, US

**Total Est. Time:**
10 hours, 0 minutes

**Total Est. Distance:**
604.43 miles

| Maneuvers | Distance |
|---|---|
| **START** **1:** Start out going WEST on BROADMOOR DR toward WINTER PARK RD. | <0.1 miles |
| **2:** Turn RIGHT onto STEAMBOAT SPRINGS DR. | <0.1 miles |
| **3:** Turn LEFT onto POWDERHORN RIDGE RD. | 0.1 miles |
| **4:** Turn LEFT onto N ADAMS RD. | 1.5 miles |
| **5:** Turn LEFT onto W AVON RD. | 0.8 miles |
| **6:** Turn RIGHT onto CROOKS RD. | 4.7 miles |
| **7:** Turn LEFT onto CORPORATE DR. | <0.1 miles |
| **8:** Merge onto I-75 S toward DETROIT. | 18.6 miles |
| **9:** Merge onto I-94 W via EXIT 53B toward CHICAGO. | 2.6 miles |
| **10:** Merge onto I-96 E / JEFFRIES FWY via EXIT 213B toward CANADA. | 1.4 miles |
| **11:** Merge onto I-75 S toward TOLEDO. | 52.6 miles |
| **12:** Merge onto I-280 S via EXIT 208 on the LEFT toward I-80 / I-90 / TURNPIKE. | 12.6 miles |
| **13:** Merge onto I-80 E via EXIT 1A toward CLEVELAND (Portions toll). | 146.8 miles |
| **14:** Merge onto I-76 E via the exit on the LEFT (Portions toll). | 335.8 miles |
| **15:** Take the PA-100 exit- EXIT 312- | 0.4 miles |

toward POTTSTOWN / WEST CHESTER.

| | | |
|---|---|---|
| SOUTH 100 | **16:** Merge onto PA-100 S toward DOWNINGTOWN. | 7.6 miles |
| SOUTH 202 | **17:** Take US-202 S. | 16.4 miles |
| SOUTH 202 | **18:** US-202 S becomes DE-202 S. | 1.2 miles |
| SOUTH 13 BR | **19:** Turn RIGHT onto N MARKET ST / US-13 BR. Continue to follow US-13 BR S. | 0.7 miles |
| END | **20:** End at **844 N King St** Wilmington, DE 19801-3519, US | |

**Total Est. Time:** 10 hours, 0 minutes    **Total Est. Distance:** 604.43 miles

Driving Directions from 2792 Broadmoor Dr, Rochester Hills, MI to 844 N King St, Wilmington, DE    Page 3 of 3



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.

# EXHIBIT I
# (PART 2 OF 5)

Driving Directions from Cousineau Road, Windsor, ON to 844 N King St, Wilmington, DE    Page 1 of 3



| | | |
|---|---|---|
| **START** **Cousineau Road** Windsor, ON N9H, CA | **END** **844 N King St** Wilmington, DE 19801-3519, US | |

**Total Est. Time:**
9 hours, 37 minutes

**Total Est. Distance:**
580.75 miles

## Maneuvers

| | Maneuvers | Distance |
|---|---|---|
| | **1:** Start out going NORTHEAST on SANDWICH PKWY W toward TALBOT RD / PROVINCIAL ROUTE 3 S. | <0.1 miles |
| | **2:** Stay STRAIGHT to go onto COUSINEAU RD. | <0.1 miles |
| | **3:** Turn LEFT onto TALBOT RD / PROVINCIAL ROUTE 3 N. Continue to follow PROVINCIAL ROUTE 3 N (Portions toll) (Crossing into *UNITED STATES* MICHIGAN). | 6.0 miles |
| | **4:** PROVINCIAL ROUTE 3 N becomes AMBASSADOR BRIDGE. | 0.7 miles |
| | **5:** AMBASSADOR BRIDGE becomes W FISHER FWY. | 0.2 miles |
| | **6:** Turn LEFT onto VERNOR HWY W. | <0.1 miles |
| | **7:** Turn LEFT onto FISHER FWY W. | 0.4 miles |
| | **8:** FISHER FWY W becomes LAFAYETTE BLVD W. | 0.5 miles |
| | **9:** LAFAYETTE BLVD W becomes FISHER FWY W. | <0.1 miles |
| | **10:** Merge onto I-75 S via the ramp on the LEFT (Crossing into OHIO). | 50.7 miles |
| | **11:** Merge onto I-280 S via EXIT 208 on the LEFT toward I-80 / I-90 / TURNPIKE. | 12.6 miles |
| | **12:** Merge onto I-80 E via EXIT 1A toward CLEVELAND (Portions toll). | 146.8 miles |

| | | |
|---|---|---|
| **13:** | Merge onto I-76 E via the exit on the LEFT (Portions toll) (Crossing into PENNSYLVANIA). | 335.8 miles |
| **14:** | Take the PA-100 exit- EXIT 312- toward POTTSTOWN / WEST CHESTER. | 0.4 miles |
| **15:** | Merge onto PA-100 S toward DOWNINGTOWN. | 7.6 miles |
| **16:** | Take US-202 S (Crossing into DELAWARE). | 16.4 miles |
| **17:** | US-202 S becomes DE-202 S. | 1.2 miles |
| **18:** | Turn RIGHT onto N MARKET ST / US-13 BR. Continue to follow US-13 BR S. | 0.7 miles |
| **19:** | End at **844 N King St** Wilmington, DE 19801-3519, US | |

**Total Est. Time:** 9 hours, 37 minutes      **Total Est. Distance:** 580.75 miles

Driving Directions from Cousineau Road, Windsor, ON to 844 N King St, Wilmington, DE          Page 3 of 3



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability
or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from
such use.

Driving Directions from Cousineau Road, Windsor, ON to 231 W Lafayette Blvd, Detroit, MI          Page 1 of 3



**START Cousineau Road**
   Windsor, ON N9H, CA

**END 231 W Lafayette Blvd**
   Detroit, MI 48226-2700, US

**Total Est. Time:**
18 minutes

**Total Est. Distance:**
9.73 miles

## Maneuvers                                          Distance

**1:** Start out going NORTHEAST on SANDWICH PKWY W toward TALBOT RD / PROVINCIAL ROUTE 3 S.     <0.1 miles

**2:** Stay STRAIGHT to go onto COUSINEAU RD.     <0.1 miles

**3:** Turn LEFT onto TALBOT RD / PROVINCIAL ROUTE 3 N. Continue to follow PROVINCIAL ROUTE 3 N (Portions toll).     6.0 miles

**4:** PROVINCIAL ROUTE 3 N becomes AMBASSADOR BRIDGE.     0.7 miles

**5:** AMBASSADOR BRIDGE becomes W FISHER FWY.     <0.1 miles

**6:** Merge onto I-75 N toward DETROIT.     0.7 miles

**7:** Take EXIT 49 toward M-10 / LODGE FWY / ROSA PARKS BLVD / CIVIC CENTER.     0.3 miles

**8:** Take the exit on the LEFT toward M-10 / LODGE FWY / CIVIC CENTER.     0.2 miles

**9:** Take the M-10 S exit toward CIVIC CENTER.     0.6 miles

**10:** Merge onto JOHN C LODGE FWY / MI-10 S.     0.2 miles

**11:** Take the HOWARD ST exit toward COBO ROOF.     0.1 miles

**12:** Keep LEFT at the fork to go on 5TH ST.     <0.1 miles

**13:** Turn LEFT onto W LAFAYETTE BLVD.     0.4 miles

**14:** End at **231 W Lafayette Blvd**
        Detroit, MI 48226-2700, US

**Total Est. Time:** 18 minutes     **Total Est. Distance:**
9.73 miles

Driving Directions from Cousineau Road, Windsor, ON to 231 W Lafayette Blvd, Detroit, MI          Page 3 of 3



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability
or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from
such use.

Driving Directions from Reeds Spring, MO to 844 N King St, Wilmington, DE                    Page 1 of 3



**START** **Reeds Spring, MO US**         **END** **844 N King St**
                                          Wilmington, DE 19801-
                                          3519, US

**Total Est. Time:**                      **Total Est. Distance:**
18 hours, 18 minutes                      1134.31 miles

| **Maneuvers** | **Distance** |
|---|---|
| **1:** Start out going NORTHWEST on E SPRING ST toward MO-265 / E MAIN ST / MO-413. | <0.1 miles |
| **2:** Turn RIGHT onto MO-265 / E MAIN ST / MO-413. | 0.4 miles |
| **3:** Turn RIGHT onto MO-248. | 1.4 miles |
| **4:** Turn LEFT onto MO-13 / MO-248. | 0.7 miles |
| **5:** Turn RIGHT onto US-160 / MO-248. Continue to follow US-160. | 8.9 miles |
| **6:** Merge onto US-65 N via the ramp on the LEFT toward SPRINGFIELD. | 35.2 miles |
| **7:** Merge onto I-44 E toward ST LOUIS. | 207.4 miles |
| **8:** Take the I-55 N exit- EXIT 290A- on the LEFT toward I-70 EAST / ILLINOIS. | <0.1 miles |
| **9:** Merge onto I-55 N via EXIT 290B toward I-70 EAST / ILLINOIS. | 20.6 miles |
| **10:** Merge onto I-70 E toward INDIANAPOLIS. | 516.9 miles |
| **11:** Merge onto I-470 E via EXIT 219 toward BELLAIRE / WASHINGTON PA. | 10.5 miles |
| **12:** Merge onto I-70 E. | 66.7 miles |
| **13:** Merge onto I-76 E via EXIT 58 toward BREEZEWOOD / NEW JERSEY (Portions toll). | 238.4 miles |
| **14:** Take the PA-100 exit- EXIT 312- | 0.4 miles |

toward POTTSTOWN / WEST CHESTER.

| | | |
|---|---|---|
| SOUTH 100 | **15:** Merge onto PA-100 S toward DOWNINGTOWN. | 7.6 miles |
| SOUTH 202 | **16:** Take US-202 S. | 16.4 miles |
| SOUTH 202 | **17:** US-202 S becomes DE-202 S. | 1.2 miles |
| SOUTH 13 BR | **18:** Turn RIGHT onto N MARKET ST / US-13 BR. Continue to follow US-13 BR S. | 0.7 miles |
| END | **19:** End at **844 N King St** Wilmington, DE 19801-3519, US | |

**Total Est. Time:** 18 hours, 18 minutes     **Total Est. Distance:** 1134.31 miles

Driving Directions from Reeds Spring, MO to 844 N King St, Wilmington, DE          Page 3 of 3



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.

Driving Directions from Reeds Spring, MO to 231 W Lafayette Blvd, Detroit, MI          Page 1 of 3



**START** **Reeds Spring, MO US**          **END** **231 W Lafayette Blvd**
                                        Detroit, MI 48226-2700, US

**Total Est. Time:**                     **Total Est. Distance:**
12 hours, 33 minutes                     804.83 miles

| Maneuvers | Distance |
|---|---|
| **1:** Start out going NORTHWEST on E SPRING ST toward MO-265 / E MAIN ST / MO-413. | <0.1 miles |
| **2:** Turn RIGHT onto MO-265 / E MAIN ST / MO-413. | 0.4 miles |
| **3:** Turn RIGHT onto MO-248. | 1.4 miles |
| **4:** Turn LEFT onto MO-13 / MO-248. | 0.7 miles |
| **5:** Turn RIGHT onto US-160 / MO-248. Continue to follow US-160. | 8.9 miles |
| **6:** Merge onto US-65 N via the ramp on the LEFT toward SPRINGFIELD. | 35.2 miles |
| **7:** Merge onto I-44 E toward ST LOUIS. | 207.4 miles |
| **8:** Take the I-55 N exit- EXIT 290A- on the LEFT toward I-70 EAST / ILLINOIS. | <0.1 miles |
| **9:** Merge onto I-55 N via EXIT 290B toward I-70 EAST / ILLINOIS. | 252.3 miles |
| **10:** Merge onto I-80 E via EXIT 250A toward TOLEDO (Portions toll). | 52.5 miles |
| **11:** Merge onto I-94 E. | 201.1 miles |
| **12:** Take the M-14 exit- EXIT 171- on the LEFT toward PLYMOUTH. | 0.5 miles |
| **13:** Merge onto MI-14 E. | 22.0 miles |
| **14:** MI-14 E becomes I-96 E / JEFFRIES FWY. | 19.2 miles |
| **15:** Take the I-75 N / M-10 exit on the LEFT toward FLINT / CIVIC CTR. | 0.3 miles |

Driving Directions from Reeds Spring, MO to 231 W Lafayette Blvd, Detroit, MI                    Page 2 of 3

| | | |
|---|---|---|
| **16:** | Take the M-10 / LODGE FWY exit toward ROSA PARKS BLVD / CIVIC CENTER. | 0.4 miles |
| **17:** | Take the exit on the LEFT toward M-10 / LODGE FWY / CIVIC CENTER. | 0.2 miles |
| **18:** | Take the M-10 S exit toward CIVIC CENTER. | 0.6 miles |
| **19:** | Merge onto JOHN C LODGE FWY / MI-10 S. | 0.2 miles |
| **20:** | Take the HOWARD ST exit toward COBO ROOF. | 0.1 miles |
| **21:** | Keep LEFT at the fork to go on 5TH ST. | <0.1 miles |
| **22:** | Turn LEFT onto W LAFAYETTE BLVD. | 0.4 miles |
| **23:** | End at **231 W Lafayette Blvd** Detroit, MI 48226-2700, US | |

**Total Est. Time:** 12 hours, 33 minutes    **Total Est. Distance:** 804.83 miles

Driving Directions from Reeds Spring, MO to 231 W Lafayette Blvd, Detroit, MI          Page 3 of 3



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.



| START | **210 Riverside Ave** | | END | **844 N King St** |
|---|---|---|---|---|

**210 Riverside Ave**
Chowchilla, CA 93610-
2529, US

**844 N King St**
Wilmington, DE 19801-
3519, US

**Total Est. Time:**
43 hours, 2 minutes

**Total Est. Distance:**
2867.80 miles

| | **Maneuvers** | **Distance** |
|---|---|---|
| START | **1:** Start out going NORTHEAST on RIVERSIDE AVE toward N 2ND ST. | <0.1 miles |
| | **2:** Turn RIGHT onto N 2ND ST. | 0.1 miles |
| | **3:** Turn LEFT onto CA-233 / W ROBERTSON BLVD. | 0.3 miles |
| SOUTH 99 | **4:** Merge onto CA-99 S. | 146.1 miles |
| EAST 58 | **5:** Merge onto CA-58 E toward TEHACHAPI / MOJAVE. | 125.9 miles |
| NORTH 15 | **6:** Merge onto I-15 N via the exit on the LEFT toward LAS VEGAS. | 4.4 miles |
| EAST 40 | **7:** Merge onto I-40 E. | 1210.6 miles |
| EAST 44 | **8:** Merge onto I-44 E via EXIT 147B on the LEFT toward TULSA / WICHITA. | 15.3 miles |
| EAST 44 | **9:** Merge onto I-44 E via EXIT 138A toward TULSA (Portions toll). | 484.6 miles |
| 290A EXIT | **10:** Take the I-55 N exit- EXIT 290A- on the LEFT toward I-70 EAST / ILLINOIS. | <0.1 miles |
| NORTH 55 | **11:** Merge onto I-55 N via EXIT 290B toward I-70 EAST / ILLINOIS. | 20.6 miles |
| EAST 70 | **12:** Merge onto I-70 E toward INDIANAPOLIS. | 516.9 miles |
| EAST 470 | **13:** Merge onto I-470 E via EXIT 219 toward BELLAIRE / WASHINGTON PA. | 10.5 miles |
| EAST 70 | **14:** Merge onto I-70 E. | 66.7 miles |

**15:** Merge onto I-76 E via EXIT 58 toward BREEZEWOOD / NEW JERSEY (Portions toll).    238.4 miles

**16:** Take the PA-100 exit- EXIT 312- toward POTTSTOWN / WEST CHESTER.    0.4 miles

**17:** Merge onto PA-100 S toward DOWNINGTOWN.    7.6 miles

**18:** Take US-202 S.    16.4 miles

**19:** US-202 S becomes DE-202 S.    1.2 miles

**20:** Turn RIGHT onto N MARKET ST / US-13 BR. Continue to follow US-13 BR S.    0.7 miles

**21:** End at **844 N King St** Wilmington, DE 19801-3519, US

**Total Est. Time:** 43 hours, 2 minutes    **Total Est. Distance:** 2867.80 miles

Driving Directions from 210 Riverside Ave, Chowchilla, CA to 844 N King St, Wilmington, DE          Page 3 of 3



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.



**START** **210 Riverside Ave**
Chowchilla, CA 93610-
2529, US

**END** **231 W Lafayette Blvd**
Detroit, MI 48226-2700, US

**Total Est. Time:**
35 hours, 26 minutes

**Total Est. Distance:**
2443.01 miles

## Maneuvers                                          Distance

| | | |
|---|---|---:|
| START | **1:** Start out going NORTHEAST on RIVERSIDE AVE toward N 2ND ST. | <0.1 miles |
| | **2:** Turn RIGHT onto N 2ND ST. | 0.1 miles |
| | **3:** Turn LEFT onto CA-233 / W ROBERTSON BLVD. | 0.6 miles |
| NORTH 99 | **4:** Merge onto CA-99 N. | 128.1 miles |
| | **5:** Take CAPITAL CITY FWY toward RENO. | 9.3 miles |
| EAST 80 | **6:** Merge onto I-80 E. | 641.9 miles |
| EAST 80 | **7:** Merge onto I-80 E via EXIT 304 toward CHEYENNE. | 1054.7 miles |
| EAST 80 | **8:** Merge onto I-80 E via EXIT 123B toward CHICAGO / MINNEAPOLIS. | 166.6 miles |
| EAST 280 | **9:** Merge onto I-280 E via EXIT 290 toward ROCK ISLAND / MOLINE. | 27.4 miles |
| EAST 80 | **10:** I-280 E becomes I-80 E (Portions toll). | 168.3 miles |
| EAST 94 | **11:** Stay STRAIGHT to go onto I-94 E. | 201.1 miles |
| 171 EXIT | **12:** Take the M-14 exit- EXIT 171- on the LEFT toward PLYMOUTH. | 0.5 miles |
| EAST 14 | **13:** Merge onto MI-14 E. | 22.0 miles |
| EAST 96 | **14:** MI-14 E becomes I-96 E / JEFFRIES FWY. | 19.2 miles |
| EXIT | **15:** Take the I-75 N / M-10 exit on the LEFT toward FLINT / CIVIC CTR. | 0.3 miles |

| | | |
|---|---|---|
| **16:** | Take the M-10 / LODGE FWY exit toward ROSA PARKS BLVD / CIVIC CENTER. | 0.4 miles |
| **17:** | Take the exit on the LEFT toward M-10 / LODGE FWY / CIVIC CENTER. | 0.2 miles |
| **18:** | Take the M-10 S exit toward CIVIC CENTER. | 0.6 miles |
| **19:** | Merge onto JOHN C LODGE FWY / MI-10 S. | 0.2 miles |
| **20:** | Take the HOWARD ST exit toward COBO ROOF. | 0.1 miles |
| **21:** | Keep LEFT at the fork to go on 5TH ST. | <0.1 miles |
| **22:** | Turn LEFT onto W LAFAYETTE BLVD. | 0.4 miles |
| **23:** | End at **231 W Lafayette Blvd** Detroit, MI 48226-2700, US | |

**Total Est. Time:** 35 hours, 26 minutes    **Total Est. Distance:** 2443.01 miles

Driving Directions from 210 Riverside Ave, Chowchilla, CA to 231 W Lafayette Blvd, Detroit, MI      Page 3 of 3



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.



home | about us | terms | vendors | advertisers | affiliates | contact us
| destinations | interests | indonesia | smart tips | members | arts & crafts |

# BALI & INDONESIA ON THE NET

Distance between **Kiev, Ukraine** and **Wilmington, Delaware, United States**, as the crow flies:

**4780 miles (7692 km)** (4154 nautical miles)

Initial heading from Kiev to Wilmington:
**northwest (307.7 degrees)**
Initial heading from Wilmington to Kiev:
**northeast (40.9 degrees)**

- Tourism Info: Bali & Indonesia
- All Hotels & Resorts in Bali
- International Hotels in Bali
- Jakarta Hotels
- International Hotels
- Travel8Ways.com; international hotels, flights, and tours by indo.com

**Flash Maps for Website**
Real Estate, Store/Dealer Locators World,
USA, State, County, Zip
Ads by Gooooogle

**Wilmington Guide**
Find local businesses Phone Numbers,
Website, & Maps
Advertise on this site

See airfares between these two cities in Travel8Ways.com.
See hotels in these two cities in Hotels.Indo.Com or Travel8Ways.com.
See driving distance and directions (courtesy Maps.com)

## Kiev, Ukraine [hotels, attractions, books, community]

Location: **50:30:00N 30:28:00E**

## Wilmington, Delaware, US [hotels, attractions, books, community, map]

County: **New Castle County**
Location: **39:44:08N 75:31:48W**
Population (1990): **71529**
Elevation: **100 feet**

You may try a new search.

Google™                                                    | Search |

Ads by Goooooogle

**Experience**
**Leisure Living**
New and exisiting
waterfront homes
In Illinois at
Shadow Lakes
www.shadowlakesrealty.c


**Travel Distance**
Get Instant, Easy
Access to Maps &
Directions. No
Spyware-Download
Now
www.Starware.com/Maps


**Map Of United**
**State**
Look Up Maps &
Driving Directions
On All U.S. Cities.
Fast & Easy!
www.USLocalMaps.com


**Wilmington**
**Hotels**
Visit Us Now To
Find Great Hotel
Deals In
Wilmington
www.Hotel.net


Advertise on this site

Travel8Ways.Com   City:   Check In: --- 📅 --- 📅   Check Out: --- 📅 --- 📅   Search Hotel

## Find me a Hotel in Bali or Jakarta!

check in    --- 📅   ---    📅   2001 📅
check out   --- 📅   ---    📅   2001 📅
region      South Bali : Nusadua, Jimbaran, Tuban, Kuta, Seminyak, Kerobokan, Canggu, Sanur 📅
no. of rooms  1
price range   don't care 📅   search

advance hotel search...

**home** | **destinations** | **interests** | **Indonesia** | **smart tips** | **members** | **art & crafts** | **featured ho**
**featured article** | **news archives** | **about us** | **terms** | **vendors** | **advertisers** | **affiliates** | **contact**

developed, designed, and maintained by Indo.com © 2000 AllRights Reserved



# BALI & INDONESIA ON THE NET

- **Tourism Info**: Bali & Indonesia
- All Hotels & Resorts In Bali
- International Hotels In Bali
- Jakarta Hotels
- International Hotels
- Travel8Ways.com: international hotels, flights, and tours by Indo.com

**Distance** between **Kiev, Ukraine** and **Detroit, Michigan, United States**, as the crow flies:

**4891 miles (7871 km)** (4250 nautical miles)

Initial heading from Kiev to Detroit:
**northwest (314.2 degrees)**
Initial heading from Detroit to Kiev:
**northeast (38.2 degrees)**

See airfares between these two cities in Travel8Ways.com.
See hotels in these two cities in Hotels.Indo.Com or Travel8Ways.com.
See driving distance and directions (courtesy Maps.com)

## Kiev, Ukraine [hotels, attractions, books, community]

Location: **50:30:00N 30:28:00E**

## Detroit, Michigan, US [hotels, attractions, books, community, map]

County: **Wayne County**
Location: **42:22:59N 83:06:08W**
Population (1990): **1027974**

You may try a new search.

Google™ [                                        ] [ Search ]

TravelBWays.Com   City: [                    ]   [ Search Hotel ]
Check In: [---][▾][---][▾]   Check Out: [---][▾][---][▾]

How Far is It                                                    Page 2 of 2

Ads by Goooooogle

## Find me a Hotel in Bali or Jakarta!

**Kiev Hotels**
Sort Hotels by
Price, Distance &
Star Rating. Book
on ORBITZ &
Save!
www.ORBITZ.com

**Kiev Hotel
Discounts**
Get Low Prices on
Hotels Plus Local
Customer Support!
HotelsUkraine.com

**Kiev Apartment
Service**
Perfect for Long-
Short Term Stays
Fully Serviced with
Hotel Amenities
www.kievapartmentservic

**Travel Distance**
Get Instant, Easy
Access to Maps &
Directions. No
Spyware-Download
Now
www.Starware.com/Maps

Advertise on this site

check in ☐ ☐ 2001 ☐
check out ☐ ☐ 2001 ☐
region   South Bali : Nusadua, Jimbaran, Tuban, Kuta, Seminyak, Kerobokan, Canggu, Sanur ☐
no of rooms 1
price range don't care ☐   search

advance hotel search...

home | destinations | interests | indonesia | smart tips | members | art & crafts | featured hot
featured article | news archives | about us | terms | vendors | advertisers | affiliates | contact

developed, designed, and maintained by Indo.com © 2000 AllRights Reserved

EXHIBIT J



**Auburn Hills, Michigan**

◊ Address & Phone
◊ Driving Directions

◊ Back to USA

◊ **Testing Services**

- Barrier Testing
- Sled Testing
- Component Testing
- Test Capabilities

◊ **Support Services**

- Autoliv North America - Headquarters
- Data Analysis and Reporting
- Prototype Shop
- Dummy Calibration
- Fabrication/Machine Shop

◊ **Engineering Services**

- Test Engineering
- Test Design/Development
- Test Implementation
- Occupant Simulation Analysis

◊ **Size**

- 2 Sleds, 1 Enclosed Barrier, 14 Prep Bays
- 465 Employees (approx.)

◊ **Certifications**

**QS 9000 Registered
Quality**



**ISO 14001 Registered
Environment**



Copyright Autoliv Inc  2006 All rights reserved

EXHIBIT 8
(part 2)

EXHIBIT K
(PART 1 OF 4)





**Start:**  **Newmarket, ON CA**

**End:**  **844 N King St**
Wilmington, DE 19801-3519, US

**Notes:**

**Holiday Inn Hotels: Official Site**

Guaranteed Lowest Internet Rates

Book Online and pay no booking fees

Click Here to Make a Reservation!

Or Call 877-410-6681 to make a reservation

| Directions | Distance |
|---|---|
| **Total Est. Time: 9 hours, 8 minutes      Total Est. Distance: 546.73 miles** | |
| **1:** Start out going SOUTHEAST on GASTON PL toward LONDRY CT. | 0.1 miles |
| **2:** Turn LEFT onto LONDRY CT. | <0.1 miles |
| **3:** Turn RIGHT onto COLLEGE MANOR DR. | 0.3 miles |
| **4:** Turn LEFT onto MULOCK DR / RR-74. | 1.3 miles |
| **5:** Take the HWY-404 S ramp toward TORONTO. | 0.4 miles |
| **6:** Merge onto PROVINCIAL ROUTE 404 S. | 19.5 miles |
| **7:** Take the RTE-401 E / RTE-401 O / HWY-401 E / HWY-401 W exit. | 0.1 miles |
| **8:** Take the HWY-401 W exit. | <0.1 miles |
| **9:** Take the EXPRESS exit on the LEFT. | 0.4 miles |
| **10:** Merge onto HWY-401 EXPRESS W. | 13.5 miles |
| **11:** Take the RTE-427 S / HWY-427 S exit- EXIT 352- toward Q.E.W.. | 1.1 miles |
| **12:** Merge onto PROVINCIAL ROUTE 427 S. | 3.6 miles |
| **13:** Merge onto QEW toward HAMILTON. | 63.5 miles |
| **14:** Take the HWY-405 exit- EXIT 37- on the LEFT toward QUEENSTON. | 0.2 miles |
| **15:** Merge onto PROVINCIAL ROUTE 405 E. | 5.1 miles |
| **16:** PROVINCIAL ROUTE 405 E becomes QUEENSTON-LEWISTON BRIDGE (Crossing into *UNITED STATES* NEW YORK). | 0.5 miles |

Driving Directions from Newmarket, ON to 844 N King St, Wilmington, DE                Page 2 of 3

| | | |
|---|---|---|
| **17:** QUEENSTON-LEWISTON BRIDGE becomes I-190 S (Portions toll). | 14.7 miles |
| **18:** Merge onto I-290 E / YOUNGMANN EXPY via EXIT 16 toward I-90 / TONAWANDA / ROCHESTER. | 9.8 miles |
| **19:** Merge onto I-90 E / NEW YORK STATE THRUWAY E via EXIT 1-49 on the LEFT toward ALBANY (Portions toll). | 130.7 miles |
| **20:** Merge onto I-690 E via EXIT 39 toward SYRACUSE / FAIRGROUNDS. | 9.8 miles |
| **21:** Merge onto I-81 S (Crossing into PENNSYLVANIA). | 124.1 miles |
| **22:** Take the PENNSYLVANIA TURNPIKE exit- EXIT 194- toward US-6 / US-11 / CLARKS SUMMIT. | 0.1 miles |
| **23:** Merge onto I-476 S toward ALLENTOWN (Portions toll). | 131.1 miles |
| **24:** Merge onto I-95 S toward CHESTER (Crossing into DELAWARE). | 14.7 miles |
| **25:** Take EXIT 7A toward SR-52 S / DELAWARE AVE.. | 0.1 miles |
| **26:** Stay STRAIGHT to go onto W 11TH ST. | 0.5 miles |
| **27:** Turn RIGHT onto N KING ST / US-13 BR S. | 0.1 miles |
| **28:** End at **844 N King St** Wilmington, DE 19801-3519, US | |

**Total Est. Time: 9 hours, 8 minutes        Total Est. Distance: 546.73 miles**



**Start:**
**Newmarket, ON CA**

**End:**
**844 N King St**
Wilmington, DE 19801-3519, US



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road
conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no
responsibility for any loss or delay resulting from such use.



**Start:**   **Newmarket, ON CA**

**End:**   **231 W Lafayette Blvd**
Detroit, MI 48226-2700, US

**Notes:**



| Directions | Distance |
|---|---|
| **Total Est. Time:** 4 hours, 32 minutes    **Total Est. Distance:** 256.69 miles | |
| **1:** Start out going SOUTHEAST on GASTON PL toward LONDRY CT. | 0.1 miles |
| **2:** Turn LEFT onto LONDRY CT. | <0.1 miles |
| **3:** Turn RIGHT onto COLLEGE MANOR DR. | 0.3 miles |
| **4:** Turn LEFT onto MULOCK DR / RR-74. | 1.3 miles |
| **5:** Take the HWY-404 S ramp toward TORONTO. | 0.4 miles |
| **6:** Merge onto PROVINCIAL ROUTE 404 S. | 13.9 miles |
| **7:** Take the HWY-407 ETR exit- EXIT 26. | 0.2 miles |
| **8:** Merge onto HWY-407 ETR W (Portions toll). | 29.5 miles |
| **9:** Take the HWY-401 W exit- EXIT 34- toward LONDON. | 1.4 miles |
| **10:** Merge onto PROVINCIAL ROUTE 401 W. | 197.9 miles |
| **11:** Stay STRAIGHT to go onto TALBOT RD E / PROVINCIAL ROUTE 3 N. Continue to follow PROVINCIAL ROUTE 3 N (Portions toll) (Crossing into *UNITED STATES* MICHIGAN). | 7.4 miles |
| **12:** PROVINCIAL ROUTE 3 N becomes AMBASSADOR BRIDGE. | 0.7 miles |
| **13:** AMBASSADOR BRIDGE becomes W FISHER FWY. | <0.1 miles |
| **14:** Merge onto I-75 N toward DETROIT. | 0.7 miles |
| **15:** Take EXIT 49 toward M-10 / LODGE FWY / ROSA PARKS BLVD / CIVIC CENTER. | 0.3 miles |
| **16:** Take the exit on the LEFT toward M-10 / LODGE FWY / CIVIC CENTER. | 0.2 miles |

| | | |
|---|---|---|
| **17:** Take the M-10 S exit toward CIVIC CENTER. | | 0.6 miles |
| **18:** Merge onto JOHN C LODGE FWY / MI-10 S. | | 0.2 miles |
| **19:** Take the HOWARD ST exit toward COBO ROOF. | | 0.1 miles |
| **20:** Keep LEFT at the fork to go on 5TH ST. | | <0.1 miles |
| **21:** Turn LEFT onto W LAFAYETTE BLVD. | | 0.4 miles |
| **22:** End at **231 W Lafayette Blvd** Detroit, MI 48226-2700, US | | |

**Total Est. Time: 4 hours, 32 minutes        Total Est. Distance: 256.69 miles**

Driving Directions from Newmarket, ON to 231 W Lafayette Blvd, Detroit, MI          Page 3 of 3



**Start:**
**Newmarket, ON CA**

**End:**
**231 W Lafayette Blvd**
Detroit, MI 48226-2700, US



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road
conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no
responsibility for any loss or delay resulting from such use.

# EXHIBIT K
# (PART 2 OF 4)

**MAPQUEST.**



**Start:**  **Reynoldsburg, OH US**

**End:**  **844 N King St**
Wilmington, DE 19801-3519, US

**Notes:**

| Directions | Distance |
|---|---|
| **Total Est. Time:** 7 hours, 40 minutes    **Total Est. Distance:** 451.91 miles | |
| **START** **1:** Start out going NORTH on BRIARCLIFF RD toward E MAIN ST / US-40. | <0.1 miles |
| **2:** Turn RIGHT onto E MAIN ST / US-40. | 0.5 miles |
| **3:** Turn RIGHT onto OH-256 / LANCASTER AVE. | 0.1 miles |
| **SOUTH 256** **4:** Turn LEFT onto OH-256 / LANCASTER AVE. Continue to follow OH-256 S. | 1.6 miles |
| **EAST 70** **5:** Merge onto I-70 E via the ramp on the LEFT toward WHEELING | 107.2 miles |
| **EAST 470** **6:** Merge onto I-470 E via EXIT 219 toward BELLAIRE / WASHINGTON PA (Crossing into WEST VIRGINIA). | 10.5 miles |
| **EAST 70** **7:** Merge onto I-70 E (Crossing into PENNSYLVANIA). | 66.7 miles |
| **EAST 76** **8:** Merge onto I-76 E via EXIT 58 toward BREEZEWOOD / NEW JERSEY (Portions toll). | 238.4 miles |
| **312 EXIT** **9:** Take the PA-100 exit- EXIT 312- toward POTTSTOWN / WEST CHESTER. | 0.4 miles |
| **SOUTH 100** **10:** Merge onto PA-100 S toward DOWNINGTOWN. | 7.6 miles |
| **SOUTH 202** **11:** Take US-202 S (Crossing into DELAWARE). | 16.4 miles |
| **SOUTH 202** **12:** US-202 S becomes DE-202 S. | 1.2 miles |
| **SOUTH 13 BR** **13:** Turn RIGHT onto N MARKET ST / US-13 BR. Continue to follow US-13 BR S. | 0.7 miles |
| **END** **14:** End at **844 N King St** Wilmington, DE 19801-3519, US | |
| **Total Est. Time:** 7 hours, 40 minutes    **Total Est. Distance:** 451.91 miles | |

Driving Directions from Reynoldsburg, OH to 844 N King St, Wilmington, DE    Page 2 of 2



**Start:**
**Reynoldsburg, OH US**

**End:**
**844 N King St**
Wilmington, DE 19801-3519, US





All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road
conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no
responsibility for any loss or delay resulting from such use.





**Start:**   **Reynoldsburg, OH US**

**End:**     **231 W Lafayette Blvd**
             Detroit, MI 48226-2700, US

**Notes:**

| Directions | Distance |
|---|---|

**Total Est. Time:** 3 hours, 36 minutes        **Total Est. Distance:** 208.32 miles

| | | |
|---|---|---|
| **START** | **1:** Start out going NORTH on BRIARCLIFF RD toward E MAIN ST / US-40. | <0.1 miles |
| | **2:** Turn LEFT onto E MAIN ST / US-40. | 1.4 miles |
| **NORTH 270** | **3:** Merge onto I-270 N toward CLEVELAND. | 17.1 miles |
| **NORTH 23** | **4:** Merge onto US-23 N via EXIT 23 toward DELAWARE. | 66.6 miles |
| **WEST 15** | **5:** Stay STRAIGHT to go onto OH-15 W. | 16.9 miles |
| **NORTH 75** | **6:** Merge onto I-75 N toward TOLEDO (Crossing into MICHIGAN). | 103.9 miles |
| **49 EXIT** | **7:** Take EXIT 49 toward M-10 / LODGE FWY / ROSA PARKS BLVD / CIVIC CENTER. | 0.3 miles |
| **EXIT** | **8:** Take the exit on the LEFT toward M-10 / LODGE FWY / CIVIC CENTER. | 0.2 miles |
| **EXIT** | **9:** Take the M-10 S exit toward CIVIC CENTER. | 0.6 miles |
| **SOUTH 10** | **10:** Merge onto JOHN C LODGE FWY / MI-10 S. | 0.2 miles |
| **EXIT** | **11:** Take the HOWARD ST exit toward COBO ROOF. | 0.1 miles |
| | **12:** Keep LEFT at the fork to go on 5TH ST. | <0.1 miles |
| | **13:** Turn LEFT onto W LAFAYETTE BLVD. | 0.4 miles |
| **END** | **14:** End at **231 W Lafayette Blvd** Detroit, MI 48226-2700, US | |

**Total Est. Time:** 3 hours, 36 minutes        **Total Est. Distance:** 208.32 miles

Driving Directions from Reynoldsburg, OH to 231 W Lafayette Blvd, Detroit, MI    Page 2 of 2



**Start:**
**Reynoldsburg, OH US**

**End:**
**231 W Lafayette Blvd**
Detroit, MI 48226-2700, US



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.

# MAPQUEST.



**Put yourself on the map.**

**Start:**  **Boaz, AL US**

**End:**  **844 N King St**
Wilmington, DE 19801-3519, US

**Notes:**

| Directions | Distance |
|---|---|

**Total Est. Time:** 12 hours, 55 minutes    **Total Est. Distance:** 810.69 miles

| | Direction | Distance |
|---|---|---|
| START | **1:** Start out going EAST on COLLEGE AVE toward BEL AIR ST. | <0.1 miles |
| | **2:** Turn RIGHT onto N MAIN ST / AL-205. | 0.1 miles |
| | **3:** Turn LEFT onto AL-168 / W MILL AVE. | 0.8 miles |
| SOUTH 431 | **4:** Turn SLIGHT RIGHT onto US-431 S / AL-1 S. | 14.4 miles |
| EAST 278 | **5:** Turn RIGHT onto US-278 E / 5TH AVE NW / US-431 S / AL-1 S / AL-74 E. | 0.8 miles |
| NORTH 59 | **6:** Merge onto I-59 N via the ramp on the LEFT (Crossing into GEORGIA). | 77.6 miles |
| EAST 24 | **7:** Merge onto I-24 E toward CHATTANOOGA (Crossing into TENNESSEE). | 17.4 miles |
| NORTH 75 | **8:** Merge onto I-75 N via EXIT 185B on the LEFT toward KNOXVILLE. | 100.5 miles |
| EAST 40 | **9:** Take I-40 E toward KNOXVILLE. | 36.3 miles |
| NORTH 81 | **10:** Merge onto I-81 N via EXIT 421 on the LEFT toward BRISTOL (Crossing into VIRGINIA). | 376.1 miles |
| EAST 66 | **11:** Merge onto I-66 E via EXIT 300 toward FORT ROYAL / WASHINGTON. | 64.7 miles |
| NORTH 495 | **12:** Merge onto I-495 N / CAPITAL BELTWAY toward BALTIMORE (Crossing into MARYLAND). | 21.5 miles |
| NORTH 95 | **13:** Merge onto I-95 N via EXIT 27 toward BALTIMORE / NEW YORK (Portions toll) (Crossing into DELAWARE). | 98.7 miles |
| EXIT 7 | **14:** Take EXIT 7 toward SR-52 / DELAWARE AVE. | 0.1 miles |
| | **15:** Turn SLIGHT LEFT onto N ADAMS ST. | 0.2 miles |
| | **16:** Turn SLIGHT RIGHT onto DELAWARE AVE / DE-52 S. Continue to follow | 0.5 miles |

| | DE-52 S. | |
|---|---|---|
| | **17:** Turn RIGHT onto N KING ST / US-13 BR S. | 0.1 miles |
| | **18:** End at **844 N King St**<br>Wilmington, DE 19801-3519, US | |

**Total Est. Time:** 12 hours, 55 minutes       **Total Est. Distance:** 810.69 miles

Driving Directions from Boaz, AL to 844 N King St, Wilmington, DE                    Page 3 of 3



**Start:**
**Boaz, AL US**

**End:**
**844 N King St**
Wilmington, DE 19801-3519, US



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road
conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no
responsibility for any loss or delay resulting from such use.

# EXHIBIT K
# (PART 3 OF 4)





WE KNOW HOTELS INSIDE AND OUT.®

Find Deals in your Favorite Cities!  GO!


hotels.com

**Start:** Boaz, AL US

**End:** 231 W Lafayette Blvd
Detroit, MI 48226-2700, US

**Notes:**

| Directions | Distance |
|---|---|

**Total Est. Time:** 11 hours, 29 minutes     **Total Est. Distance:** 724.90 miles

| | | |
|---|---|---|
| START | **1:** Start out going EAST on COLLEGE AVE toward BEL AIR ST. | <0.1 miles |
| | **2:** Turn RIGHT onto N MAIN ST / AL-205. | 0.1 miles |
| | **3:** Turn LEFT onto AL-168 / W MILL AVE. | 0.8 miles |
| SOUTH 431 | **4:** Turn SLIGHT RIGHT onto US-431 S / AL-1 S. | 14.4 miles |
| EAST 278 | **5:** Turn RIGHT onto US-278 E / 5TH AVE NW / US-431 S / AL-1 S / AL-74 E. | 0.8 miles |
| NORTH 59 | **6:** Merge onto I-59 N via the ramp on the LEFT (Crossing into GEORGIA). | 77.6 miles |
| EAST 24 | **7:** Merge onto I-24 E toward CHATTANOOGA (Crossing into TENNESSEE). | 17.4 miles |
| NORTH 75 | **8:** Merge onto I-75 N via EXIT 185B on the LEFT toward KNOXVILLE. | 103.9 miles |
| NORTH 75 | **9:** Merge onto I-75 N via EXIT 3 toward LEXINGTON (Passing through KENTUCKY and OHIO- then crossing into MICHIGAN). | 507.4 miles |
| 49 EXIT | **10:** Take EXIT 49 toward M-10 / LODGE FWY / ROSA PARKS BLVD / CIVIC CENTER. | 0.3 miles |
| EXIT | **11:** Take the exit on the LEFT toward M-10 / LODGE FWY / CIVIC CENTER. | 0.2 miles |
| EXIT | **12:** Take the M-10 S exit toward CIVIC CENTER. | 0.6 miles |
| SOUTH 10 | **13:** Merge onto JOHN C LODGE FWY / MI-10 S. | 0.2 miles |
| EXIT | **14:** Take the HOWARD ST exit toward COBO ROOF. | 0.1 miles |
| | **15:** Keep LEFT at the fork to go on 5TH ST. | <0.1 miles |
| | **16:** Turn LEFT onto W LAFAYETTE BLVD. | 0.4 miles |



**17:** End at **231 W Lafayette Blvd**
Detroit, MI 48226-2700, US

**Total Est. Time:** 11 hours, 29 minutes     **Total Est. Distance:** 724.90 miles

Driving Directions from Boaz, AL to 231 W Lafayette Blvd, Detroit, MI            Page 3 of 3



**Start:**
**Boaz, AL US**

**End:**
**231 W Lafayette Blvd**
Detroit, MI 48226-2700, US



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road
conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no
responsibility for any loss or delay resulting from such use.

# MAPQUEST.



**Start:** **Saint Marys, OH US**

**End:** **844 N King St**
Wilmington, DE 19801-3519, US

**Notes:**

| Directions | | Distance |
|---|---|---|
| **Total Est. Time: 9 hours, 32 minutes** | **Total Est. Distance: 560.16 miles** | |
| START | **1:** Start out going NORTHWEST on S FRONT ST toward OH-29 / OH-66 / W SPRING ST. | <0.1 miles |
| | **2:** Turn RIGHT onto OH-29 / OH-66 / W SPRING ST. | 0.3 miles |
| | **3:** Turn LEFT onto OH-66 / N SPRUCE ST. | 0.6 miles |
| EAST 33 | **4:** Merge onto US-33 E. | 81.4 miles |
| SOUTH 270 | **5:** Merge onto I-270 S toward GROVE CITY. | 8.1 miles |
| EAST 70 | **6:** Merge onto I-70 E via EXIT 8 toward COLUMBUS. | 127.2 miles |
| EAST 470 | **7:** Merge onto I-470 E via EXIT 219 toward BELLAIRE / WASHINGTON PA (Crossing into WEST VIRGINIA). | 10.5 miles |
| EAST 70 | **8:** Merge onto I-70 E (Crossing into PENNSYLVANIA). | 66.7 miles |
| EAST 76 | **9:** Merge onto I-76 E via EXIT 58 toward BREEZEWOOD / NEW JERSEY (Portions toll). | 238.4 miles |
| 312 EXIT | **10:** Take the PA-100 exit- EXIT 312- toward POTTSTOWN / WEST CHESTER. | 0.4 miles |
| SOUTH 100 | **11:** Merge onto PA-100 S toward DOWNINGTOWN. | 7.6 miles |
| SOUTH 202 | **12:** Take US-202 S (Crossing into DELAWARE). | 16.4 miles |
| SOUTH 202 | **13:** US-202 S becomes DE-202 S. | 1.2 miles |
| SOUTH 13 BR | **14:** Turn RIGHT onto N MARKET ST / US-13 BR. Continue to follow US-13 BR S. | 0.7 miles |
| END | **15:** End at **844 N King St** Wilmington, DE 19801-3519, US | |
| **Total Est. Time: 9 hours, 32 minutes** | **Total Est. Distance: 560.16 miles** | |

Driving Directions from Saint Marys, OH to 844 N King St, Wilmington, DE            Page 2 of 2



**Start:**
**Saint Marys, OH US**

**End:**
**844 N King St**
Wilmington, DE 19801-3519, US





All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road
conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no
responsibility for any loss or delay resulting from such use.



**MAPQUEST.**

**Start:**   **Saint Marys, OH US**

**End:**     **231 W Lafayette Blvd**
             Detroit, MI 48226-2700, US

**Notes:**

| Directions | Distance |
| --- | --- |

**Total Est. Time:** 2 hours, 41 minutes        **Total Est. Distance:** 164.57 miles

| | Directions | Distance |
| --- | --- | --- |
| START | **1:** Start out going NORTHWEST on S FRONT ST toward OH-29 / OH-66 / W SPRING ST. | <0.1 miles |
| | **2:** Turn RIGHT onto OH-29 / OH-66 / W SPRING ST. | 0.3 miles |
| | **3:** Turn LEFT onto OH-66 / N SPRUCE ST. | 0.6 miles |
| EAST 33 | **4:** Merge onto US-33 E. | 11.4 miles |
| NORTH 75 | **5:** Merge onto I-75 N toward TOLEDO (Crossing into MICHIGAN). | 150.0 miles |
| 49 EXIT | **6:** Take EXIT 49 toward M-10 / LODGE FWY / ROSA PARKS BLVD / CIVIC CENTER. | 0.3 miles |
| EXIT | **7:** Take the exit on the LEFT toward M-10 / LODGE FWY / CIVIC CENTER. | 0.2 miles |
| EXIT | **8:** Take the M-10 S exit toward CIVIC CENTER. | 0.6 miles |
| SOUTH 10 | **9:** Merge onto JOHN C LODGE FWY / MI-10 S. | 0.2 miles |
| EXIT | **10:** Take the HOWARD ST exit toward COBO ROOF. | 0.1 miles |
| | **11:** Keep LEFT at the fork to go on 5TH ST. | <0.1 miles |
| | **12:** Turn LEFT onto W LAFAYETTE BLVD. | 0.4 miles |
| END | **13:** End at **231 W Lafayette Blvd** Detroit, MI 48226-2700, US | |

**Total Est. Time:** 2 hours, 41 minutes        **Total Est. Distance:** 164.57 miles



**Start:**
**Saint Marys, OH US**

**End:**
**231 W Lafayette Blvd**
Detroit, MI 48226-2700, US



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road
conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no
responsibility for any loss or delay resulting from such use.

# MAPQUEST.



**Start:** **Eastaboga, AL US**

**End:** **844 N King St**
Wilmington, DE 19801-3519, US

**Notes:**

| Directions | Distance |
|---|---|

**Total Est. Time:** 13 hours, 21 minutes      **Total Est. Distance:** 826.86 miles

| | | |
|---|---|---|
| START | **1:** Start out going NORTH on CR-5 / MUDD ST toward WAITES RD. Continue to follow MUDD ST. | 11.2 miles |
| | **2:** Stay STRAIGHT to go onto CR-93 / MUDD ST. | 0.3 miles |
| NORTH 77 | **3:** Turn RIGHT onto AL-77 N. | 18.6 miles |
| NORTH 59 | **4:** Merge onto I-59 N via the ramp on the LEFT (Crossing into GEORGIA). | 79.9 miles |
| EAST 24 | **5:** Merge onto I-24 E toward CHATTANOOGA (Crossing into TENNESSEE). | 17.4 miles |
| NORTH 75 | **6:** Merge onto I-75 N via EXIT 185B on the LEFT toward KNOXVILLE. | 100.5 miles |
| EAST 40 | **7:** Take I-40 E toward KNOXVILLE. | 36.3 miles |
| NORTH 81 | **8:** Merge onto I-81 N via EXIT 421 on the LEFT toward BRISTOL (Crossing into VIRGINIA). | 376.1 miles |
| EAST 66 | **9:** Merge onto I-66 E via EXIT 300 toward FORT ROYAL / WASHINGTON. | 64.7 miles |
| NORTH 495 | **10:** Merge onto I-495 N / CAPITAL BELTWAY toward BALTIMORE (Crossing into MARYLAND). | 21.5 miles |
| NORTH 95 | **11:** Merge onto I-95 N via EXIT 27 toward BALTIMORE / NEW YORK (Portions toll) (Crossing into DELAWARE). | 98.7 miles |
| 7 EXIT | **12:** Take EXIT 7 toward SR-52 / DELAWARE AVE.. | 0.1 miles |
| | **13:** Turn SLIGHT LEFT onto N ADAMS ST. | 0.2 miles |
| SOUTH 52 | **14:** Turn SLIGHT RIGHT onto DELAWARE AVE / DE-52 S. Continue to follow DE-52 S. | 0.5 miles |
| SOUTH 13 BR | **15:** Turn RIGHT onto N KING ST / US-13 BR S. | 0.1 miles |
| | **16:** End at 844 N King St | |

`END`    Wilmington, DE 19801-3519, US

**Total Est. Time:** 13 hours, 21 minutes    **Total Est. Distance:** 826.86 miles



**Start:**
**Eastaboga, AL US**

**End:**
**844 N King St**
Wilmington, DE 19801-3519, US



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road
conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no
responsibility for any loss or delay resulting from such use.

# MAPQUEST.



☒ Advertisement

**Start:**  **Eastaboga, AL US**

**End:**  **231 W Lafayette Blvd**
Detroit, MI 48226-2700, US

**Notes:**

| Directions | Distance |
|---|---|

**Total Est. Time: 11 hours, 55 minutes    Total Est. Distance: 741.07 miles**

| | Direction | Distance |
|---|---|---|
| START | **1:** Start out going NORTH on CR-5 / MUDD ST toward WAITES RD. Continue to follow MUDD ST. | 11.2 miles |
| | **2:** Stay STRAIGHT to go onto CR-93 / MUDD ST. | 0.3 miles |
| NORTH 77 | **3:** Turn RIGHT onto AL-77 N. | 18.6 miles |
| NORTH 59 | **4:** Merge onto I-59 N via the ramp on the LEFT (Crossing into GEORGIA). | 79.9 miles |
| EAST 24 | **5:** Merge onto I-24 E toward CHATTANOOGA (Crossing into TENNESSEE). | 17.4 miles |
| NORTH 75 | **6:** Merge onto I-75 N via EXIT 185B on the LEFT toward KNOXVILLE. | 103.9 miles |
| NORTH 75 | **7:** Merge onto I-75 N via EXIT 3 toward LEXINGTON (Passing through KENTUCKY and OHIO- then crossing into MICHIGAN). | 507.4 miles |
| 49 EXIT | **8:** Take EXIT 49 toward M-10 / LODGE FWY / ROSA PARKS BLVD / CIVIC CENTER. | 0.3 miles |
| EXIT | **9:** Take the exit on the LEFT toward M-10 / LODGE FWY / CIVIC CENTER. | 0.2 miles |
| EXIT | **10:** Take the M-10 S exit toward CIVIC CENTER. | 0.6 miles |
| SOUTH 10 | **11:** Merge onto JOHN C LODGE FWY / MI-10 S. | 0.2 miles |
| EXIT | **12:** Take the HOWARD ST exit toward COBO ROOF. | 0.1 miles |
| | **13:** Keep LEFT at the fork to go on 5TH ST. | <0.1 miles |
| | **14:** Turn LEFT onto W LAFAYETTE BLVD. | 0.4 miles |
| END | **15:** End at **231 W Lafayette Blvd** Detroit, MI 48226-2700, US | |

**Total Est. Time: 11 hours, 55 minutes    Total Est. Distance: 741.07 miles**



**Start:**
**Eastaboga, AL US**

**End:**
**231 W Lafayette Blvd**
Detroit, MI 48226-2700, US





All rights reserved. Use Subject to License/Copyright

These directions are informational only. No representation is made or warranty given as to their content, road
conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no
responsibility for any loss or delay resulting from such use.

# EXHIBIT K
# (PART 4 OF 4)

Driving Directions from Shelburne, ON to 844 N King St, Wilmington, DE              Page 1 of 3

# MAPQUEST.



**Start:**  **Shelburne, ON CA**

**End:**  **844 N King St**
          Wilmington, DE 19801-3519, US

**Notes:**

| Directions | Distance |
|---|---|

**Total Est. Time: 9 hours, 25 minutes       Total Est. Distance: 551.85 miles**

| | Directions | Distance |
|---|---|---|
| START | **1:** Start out going SOUTH on 3RD LINE / CR-11 toward 25 SDRD. | 3.7 miles |
| | **2:** Turn LEFT onto 20 SDRD. | 3.3 miles |
| | **3:** Turn RIGHT onto PROVINCIAL ROUTE 10 / PROVINCIAL ROUTE 24. Continue to follow PROVINCIAL ROUTE 10. | 28.8 miles |
| | **4:** Turn LEFT onto BOVAIRD DR / PROVINCIAL ROUTE 7. | 1.5 miles |
| RAMP | **5:** Take the HWY-7 E / HWY-410 S ramp. | 0.4 miles |
| SOUTH 410 | **6:** Merge onto PROVINCIAL ROUTE 410 S. | 9.0 miles |
| EXIT | **7:** Take the RR-17 / CAWTHRA RD. / EASTGATE PKWY. exit on the LEFT. | 0.2 miles |
| EXIT | **8:** Take the HWY-403 exit on the LEFT toward HAMILTON. | 0.3 miles |
| WEST 403 | **9:** Merge onto PROVINCIAL ROUTE 403 W. | 7.2 miles |
| | **10:** Merge onto HWY-407 ETR W via the exit on the LEFT (Portions toll). | 15.2 miles |
| | **11:** Merge onto QEW toward NIAGARA. | 39.5 miles |
| 37 EXIT | **12:** Take the HWY-405 exit- EXIT 37- on the LEFT toward QUEENSTON. | 0.2 miles |
| EAST 405 | **13:** Merge onto PROVINCIAL ROUTE 405 E. | 5.1 miles |
| | **14:** PROVINCIAL ROUTE 405 E becomes QUEENSTON-LEWISTON BRIDGE (Crossing into *UNITED STATES* NEW YORK). | 0.5 miles |
| SOUTH 190 | **15:** QUEENSTON-LEWISTON BRIDGE becomes I-190 S (Portions toll). | 14.7 miles |
| EAST 290 | **16:** Merge onto I-290 E / YOUNGMANN EXPY via EXIT 16 toward I-90 / TONAWANDA / ROCHESTER. | 9.8 miles |

| | | |
|---|---|---|
| **EAST 90** | **17:** Merge onto I-90 E / NEW YORK STATE THRUWAY E via EXIT 1-49 on the LEFT toward ALBANY (Portions toll). | 130.7 miles |
| **EAST 690** | **18:** Merge onto I-690 E via EXIT 39 toward SYRACUSE / FAIRGROUNDS. | 9.8 miles |
| **SOUTH 81** | **19:** Merge onto I-81 S (Crossing into PENNSYLVANIA). | 124.1 miles |
| **194 EXIT** | **20:** Take the PENNSYLVANIA TURNPIKE exit- EXIT 194~ toward US-6 / US-11 / CLARKS SUMMIT. | 0.1 miles |
| **SOUTH 476** | **21:** Merge onto I-476 S toward ALLENTOWN (Portions toll). | 131.1 miles |
| **SOUTH 95** | **22:** Merge onto I-95 S toward CHESTER (Crossing into DELAWARE). | 14.7 miles |
| **7A EXIT** | **23:** Take EXIT 7A toward SR-52 S / DELAWARE AVE.. | 0.1 miles |
| | **24:** Stay STRAIGHT to go onto W 11TH ST. | 0.5 miles |
| **SOUTH 13 BR** | **25:** Turn RIGHT onto N KING ST / US-13 BR S. | 0.1 miles |
| **END** | **26:** End at **844 N King St** Wilmington, DE 19801-3519, US | |

**Total Est. Time:** 9 hours, 25 minutes          **Total Est. Distance:** 551.85 miles



**Start:**
**Shelburne, ON CA**

**End:**
**844 N King St**
Wilmington, DE 19801-3519, US



All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.

# ≡ MAPQUEST. ≡



**Start:**  **Shelburne, ON CA**

**End:**  **231 W Lafayette Blvd**
Detroit, MI 48226-2700, US

**Holiday Inn Hotels: Official Site**

Guaranteed Lowest Internet Rates

Book Online and pay no booking fees

Click Here to Make a Reservation!

Or Call 877-410-6681 to make a reservation

**Notes:**

| Directions | Distance |
|---|---|
| **Total Est. Time: 4 hours, 31 minutes     Total Est. Distance: 233.24 miles** | |
| **1:** Start out going SOUTH on 3RD LINE / CR-11 toward 25 SDRD. Continue to follow CR-11. | 11.8 miles |
| **2:** Turn RIGHT onto CR-3 / ORANGEVILLE / FERGUS RD. | 10.4 miles |
| **3:** CR-3 / ORANGEVILLE / FERGUS RD becomes CR-18. | 7.6 miles |
| **4:** Turn SLIGHT LEFT onto PROVINCIAL ROUTE 6 / TOWER ST S. Continue to follow PROVINCIAL ROUTE 6. | 10.9 miles |
| **5:** Turn RIGHT onto WOODLAWN RD W / PROVINCIAL ROUTE 6. | 1.4 miles |
| **6:** Turn LEFT onto HANLON PKWY / PROVINCIAL ROUTE 7 E / PROVINCIAL ROUTE 6 S. | 2.1 miles |
| **7:** Take the HWY-7 E / WELLINGTON ST. ramp toward ACTON. | 0.2 miles |
| **8:** Turn RIGHT onto WELLINGTON ST W / PROVINCIAL ROUTE 24. Continue to follow PROVINCIAL ROUTE 24 S. | 8.6 miles |
| **9:** Take the HWY-401 W ramp toward LONDON. | 0.4 miles |
| **10:** Merge onto PROVINCIAL ROUTE 401 W. | 168.3 miles |
| **11:** Stay STRAIGHT to go onto TALBOT RD E / PROVINCIAL ROUTE 3 N. Continue to follow PROVINCIAL ROUTE 3 N (Portions toll) (Crossing into *UNITED STATES* MICHIGAN). | 7.4 miles |
| **12:** PROVINCIAL ROUTE 3 N becomes AMBASSADOR BRIDGE. | 0.7 miles |
| **13:** AMBASSADOR BRIDGE becomes W FISHER FWY. | <0.1 miles |
| **14:** Merge onto I-75 N toward DETROIT. | 0.7 miles |
| **15:** Take EXIT 49 toward M-10 / LODGE FWY / ROSA PARKS BLVD / CIVIC CENTER. | 0.3 miles |
| **16:** Take the exit on the LEFT toward M-10 / LODGE FWY / CIVIC CENTER. | 0.2 miles |

Driving Directions from Shelburne, ON to 231 W Lafayette Blvd, Detroit, MI

Page 2 of 3

| | | |
|---|---|---|
| EXIT | **17:** Take the M-10 S exit toward CIVIC CENTER. | 0.6 miles |
| SOUTH 10 | **18:** Merge onto JOHN C LODGE FWY / MI-10 S. | 0.2 miles |
| EXIT | **19:** Take the HOWARD ST exit toward COBO ROOF. | 0.1 miles |
| | **20:** Keep LEFT at the fork to go on 5TH ST. | <0.1 miles |
| | **21:** Turn LEFT onto W LAFAYETTE BLVD. | 0.4 miles |
| END | **22:** End at **231 W Lafayette Blvd**<br>Detroit, MI 48226-2700, US | |

**Total Est. Time:** 4 hours, 31 minutes     **Total Est. Distance:** 233.24 miles



**Start:**
**Shelburne, ON CA**

**End:**
**231 W Lafayette Blvd**
Detroit, MI 48226-2700, US

All rights reserved. Use Subject to License/Copyright

These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.

# EXHIBIT 9

LEXSEE 2002 US DIST LEXIS 20574

**IKOS SYSTEMS, INC., Plaintiff, v. CADENCE DESIGN SYSTEMS, INC., and QUICK TURN DESIGN SYSTEMS, INC., Defendant.**

**C.A. No. 02–1335–GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2002 U.S. Dist. LEXIS 20574**

**October 21, 2002, Decided**

**DISPOSITION:** [*1] Defendants' motion to transfer the case granted.

**COUNSEL:** For Ikos Systems Inc, PLAINTIFF: Robert K Payson, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Cadence Design Systems, Inc, Quickturn Design Systems, Inc, DEFENDANTS: Josy W Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For Cadence Design Systems, Inc, Quickturn Design Systems, Inc, COUNTER–CLAIMANTS: Josy W Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For Ikos Systems Inc, COUNTER–DEFENDANT: Robert K Payson, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

On July 29, 2002, the plaintiff, IKOS Systems, Inc. ("IKOS"), filed the instant action for patent infringement against Cadence Design Systems, Inc. ("Cadence") and Quick Turn Design Systems, Inc. ("Quick Turn") (collectively "the defendants"). IKOS alleges that Quick Turn's Palladium TM design verification product infringes United States Patent No. 5,847,578 ("the '578 patent"). The defendants, move [*2] to transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) (D.I. 11). For the following reasons, the court will grant the defendants' motion.

**II. DISCUSSION**

Each of the parties in this case is a Delaware corporation n1 with headquarters located within several miles of one another in what is commonly known as the Silicon Valley of northern California.

> n1 IKOS is a subsidiary of Mentor Graphics Corporation ("Mentor") which is incorporated under the laws of the State of Oregon. The defendants assert that Mentor is the real party in interest in this action. IKOS does not seem to seriously contest this assertion. Nevertheless, given the court's analysis and conclusions as to the most appropriate forum for the litigation of this matter, the court need not reach this issue.

The defendants move to transfer this action to the District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) [*3] . Section 1404(a) provides that "for convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). It is the movants' burden to establish the need for transfer, and 'the plaintiff's choice of venue [will] not be lightly disturbed.' *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted).

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id.* . This inquiry requires "a multi–factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but

  

2002 U.S. Dist. LEXIS 20574, *3

all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be [*4] produced in the alternative forum. n2 *Id.* at 879. Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879–80 (citations omitted).

> n2 The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.*, 28 F. Supp. 2d 192 (D. Del. 1998).

Upon consideration of these factors, the court finds that the defendants have met their burden of demonstrating that transfer is appropriate. In reaching this conclusion the court relied on the following considerations, among others: (1) while [*5] the defendants and the plaintiff are Delaware corporations and should reasonably expect to litigate in the forum, there seems to be little connection between Delaware and this action or the parties; (2) each party is headquartered in northern California; (3) the parties are large national and international organizations with apparently substantial assets; (4) because the parties maintain geographically diverse operating locations, travel time and convenience in the aggregate would be neither increased nor decreased substantially with a transfer of forum; (5) any disparity in court congestion is not so great as to justify a transfer of venue; (6) while patent disputes are often not properly characterized as "local" in nature or otherwise unique to a particular locale, *see Affymetrix, 28*

F. Supp. 2d at 207, the relevant industry, the Electronic Design Automotive Industry, is apparently located in the Silicon Valley. Finally, IKOS has identified six potential witnesses who are not employed by the defendants and reside on the east coast. n3 However, it appears that the majority of the defendants' engineers, as well as other potential witnesses, are located in the Northern [*6] District. Thus, the court is convinced that this fact and the other public and private interests are sufficient to tip "the balance of convenience ... *strongly* in favor of [the] defendant[s]." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (emphasis in original).

> n3 In its brief and an accompanying declaration by Giovanni Mancini, a former employee of the plaintiff, IKOS has identified William R. Beausoleil as a seventh potential non-party employee witness. In his declaration, Mr. Mancini states that the witness elected not to join the defendant, Cadence. In contrast, the defendants offer the declaration of the witness himself. In that declaration, Mr. Beausoleil attests that he entered the employ of Cadence on March 28, 2002. The court will credit Mr. Beausoleil's declaration.

### III. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:

> 1. The defendants' motion to transfer the case to the United States District Court for the Northern District [*7] of California (D.I. 11) is GRANTED.

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

Dated: October 21, 2002

