**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-391 (GMS) |
| HYUNDAI MOTOR AMERICA, BMW OF NORTH AMERICA, LLC and KIA MOTORS AMERICA, INC., | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

**REPLY IN SUPPORT OF BMW OF NORTH AMERICA, LLC'S
MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorney for Defendant
BMW of North America LLC*

OF COUNSEL:

Joseph P. Lavelle
Thomas M. Dunham
HOWREY LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

Dated: December 14, 2006
767640/30458

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT..........................................................................................................2

    A.    Incorporation In Delaware Is Not A Legitimate Reason to Prevent
           Transfer When the Proposed Transferee Forum Is More
           Convenient ...............................................................................................2

    B.    The Balance of Private Interests Favors Transfer to the Eastern
           District of Michigan..................................................................................3

          1.    The Eastern District of Michigan is More Convenient to the
               Inventors of the Patents In Suit.......................................................3

          2.    The Eastern District of Michigan is More Convenient to
               Third Party Witnesses ......................................................................5

    C.    The Balance of Public Interests Favors Transfer to the Eastern
           District of Michigan..................................................................................5

CONCLUSION.......................................................................................................7

# TABLE OF AUTHORITIES

**CASES**

*Affymetrix, Inc. v. Synteni, Inc.,*
   28 F. Supp. 2d 192 (D. Del. 1998)..............................................................................3

*Alcon Lab., Inc. v. Starr Surgical Co.,*
   C.A. No. 95-233-LON, Magis Report & Rec. (D. Del. Oct. 26, 1995).........................3

*Alloc, Inc. v. Unilin Deco N.V.,*
   C.A. No. 03-253-GMS, 2006 WL 3050815 (D. Del. Oct. 26, 2006) ...............1, 2, 5, 6

*Findwhat.com v. Overture Services, Inc.,*
   2003 WL 402649 (S.D.N.Y. Feb. 21, 2003)................................................................4

*Liggett group, Inc. v. R.J. Reynolds Tobacco Co.,*
   102 F. Supp. 2d 518 (D.N.J. 2000) ............................................................................6

*Nilssen v. OSRAM Sylvania, Inc.,*
   C.A. No. 00-695-JJF, 2001 WL 34368395 (D. Del. May 1, 2001) ..........................3, 5

*Schering Corp. v. Amgen, Inc.,*
   969 F. Supp. 258 (D. Del. 1997)................................................................................3

*Sherwood Med. Co. v. IVAC Med. Sys., Inc.,*
   C.A. No. 96-305-MMS, 1996 WL 700261 (D. Del. Nov. 25, 1996)............................3

*SRU Biosystems, Inc. v. Hobb,*
   C.A. No. 05-201-SLR, 2005 WL 2216889 (D. Del. Sept. 13, 2005) ..........................2

## INTRODUCTION

ATI's opposition demonstrates that this District has no substantial nexus to the litigation other than the fact that the parties, like many companies across the United States, are incorporated in Delaware. This Court recently reiterated that a party's incorporation in Delaware is not enough to prevent transfer when another forum is more convenient. *Alloc, Inc. v. Unilin Deco N.V.*, C.A. No. 03-253-GMS, 2006 WL 3050815 (D. Del. Oct. 26, 2006) (Ex. A hereto). ATI offers no other nexus between Delaware and this litigation. None of the parties maintain their principal place of business in Delaware, none of the party or known non-party witnesses reside in Delaware, and none of the activities concerning the accused products takes place in Delaware. On the other hand, the third party suppliers are in the Eastern District of Michigan, some of the inventors are located there, ATI (until recently) maintained a place of business there, and the Eastern District of Michigan has prior experience with sensor-related patent litigation between these defendants.

As the Court is aware, a similar motion to transfer has been filed in the related action *ATI v. General Motors, et al.*, C.A. No. 06-187-GMS. That litigation involves 11 of the same patents at issue here. Thus, the convenience of third party inventors and suppliers are similar, if not identical. All the defendants currently before this Court in both litigations have been sued previously by ATI in the Eastern District of Michigan, on an ATI patent relating to automobile impact sensors, the same subject matter at issue in this case. The Eastern District of Michigan has extensive familiarity with ATI, its litigation tactics and, more importantly, with the technology at issue in this case. Thus, the Eastern District of Michigan is both a logical and appropriate forum for both cases.

Finally, any doubt that ATI cast on BMWNA's motion to transfer by calling attention to the fact that Kia and Hyundai did not join the motion was removed last week when both co-defendants orally joined the motion.

## ARGUMENT

### A.    Incorporation In Delaware Is Not A Legitimate Reason to Prevent Transfer When the Proposed Transferee Forum Is More Convenient

The deference afforded ATI's choice of forum will apply only as long as ATI has selected the forum for some legitimate reason. *SRU Biosystems, Inc. v. Hobb*, C.A. No. 05-201-SLR, 2005 WL 2216889, at *2 (D. Del. Sept. 13, 2005) (Ex. B hereto). ATI's primary reason for choosing Delaware was the fact that it, and at least one other defendant, is incorporated in Delaware. Recently, however, the Court reiterated that a party's incorporation in Delaware is not enough to prevent transfer when the proposed transferee forum is more convenient, especially where, as here, there is little other connection between Delaware and the action or the parties. *Alloc,* 2006 WL 3050815, at *3. None of the parties maintain their principal place of business in Delaware, none of the party or known non-party witnesses reside in Delaware, and none of the activities concerning the accused products takes place in Delaware. On the other hand, the third party suppliers are in the Eastern District of Michigan, some of the inventors are located there, ATI (until recently) maintained a place of business there, and the Eastern District of Michigan has prior experience with sensor-related patent litigation between these defendants.

**B.    The Balance of Private Interests Favors Transfer to the Eastern District of Michigan**

**1.    The Eastern District of Michigan is More Convenient to the Inventors of the Patents In Suit**

To the extent that they are not under the control of ATI, only one inventor -- Mr. Breed -- out of the seven named inventors on the patents-in-suit is subject to compulsory process and can be forced to appear at a trial in Delaware. ATI's assurances that three out of the remaining six inventors have agreed to attend a trial in Delaware ring hollow, as recognized by the precedent cited by ATI. *See Schering Corp. v. Amgen, Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("an assurance that a named inventor will appear at trial is not equivalent to having him subject to the subpoena power of the trial court") (citing *Sherwood Med. Co. v. IVAC Med. Sys., Inc.*, C.A. No. 96-305-MMS, 1996 WL 700261, at *5 (D. Del. Nov. 25, 1996) (Ex. C hereto)). They can change their minds at any time, and become unavailable on a moment's notice. *See Nilssen v. OSRAM Sylvania, Inc.*, C.A. No. 00-695-JJF, 2001 WL 34368395, at *2 (D. Del. May 1, 2001) (Ex. D hereto) (party need not establish that third-party witness will definitely be unavailable for trial; rather, it is sufficient for purposes of the transfer analysis that the witness is not subject to the court's subpoena power); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 205 (D. Del. 1998) ("even previously cooperative witnesses may become reluctant participants where a trial in a distant state such as Delaware promises the incurrence of substantial, prolonged inconvenience") (citing *Alcon Lab., Inc. v. Starr Surgical Co.*, C.A. No. 95-233-LON, Magis Report & Rec., at 18 (D. Del. Oct. 26, 1995) (Ex. E hereto)).

The practical impact of keeping this case in Delaware is that ATI will gain an unfair advantage. ATI may be able to control which of the inventor witnesses will appear at trial and those that will not to avoid the risk of the inventors contradicting each other

under the rigors of live cross-examination in front of a jury. Transferring this case to the
Eastern District of Michigan, where at least three of the third-party inventors can be
compelled to appear at trial, will level the playing field. *See Findwhat.com v. Overture
Services, Inc.*, 2003 WL 402649, at *5-6 (S.D.N.Y. Feb. 21, 2003) (Ex. F hereto) (ability
to compel attendance of five non-party inventors in the transferee forum weighed in favor
of transfer).

ATI's suggestion that two inventor witnesses who live in Michigan and are
subject to compulsory process in the Eastern District of Michigan are somehow not as
important as its "chief" inventor witnesses is unknowable speculation at this point. As
long as their patents remain in the case, these third-party inventors are all important. It is
premature to speculate as to which inventor's testimony will be "critical" or "important"
at trial. They all possess information about the conception and reduction to practice of
the alleged invention of at least the patents on which they are named (and possibly about
the other related patents in suit), the prior art, as well as information about what the other
named inventors knew about the prior art. Each of the inventors is likely to have
differing recollections, perceptions and knowledge about the relevant facts and events.

Finally, although ATI is correct that third-party inventor Chen, who lives in
Ontario, Canada, is outside the subpoena power of the Eastern District of Michigan, ATI
ignores that he resides less than ten miles from the courthouse in Detroit. The Eastern
District of Michigan is obviously far more convenient for this third-party witness than
Delaware.

### 2. The Eastern District of Michigan is More Convenient to Third Party Witnesses

BMWNA's motion demonstrated the convenience of the Eastern District of Michigan to various third parties. At this early stage of the case, BMWNA cannot identify with specificity all of the likely third-party witnesses. *See Nilssen*, 2001 WL 34368395, at *3 (identification of potential third-party witnesses by identifying their employer and the subject matter of their anticipated testimony is sufficient for purposes of the venue analysis). However, it is common for foreign auto component vendors to maintain offices in the Detroit area to serve the auto industry there, and it is more likely than not that any such vendors will be located there than in Delaware.

Moreover, ATI's argument that the deposition testimony of these witnesses is sufficient for trial is unconvincing given that the Court has noted that video-taped depositions are not an adequate substitute for live testimony when conducting a transfer analysis. *See id.*

Thus, although the precise identity of various third parties will have to await ATI's identification of what it is accusing, there is no question that the relevant witnesses from these third-party suppliers and patent licensees, if found in the United States, are likely to be located in and around the Eastern District of Michigan.

### C. The Balance of Public Interests Favors Transfer to the Eastern District of Michigan

ATI argues that none of the defendants have places of business in the Eastern District of Michigan, but that they are incorporated in Delaware. However, although they may be incorporated in Delaware, all the defendants (in both cases) have moved to transfer the cases to Michigan. *See also Alloc,* 2006 WL 3050815, at *3.

5

Moreover, as the Court stated in *Alloc*, the most relevant inquiry in the public interest analysis is whether there are practical considerations that would make trial easy, expeditious or inexpensive. *Id.* Here, the balance of public interests favors transfer to the Eastern District of Michigan. As BMWNA asserted in its opening brief, and ATI ignored in its response, the cost, time and logistics of trial will be substantially shortened by the number of witnesses who are located in the Eastern District of Michigan. In addition, the Eastern District of Michigan is familiar with ATI and all the defendants and has relevant experience with its sensor-related patents, which would lessen the time the Court needs to educate itself on the technology and the players in the industry.

The balance of public interests also favors transfer if the Court grants GM's motion to transfer, which is also currently pending. The GM litigation involves 11 of the same patents that are at issue here and ATI is the plaintiff. In *Alloc*, the Court found that "where related lawsuits exist, 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.'" *Id.*, (citing *Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 537 (D.N.J. 2000) (citations omitted)) (motion to transfer granted where litigation on both patents already pending in transferee court).

## CONCLUSION

For the foregoing reasons, BMWNA respectfully requests that this Court transfer

this action to the Eastern District of Michigan.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph P. Lavelle
Thomas M. Dunham
HOWREY LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

Dated: December 14, 2006
767640/30458

By:   /s/ David E. Moore
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware 19801
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

*Attorney for Defendant*
*BMW of North America LLC*

7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on December 14, 2006, the foregoing document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Richard K. Herrmann
Mary Matterer
Morris, James, Hitchens & Williams
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

Paul E. Crawford
Patricia S. Rogowski
Connolly Bove Lodge & Hutz LLP
The Nemours Building, 8th Floor
1007 North Orange Street
Wilmington, DE 19801

I hereby certify that on December 14, 2006, I have Electronically Mailed the documents to the following non-registered participants:

Andrew Kochanowski
Sommers Schwartz, P.C.
2000 Town Center, Suite 900
Southfiled, MI 48075
akochanowski@sommerspc.com

Michael H. Baniak
Baniak Pine & Gannon
150 N. Wacker Drive, Suite 1200
Chicago, IL 60606
baniak@bpglaw.com

Jeffrey K. Sherwood
Frank C. Cimino
Paul A. Gennari
Jin-Suk Park
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
jsherwood@akingump.com
fcimino@akingump.com
pgennari@akingump.com
jspark@akingump.com

By:  */s/ David E. Moore*
      Richard L. Horwitz
      David E. Moore
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware 19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

749385 / 30458

2

# EXHIBIT A



Slip Copy
Slip Copy, 2006 WL 3050815 (D.Del.)
**(Cite as: Slip Copy)**

**H**

Briefs and Other Related Documents

Alloc, Inc. v. Unilin Decor N.V.D.Del.,2006.Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

ALLOC, INC., Berry Finance, N.V., and Välinge Aluminum AB, Plaintiffs,

v.

UNILIN DÉCOR N.V., and Quick-Step Flooring, Inc., Defendants.

ALLOC, INC., Berry Finance, N.V., and Välinge Innovation AB (f/k/a Välinge Aluminum AB), Plaintiffs,

v.

QUICK-STEP FLOORING, INC., Defendant.

**No. Civ.A. 03-253GMS, Civ.A. 05-587GMS.**

Oct. 26, 2006.

Francis Digiovanni, Connolly, Bove, Lodge & Hutz, Wilmington, DE, Daniel J. O'Connor, pro hac vice, Phoenix, AZ, David I. Roche, pro hac vice, Chicago, IL, for Plaintiffs.

David Ellis Moore, Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE, for Defendants.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

*1 On March 5, 2003 and December 12, 2005, respectively, Alloc, Inc. ("Alloc"), Berry Finance, N.V. ("Berry"), and Välinge Innovation AB ("Välinge") (collectively, "Alloc") filed the above-captioned actions against Unilin Décor N.V. ("Unilin"), Quick-Step Flooring, Inc. ("Quick-Step"), and Unilin Flooring N.C., LLC ("Unilin NC") (collectively, "Unilin"). In the March 5, 2003 complaint, Alloc alleges that Unilin is infringing United States Patent No. 6,516, 579 (the " '579 patent").FN1 In the December 12, 2005 complaint, Alloc alleges that Unilin is infringing United States Patent No. 5,706,621 (the " '621 patent"). These cases are part of a series of federal actions that Alloc has

filed across the country involving the patents-in-suit and related patents. Presently before the court is Unilin's motion to transfer jurisdiction to the United States District Court for the Eastern District of Wisconsin (the "Eastern District of Wisconsin"), pursuant to 28 U.S.C. § 1404(a). For the reasons discussed below, the court will grant the motion.

> FN1. On July 11, 2003, the court stayed the 03-253 action pending resolution of an appeal before the Federal Circuit, and the reexamination of a parent to the '579 patent. The appeal was resolved on May 24, 2004, and the court lifted the stay on March 31, 2006.

II. BACKGROUND

Välinge is the assignee of the '579 and '621 patents, which relate to a laminate flooring system that can be connected and installed without the use of glue. Välinge has licensed its patents to Berry who, in turn, has sublicensed its patent rights to Alloc. Välinge and Berry are foreign companies, incorporated and headquartered in Sweden and Belgium, respectively. Alloc is a Delaware corporation headquartered in Racine, Wisconsin.

Unilin Décor is a Belgian corporation, with its principle place of business in Wielsbeke, Belgium. Quick-Step was a Delaware corporation headquartered in Thomasville, North Carolina. Unilin NC (successor to Quick-Step) is a North Carolina limited liability company, with its headquarters in Thomasville, North Carolina. Unilin, specifically Unilin NC, sells Uniclic® laminate flooring products, *i.e.* the disputed products, throughout the United States.

Alloc has been litigating a case involving the '579 patent in the Eastern District of Wisconsin since 2000. *See Alloc Inc. v. Unilin Décor,* Case No. 2:00CV00999 (E.D.Wis.) (Randa, C.J.) (the "Wisconsin Action"). On August 17, 2006, Chief Judge Randa granted Alloc's motion to amend its complaint to include the '621 patent. As a result, the

Slip Copy
Slip Copy, 2006 WL 3050815 (D.Del.)
**(Cite as: Slip Copy)**

Wisconsin Action involves the same patents that are at issue in the above-captioned cases. Fact discovery is set to close in the Wisconsin Action on November 15, 2006, and claim construction issues are set to be fully briefed by December 20, 2006.

### III. DISCUSSION

Pursuant to section 1404(a), the court may transfer a civil action "for the convenience of parties and witnesses, in the interest of justice, ... to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). It is within the court's discretion whether to transfer a case according to an individualized case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 197 (D.Del.1998). In making its determination under section 1404(a), the court must consider whether transferring these two actions would convenience (1) the parties and (2) the witnesses while (3) serving the interests of justice. *Affymetrix,* 28 F.Supp.2d at 196. It is the movant's burden to establish the need to transfer. *See Truth Hardware corp. v. Ashland Prods., Inc.,* No. C.A. 02-1541 GMS, 2003 WL 118005, at *1 (D.Del. Jan.13, 2003).

**\*2** As a threshold matter, the court must first ask whether Alloc could have brought these two actions in the Eastern District of Wisconsin. *See Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership,* 882 F.Supp. 359, 361 (D.Del.1994). If the court answers this question in the negative, then its inquiry ends. *See Camasso v. Dorado Beach Hotel Corp.,* 689 F.Supp. 384, 386 (D.Del.1988) (refusing to transfer the case when the target forum could not exercise personal jurisdiction over one of the defendants).

Alloc contests Unilin's assertion that these two actions could have been brought in the Eastern District of Wisconsin. Alloc also contends that Unilin has failed to make a showing that these cases could have been originally brought in the Eastern District of Wisconsin. The court disagrees. According to Unilin's opening brief in support of its motion, the "[p]laintiffs have already sued Unilin Décor in that district [Eastern District of Wisconsin] and no one

ever questioned venue. Unilin N.C., the successor to Quick-Step, distributes and sells the Uniclic® flooring product in Wisconsin, including in the Milwaukee area in which the District Court for the Eastern District is located." (D.I. 9, at 8 n. 2.) Under 28 U.S.C. § 1391, a corporate defendant resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Wisconsin's long-arm statute codifies federal due process requirements. *See Logan Productions, Inc. v. Optibase, Inc.,* 103 F.3d 49, 52 (7th Cir.1996). Therefore, venue is proper in the Eastern District of Wisconsin if Unilin had minimum contacts within the Eastern District at the time the action was commenced, and the exercise of jurisdiction would be consistent with traditional notions of fair play and substantial justice. *See id.*

Here, Unilin has submitted the sworn declaration of Unilin Décor's legal counsel, which states that Quick-Step, an indirect subsidiary of Unilin Décor, was selling and distributing the disputed flooring in Milwaukee, Wisconsin as of March 5, 2003. (D.I. 15 ¶ 2.) The declaration further states that Unilin NC (successor to Quick-Step) continues to sell and distribute the disputed flooring in Milwaukee, Wisconsin. (Id.¶ 3.) Moreover, Alloc has already sued Unilin Décor in the Eastern District of Wisconsin without objection to venue. Accordingly, Unilin has demonstrated sufficient minimum contacts in the Eastern District of Wisconsin to confer personal jurisdiction on that court. The court believes this conclusion to be consistent with traditional notions of fair play and substantial justice. Therefore, venue is proper in Unilin's proposed transferee court. The court now turns to an examination of the remaining criteria enumerated in Section 1404(a) in order to determine if transfer is warranted.

When considering a motion to transfer, the court must determine "whether on balance the litigation would more conveniently proceed and the interest of justice would be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). This inquiry requires "a multi-factor balancing test," embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3050815 (D.Del.)
**(Cite as: Slip Copy)**

factors, including certain private and public interests. *Id. at 875.* These private interests include: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the expected witnesses; and (6) the location of books and records, to the extent that they could not be produced in the alternative forum.[FN2] Among the relevant public interests are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in decided local controversies at home; and (5) the public policies of the fora. *Id. at 879-80.*

> FN2. The first three of these private interest factors collapse into other portions of the *Jumara* analysis. Thus, the court will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

*3 After having considered the relevant factors, the court finds that Unilin has met its burden of demonstrating that transfer to the Eastern District of Wisconsin is appropriate. First, although Alloc is incorporated in Delaware and Quick-Step was incorporated in Delaware, and should reasonably expect to litigate in this forum, there is little connection between Delaware and this action or the parties. *See APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.,* 295 F.Supp.2d 393, 398-99 (A party's incorporation in Delaware is not dispositive of a motion to transfer. "Where an alternative forum is more convenient and has more substantial connection with the litigation 'incorporation in Delaware will not prevent transfer.' ") Further, none of the parties have facilities in Delaware nor maintain their principal place of business in Delaware. Moreover, Alloc's principal place of business is Racine, Wisconsin, and Alloc, Välinge, and Berry are currently parties to the Wisconsin Action, which involves both the '570 and '621 patents. Thus, it would be more convenient for Alloc to litigate this case in Wisconsin. Additionally, while Unilin Décor is a Belgian corporation and Unilin NC has a principal place of business in North Carolina, both would prefer to litigate this case in Wisconsin, espe-

cially given the fact that Unilin Décor is already a defendant in the Wisconsin Action.[FN3]

> FN3. The convenience of the expected witnesses is not a relevant consideration because neither party has produced witness lists or identified any witness who is a Delaware resident.

With respect to the documentary evidence, Unilin states that many of the relevant documents and other materials have already been produced in the Wisconsin Action, and that it can produce the documents it has as easily in Wisconsin as it can in Delaware. (D.I. 9, at 14.) Bringing relevant documents to only one location, here Wisconsin, minimizes the level of disruption caused to both parties by the litigation. *Omnicom Group, Inc. v. Employers Reinsurance Corp.,* C.A. No. 01-839-GMS, 2002 WL 109346, at *2 (D.Del. Jan.28, 2002). In other words, it "is certainly a more economical and efficient result than having each party moving ... documents between two states, depending on which of the[ ] related actions is being litigated at the time." *Omnicom Group, Inc. v. Employers Reinsurance Corp.,* C.A. No. 01-839-GMS, 2002 WL 109346, at *2 (D.Del. Jan.28, 2002). Thus, the court finds that this factor weighs in favor of transfer.

Finally, the court finds that the public interest factors weigh in favor of transfer to Wisconsin. Most relevant to the courts inquiry, is whether there are practical considerations that would make trial "easy, expeditious, or inexpensive." *Jumara,* 55 F.3d at 879. Here, there has already been litigation on both the '579 and '621 patents in the Eastern District of Wisconsin. Discovery has already begun in the Wisconsin Action, which was filed before Alloc initiated these lawsuits, and involves the same patents. Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *See Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.,* 102 F.Supp.2d 518, 537 (D.N.J.2000) (citations omitted). Additionally, the court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh against transfer. Finally, it is well settled that patent rights are not considered state or local

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3050815 (D.Del.)
**(Cite as: Slip Copy)**

Page 4

matters, and do not implicate local interests. *Jones Pharma, Inc. v. KV Pharm. Co.,* No. Civ. A. 03-786 JJF, 2004 WL 323109, at *3 (D.Del. Feb.17, 2004). The court, therefore, finds no strong local interest in litigating in either forum. Accordingly, the court concludes that, on balance, the public interest factors favor transfer in the instant case.

## ORDER

*4 For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:
1. The defendants' Motion to Transfer Venue to the Eastern District of Wisconsin (D.I.8) is GRANTED.
2. The above-captioned actions are hereby TRANSFERRED to the United States District Court for the Eastern District of Wisconsin.

D.Del.,2006.
Alloc, Inc. v. Unilin Decor N.V.
Slip Copy, 2006 WL 3050815 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1814031 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law in Further Support of their Motion to Transfer Venue to the Eastern District of Wisconsin, Pursuant to 28 U.S.C. 1404(a) (May 23, 2006) Original Image of this Document (PDF)
• 2006 WL 1814030 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Motion to Transfer Venue to the Eastern District of Wisconsin, Pursuant to 28 U.S.C. 1404(A) (May 15, 2006) Original Image of this Document (PDF)
• 2006 WL 1814029 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of their Motion to Transfer Venue to the Eastern District of Wisconsin, Pursuant to 28 U.S.C. s 1404(a) (May 1, 2006) Original Image of this Document (PDF)
• 2005 WL 4114532 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Brief in Support of their Motion to Lift the Stay and Order A Scheduling Conference (Dec. 12, 2005) Original Image of this Document (PDF)
• 1:05cv00857 (Docket) (Dec. 12, 2005)
• 2005 WL 4114531 (Trial Motion, Memorandum

and Affidavit) Plaintiffs' Opening Brief in Support of their Motion to Lift the Stay and Order A Scheduling Conference (Nov. 23, 2005) Original Image of this Document (PDF)
• 2003 WL 24839954 (Trial Motion, Memorandum and Affidavit) Brief in Opposition to Plaintiffs' Motion to Lift the Stay and Order a Scheduling Conference (Dec. 8, 2003) Original Image of this Document (PDF)
• 1:03cv00253 (Docket) (Mar. 5, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2216889 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

C
Briefs and Other Related Documents
SRU Biosystems, Inc. v. HobbsD.Del.,2005.Only the
Westlaw citation is currently available.
United States District Court,D. Delaware.
SRU BIOSYSTEMS, INC., Plaintiff,
v.
Douglas S. HOBBS, James J. Cowan and Coho Hold-
ings, Llc, Defendants.
No. Civ. 05-201-SLR.

Sept. 13, 2005.

John G. Day, Steven J. Balick, Ashby & Geddes,
Wilmington, DE, for Plaintiff.
Dale R. Dube, Blank Rome LLP, Wilmington, DE,
for Defendants.

MEMORANDUM ORDER
ROBINSON, J.
*1 At Wilmington this 13th day of September, 2005,
having considered defendants' motion to transfer and
the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer (D.I.11)
is denied for the reasons that follow:

1. Introduction. On April 7, 2005, plaintiff SRU
Biosystems, Inc. ("SRU") filed suit pursuant to 35
U.S.C. § 256 against defendants Douglas S. Hobbs
("Hobbs"), James J. Cowan ("Cowan") and CoHo
Holdings LLC ("CoHo"). (D.I.1) Plaintiff seeks to
have Dr. Brian Cunningham added as a named in-
ventor on U.S. Patent No. 6,870,624 ("the '624 pat-
ent") and U.S. Patent No. 6,791,757 ("the '757 pat-
ent").FN1 Alternatively, plaintiff seeks a Declaratory
Judgment that the patents in suit are unenforceable
because of the alleged inequitable conduct of the de-
fendants Hobbs and Cowan, the named inventors, as
well as their attorneys. On May 7, 2005, defendants
filed their answer and counterclaims for patent in-
fringement against SRU. (D.I.7) SRU has denied the
counterclaim. (D.I.8) On July 1, 2005, defendants
moved to transfer the action to the United States Dis-
trict Court for the District of Massachusetts. (D.I.11,
12) Plaintiff filed its opposition to which defendants

have replied. (D.I.15, 16)

FN1. Collectively referred to as "the patents
in suit."

2. Background. SRU is a Delaware corporation that
developed and is close to commercializing a bio-
sensor device to be used in the field of diagnostics
and drug research. (D.I. 1 ¶ 10) SRU has over thirty
pending U.S. and foreign patent applications that re-
late to the biosensor concept. Dr. Brian Cunningham
("Cunningham") is a research scientist, one of the
founders of SRU and Chief Technical Officer of
SRU. Cunningham resides in Illinois and has as-
signed all of his inventions to SRU. (Id. at ¶ 7)

3. Hobbs is the president of CoHo and Cowan is a
manager of Coho. Cowan and Hobbs reside in Lex-
ington, Massachusetts. Cowan and Hobbs are named
inventors on the patents in suit and have assigned
their rights in the patents to CoHo. Coho is a limited
liability company organized under the laws of the
State of Delaware with its principal place of business
in Burlington, Massachusetts. (D.I.12, Ex. C, Ex. A)
In addition to Cowan and Hobbs, Coho employs one
other person. Coho does not have a place of business
in Delaware and does no business in the State.
(D.I.12, Ex. C)

4. In October 2000, SRU hired Hobbs as a consultant
to assist Cunningham in the fabrication of the optical
component of a biosensor product. Hobbs continued
as a consultant until June 30, 2001. Cunningham filed
a number of patent applications related to a biosensor
device and assigned those applications to SRU. He
recognized Hobbs as a co-inventor on certain applica-
tions. SRU contends that Hobbs initially agreed to as-
sign his rights to the patents, but has had since re-
fused to do so.FN2

FN2. SRU claims that Hobbs signed a
Memorandum of Understanding ("MOU")
memorializing this agreement.

5. Subsequently, Hobbs and Cowan filed their own
applications on a biosensor and assigned those ap-
plications to CoHo, but did not name Cunningham as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2216889 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

an inventor. Those applications were issued as the patents in suit.

**\*2** 6. Other litigation. In December 2004, SRU filed a lawsuit against Hobbs in Massachusetts state court for breach of contract and unfair competition. (D.I.15, Ex. D) SRU seeks to enforce the terms of the MOU and requests a permanent injunction ordering Hobbs to execute an assignment of the applications to SRU. The initial filings describe the lawsuit as follows:

This is a case ... involving a claim to determine the use or status of intellectual property. The details are as follows: Defendant Hobbs worked for SRU as a consultant for the development of a novel colorimetric resonant biosensor. Before beginning work as a consultant, Hobbs agreed to keep all information relating to the biosensor technology confidential ... Hobbs executed a MOU in which he agreed to "assign irrevocably and exclusively on a royalty free basis to SRU ... all rights pertaining to the jointly-developed technology as it applies to biochemical and biological testing, sensing and/or detection. Subsequent to signing the MOU, SRU filed numerous patent applications relating to the development of the biosensor technology ... SRU has asked Hobbs to execute an assignment of the applications pursuant to the terms of the MOU, but Hobbs has refused to execute the assignment.

(D.I.16, Ex. D)

7. On June 29, 2005, the Massachusetts Superior Court entered an interim order directing Hobbs to comply with discovery and deferring decision on the "prosecution bar" issue until a later date. (D.I.15, Ex. G)

8. SRU has also commenced actions against Hobbs, Cowan and CoHo in Federal Court in Canada and in Ontario Superior Court. (D.I.12, Ex. D, E) These lawsuits are pending.

9. Standard of Review. Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adju-

dicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 208 (D.Del.1998).

10. The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin,* 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp.,* 138 F.Supp.2d 565, 567 (D.Del.2001); *Shutte,* 431 F.2d at 25.

11. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.,* 997 F.Supp. 556, 562 (D.Del.1998); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.,* 2001 WL 1617186 (D.Del. Nov.28, 2001); *Continental Cas. Co. v. American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P.,* 816 F.Supp. 973, 976 (D.Del.1993).

**\*3** 12. The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2216889 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

13. The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

14. Discussion. Defendants submit that transfer is warranted because Massachusetts is the more convenient form and SRU's preferred choice of forum. (D.I.12) Specifically, Massachusetts is the principal place of business for SRU, CoHo and where Hobbs and Cowan reside. Further, all events, witnesses and the execution of the MOU occurred in Massachusetts while, conversely, there is no connection to Delaware. Moreover, because SRU's Massachusetts action involves the same set of events, defendants assert that the court should sua sponte consolidate the two cases as well as the Canadian actions and transfer to the District of Massachusetts.

15. SRU opposes transfer on several grounds. First, it contends that the action at bar and the Massachusetts case involve different patents, different issues and different legal standards. Second, as a Delaware corporation, SRU's choice of forum should be afforded deference. Third, SRU asserts that the motion to transfer is part of a strategy to undermine the litigation.

16. Weighing the arguments against the *Jumara* balancing test, the court finds that the asserted advantages of moving the case to the District of Massachusetts are insufficient to warrant a transfer. Defendants' complaints about litigating here are outweighed by the fact that CoHo has enjoyed the benefits and protections as a limited liability company in

Delaware and that the state has an interest in litigation regarding companies like SRU that are incorporated within its jurisdiction. Moreover, there is nothing of record to reflect any problems with potential witnesses refusing to travel to Delaware for trial. In fact, the record is devoid of any specific problems with witnesses, documents or business operations posed by litigating in Delaware. Considering that discovery can be conducted at any location convenient to the parties and their employees, the only event that will take place in Delaware is the trial. The travel expenses and inconveniences incurred for that purpose is not overly burdensome.

*4 17. Clearly, the dispute at bar has become a very personal one between the parties. The dispute is now being litigated by four different courts in four different judicial systems, none of which has the authority to consolidate the cases.[FN3] The papers submitted in connection with this matter suggest that neither plaintiff nor defendants are being entirely reasonable in their litigation strategies. Therefore, while the court's conclusion to deny transfer is consistent with its resolution of other transfer motions, the court will reconsider the transfer issue or, alternatively, impose sanctions if it determines that either plaintiff or defendants are abusing the judicial process while pursuing resolution of the lawsuit initiated here.

> FN3. To the extent defendants implicitly argue that the "first-filed rule" applies, the court disagrees. The first-filed rule requires that, where cases are pending in "federal courts of equal rank", *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir.1988), "the court which first had possession of the subject must decide it" while the second filed action should be stayed or transferred to the court where the first filed action is pending. *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir.1941)(quoting *Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824)). There are no other federal district court cases pending; therefore, this rule has no applicability.

18. Conclusion. For the reasons stated, defendant's

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2216889 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

motion to transfer (D.I.11) is denied.

D.Del.,2005.
SRU Biosystems, Inc. v. Hobbs
Not Reported in F.Supp.2d, 2005 WL 2216889
(D.Del.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 1171972 (Trial Pleading) Complaint
(Apr. 7, 2005) Original Image of this Document
(PDF)
• 1:05cv00201 (Docket) (Apr. 07, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C



Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 700261 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

C
Briefs and Other Related Documents
Sherwood Medical Co. v. IVAC Medical Systems,
Inc.D.Del.,1996.Only the Westlaw citation is cur-
rently available.

United States District Court, D. Delaware.
SHERWOOD MEDICAL COMPANY, a Delaware
Corporation, d/b/a Sherwood, Davis & Geck,
Plaintiff,
v.
IVAC MEDICAL SYSTEMS, INC., a Delaware Cor-
poration, Defendant.
**Civil Action No. 96-305 MMS.**

Nov. 25, 1996.

Josy W. Ingersoll and John W. Shaw of Young, Con-
away, Stargatt & Taylor, Wilmington, (Michael J.
Sweedler, Beverly B. Goodwin and Pierre R. Yanney
of Darby & Darby, New York City, of counsel), for
plaintiff.
Kent A. Jordan and Joseph R. Slights, III of Morris,
James, Hitchens & Williams, Wilmington, (Richard
A. Bardin, Thomas A. Runk and Paul T. LaVoie of
Fulwider Patton Lee & Utecht, L.L.P., Los Angeles,
CA, of counsel), for defendant.

*MEMORANDUM OPINION*
SCHWARTZ, Senior District Judge.

INTRODUCTION

**\*1** Plaintiff Sherwood Medical Company
("Sherwood") filed a complaint on June 11, 1996,
against IVAC Medical Systems, Inc. ("IVAC") al-
leging patent infringement. *See* Docket Item ("D.I.")
1. Jurisdiction is based on 28 U.S.C. §§ 1331 and
1338. Venue is proper under 28 U.S.C. § 1400(b).

Two patents are at issue: (1) U.S. Patent No.
5,293,862, entitled "Disposable Speculum with
Bonding Ring," filed on April 13, 1992, and (2) U.S.
Patent No. 5,516,010, entitled "Sanitary Speculum
for Tympanic Thermometer Probe," filed September
1, 1994. Defendant IVAC is alleged to have sold a
product that infringes upon these patents, the "P90
Probe Cover," within the District of Delaware and

elsewhere.

On July 30, 1996, IVAC, relying upon 28 U.S.C. §
1404(a), moved to transfer venue from this district to
the Southern District of California. Sherwood op-
posed the motion at oral argument held on November
13, 1996. For the reasons stated below, IVAC's mo-
tion to transfer venue will be granted.

FACTS

A. Sherwood Facts

Sherwood is incorporated in Delaware, and is a
wholly-owned subsidiary of American Home
Products Corp. ("American Home"), also a Delaware
Corporation. D.I. 15, at 1. Sherwood's headquarters is
in St. Louis, Missouri. *Id.* at 8. Sherwood sells the
products under the patents at issue in Delaware, and
nationwide. *Id.* at 1. Currently, sales and marketing
of the products under these patents is performed in
St. Louis, research and development in Hazlewood,
Missouri, and manufacturing in Watertown, New
York, and Norfolk, Nebraska. *Id.* at 3-4. Sherwood
has no offices in Delaware. D.I. 11, at 6.

Much of the development of Sherwood's patents in
suit occurred in San Diego, which is within the judi-
cial district of the Southern District of California. D.I.
15, at 9. The inventions took place in San Diego, and
a company called Intelligent Medical Systems, Inc.
("IMS"), was formed there to market and manufac-
ture the inventions. *Id.* In 1992, IMS was acquired by
American Home, which is located in Madison, New
Jersey. *Id.* In December 1994, IMS was merged into
Sherwood. *Id.* at 9-10. Following the merger, IMS'
San Diego operations were reduced, and now, ac-
cording to counsel at oral argument, all that remains
in the San Diego area is a small group comprising
less than thirty employees.

B. IVAC Facts

IVAC also is incorporated in Delaware and sells the
allegedly infringing P90 Probe Covers in Delaware.
D.I. 11, at 6. IVAC's headquarters is in San Diego, *id.*
at 2, and the research and development of the P90

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 700261 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 2

Probe Cover occurred there. *Id.* at 7. IVAC has no facilities or employees in Delaware. *Id.* at 2. It asserts no relevant documents are located in Delaware, and that most of its documents are located in San Diego. *Id.* at 3. IVAC's probe cover is manufactured in Ohio and the inventory is stored in North Carolina. *Id.* at 7.

### C. Related Pending Litigation

Sherwood recently was sued over one of the two patents at issue in this case by Thermoscan, Inc. D.I. 15, at 4. That litigation was filed in the Southern District of California. *Id.* Discovery was taken and two motions were resolved in that court before the case was settled in November, 1995. *Id.* at 11. The case subsequently was transferred to this Court for entry of a consent judgment and supervision of issues relating to the settlement, and was pending at the time Sherwood filed its action against IVAC. *Id.* at 13. A status conference also was held by this Court in connection with a potential problem requiring court supervision. *Id.* The matter has since been resolved and the case statistically closed.

### D. Witnesses

*2 According to IVAC, nine out of ten non-party witnesses important to its case reside within the subpoena power of the Southern District of California, as does an eleventh witness, an IVAC employee. Included in this list are the three inventors of Sherwood's patents in suit, Gary O'Hara, Kishan Hingorani and David Philips. O'Hara, who still is employed by Sherwood, resides in the San Diego area, as does Hingorani, who is no longer a Sherwood employee. Philips resides in Annapolis, Maryland. The attorney who prosecuted Sherwood's patents, Michael Jester, whom IVAC may wish to call, has offices in San Diego.

Additionally, three of IVAC's former employees who helped develop its P90 probe cover live within the subpoena power of the San Diego court. They are Michael DeFrank, Robert Rosati and Tom Sternweiler. Finally, one Thermoscan employee, Jacob Fraden, as well as two outside contractors, David Hollings and Marvin Taylor, all of whom IVAC may wish to call, live within the subpoena power of the

San Diego court. IVAC has asserted that no fact witnesses live in Delaware. D.I. 11, at 2-3.

Sherwood urges Delaware is more convenient for "Sherwood, its trial counsel and its witnesses." D.I. 15, at 17.[FN1] At oral argument, Sherwood produced a list of its prospective witnesses, all of whom are either employees of Sherwood or experts hired for purposes of this lawsuit. Sherwood's counsel represented that Hingorani and Jester would be available to testify at trial. Sherwood's counsel further indicated Sherwood's belief that Philips lived within the subpoena power of this Court. At oral argument, counsel for Sherwood acknowledged its experts and employees would be in attendance whether the trial was held in the Delaware District or the Southern District of California.

> FN1. To the extent Sherwood urges that the convenience of counsel is relevant to the analysis, its position is rejected. *Burstein v. Applied Extrusion Technologies, Inc.*, 829 F. Supp. 106, 112 (D. Del. 1992).

### DISCUSSION

28 U.S.C. § 1404(a) governs transfer:
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Sherwood does not contest this action could have been brought in the Southern District of California. As a consequence the Court must examine (1) the convenience of the parties, (2) the convenience of witnesses and (3) the interest of justice. In evaluating the statutory criterion, the Third Circuit Court of Appeals has directed the district courts within the circuit to examine "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). While cautioning that "there is no definitive formula or list of the factors to consider," *id.*, the court identified a number of potential factors which it characterized as either private or public interests:

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 700261 (D.Del.)
(Cite as: Not Reported in F.Supp.)

The private interests have included: plaintiff's forum preference as manifested in the original choice, ... the defendant's preference, ... whether the claim arose elsewhere, ... the convenience of the parties as indicated by their relative physical and financial condition, ... the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora,... and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum), ...

**\*3** The public interests have included: the enforceability of the judgment, ... practical considerations that could make the trial easy, expeditious, or inexpensive, ... the relative administrative difficulty in the two fora resulting from court congestion, ... the local interest in deciding local controversies at home, ...[and] the public policies of the fora ...

*Id.* (citations omitted).

*Jumara,* acknowledging deference to plaintiff's choice of forum, does not purport to modify *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied,* 401 U.S. 910 (1971). 55 F.3d at 879. *Jumara* also has not changed the principle in *Shutte* that the party seeking the transfer, IVAC, bears the burden of establishing the need for transfer. *Id.* An often-quoted passage from *Shutte* states:

It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice " ... should not be lightly disturbed." .... In accord with that sound doctrine, one district court recently correctly observed: "The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted." .... The burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer ... and "... unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail."

431 F.2d at 25 (citations omitted).

Utilizing the *Jumara* test of "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice

be better served by transfer to a different forum," 55 F.3d at 879, the Court will analyze the interests of the parties implicated by IVAC's motion to transfer this case.

**A. Private Interests**

The Third Circuit appellate court has set forth a number of factors which may be appropriate to consider under this heading, including the parties' respective choices, where the claim arose, the parties' respective financial conditions, and the convenience of witnesses and location of books and records to the extent that either the witnesses or the records might not be made available for trial.

Weighing most of these private interests does not lead to a result that strongly favors either party. The parties are both national companies with sales in the millions of dollars, thereby rendering financial conditions a wash as a factor to be considered in transfer. Similarly, infringement allegedly occurred throughout the United States negates "where the claim arose" as a factor to be weighed. Books and records could be made available in either fora -- Sherwood would have to transfer its documents from St. Louis to whichever district is the trial forum. However, IVAC's records are in San Diego, giving IVAC a slight edge on this factor.

**\*4** "Convenience of the witnesses" is a phrase encompassing geographic location of witnesses relative to the forum and an "interest of justice" consideration, i.e., whether the witnesses are physically available for trial in either of the competing fora. As between geographic proximity of witnesses and being assured a court will hear live testimony, the latter in most instances will be the far more important consideration. That is not to say that the party that shows that more of its witnesses will be unavailable for trial will prevail on a transfer motion. Rather, what is key at this nascent stage of the litigation is the Court's impression of the nature of prospective testimony to be given by the witness -- does it go to an important issue, is it cumulative, is a witness employed by a party and therefore available in any fora, and like considerations.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                              Page 4
Not Reported in F.Supp., 1996 WL 700261 (D.Del.)
(Cite as: Not Reported in F.Supp.)

The Supreme Court, in the context of a motion for dismissal based on the doctrine *forum non conveniens,* has commented on the desirability of holding a trial in a forum in which a court could not compel the personal attendance of witnesses. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947). "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants. Nor is it necessarily cured by the statement of plaintiff's counsel that [plaintiff] will see to getting many of the witnesses to the trial .... " *Id.* at 511.

Apparently agreeing with that basic premise, the parties devoted much time at oral argument to discussing each side's proffered witness list and the possible relevance of each witness' testimony, in an effort to persuade the Court that certain witnesses would, or would not, be necessary for trial. Sherwood's counsel agreed that all the witnesses on Sherwood's list would be present at trial regardless of where it is held, because all its witnesses are either current employees or expert witnesses hired for the purposes of this litigation. IVAC, on the other hand, pointed to nine witnesses who are not currently employed by either party, whom it expects to call at trial.

As set forth above, those witnesses include Kishan Hingorani, a former Sherwood employee and named inventor of the patents in suit; Michael Jester, the attorney who prosecuted the patents; Jacob Fraden, a Thermoscan employee; David Hollings and Marvin Taylor, outside contractors who worked on scaling up the development of Sherwood's probe covers; and DeFrank, Rosati and Sternweiler, former IVAC employees who participated in the development of IVAC's P90 Probe Cover.

Counsel for Sherwood responded by assuring the Court that Hingorani and Jester would be available for trial.[FN2] With respect to the testimony of Fraden, Hollings and Taylor, whom IVAC indicated it may call to testify regarding prior art, Sherwood urged that the testimony of these three individuals would not be helpful to IVAC at trial. According to Sherwood, Fraden has knowledge of the Thermoscan

thermometer, not its probe covers, and Hollings and Taylor have never claimed inventorship.

> FN2. Sherwood also indicated its belief that Philips was within the subpoena power of this Court, and therefore could be compelled to attend trial here.

*5 Sherwood's assurances that two of the three named inventors, Hingorani and O'Hara, would appear at trial is not the same as having them amenable to the subpoena power of the trial court. Further, that still leaves IVAC unable to produce at trial in person the three developers of its alleged infringing product. Nor is it satisfactory that the IVAC witnesses could appear by video deposition at trial. Video depositions of product development are unlikely to hold the rapt attention of a jury. Further, to the extent Sherwood argues DeFrank, Rosati and Sternweiler, developers of the IVAC probe, are cumulative and unnecessary witnesses because their supervisor will testify, the short answer is that Sherwood's proposal infringes on IVAC's right to put forth its case through whom it wants.

Sherwood's choice of forum and other less important factors must be balanced against the fact that two of the three inventors and the three developers of IVAC's alleged infringing probe are not within the subpoena power of this Court. These five potential, critical witnesses[FN3] are subject to the compulsory process power of the Southern District of California. The balance between Sherwood and IVAC must be resolved in favor of transfer.[FN4]

> FN3. Given the Court's outcome, it is unnecessary to evaluate whether the absence of the other IVAC witnesses would in and of itself outweigh plaintiff's choice of forum.

> FN4. The public interests as defined in *Jumara,* 55 F.3d at 878, have no application to IVAC's motion to transfer.

An appropriate order will issue transferring this case to the Southern District of California.

D.Del.,1996.
Sherwood Medical Co. v. IVAC Medical Systems,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 5

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 700261 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

Inc.
Not Reported in F.Supp., 1996 WL 700261 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:96cv00305 (Docket) (Jun. 11, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Briefs and Other Related Documents
Nilssen v. Osram Sylvania, Inc.D.Del.,2001.Only the
Westlaw citation is currently available.
United States District Court,D. Delaware.
Ole K. NILSSEN and Geo Foundation, Ltd.,
Plaintiffs,
v.
OSRAM SYLVANIA, INC. and Osram Sylvania
Products, Inc., Defendants.
**No. Civ.A. 00-695-JJF.**

May 1, 2001.

Donald F. Parsons, Jr., and Mona A. Lee, of Morris,
Nichols, Arsht & Tunnell, Wilmington, Delaware,
Harry J. Roper, Raymond N. Nimrod, John E. Titus,
and Jonathon Hill, of Roper & Quigg, Chicago,
Illinois, for Plaintiffs, of counsel.
Richard K. Herrmann, of Blank Rome Comisky &
Mccauley LLP, Wilmington, Delaware, Brian D.
Sieve, Thomas G. Pasternak, Andrew M. Johnstone,
and Kevin J. O'Shea, of Kirkland & Ellis, Chicago,
Illinois, for Defendants, of counsel.

*MEMORANDUM OPINION*
FARNAN, J.
\*1 Presently before the Court is Defendants' Motion
to Transfer Pursuant to 28 U.S.C. § 1404(a) (D.I.15).
For the reasons stated below, the Court will grant the
motion.

BACKGROUND

Ole K. Nilssen ("Mr.Nilssen") is a Florida resident
with his principal place of business in Chicago,
Illinois.[FN1] (D.I. 1 at ¶ 4). Mr. Nilssen is engaged in
the business of "identifying, formulating plans for,
developing know-how and technology for, and imple-
menting (via licensing agreements) promising new
business opportunities in the field of electronics, in-
cluding electronic ballasts." (D.I. 1 at ¶ 8). Geo
Foundation ("Geo") is a non-profit corporation incor-
porated in the Cayman Islands, British West Indies.
(D.I. 1 at ¶ 5)(Mr. Nilssen and Geo collectively re-
ferred to as "Plaintiffs").

FN1. Mr. Nilssen contends that his ongoing
business in Illinois, Innovations Center, "is
now defunct." (D.I. 24, Exh. 1 at ¶ 8).
However, Plaintiffs' Complaint alleges that
Mr. Nilssen is currently engaged in
"business opportunities." (D.I. 1 at ¶ 4). Fur-
ther, Mr. Nilssen admits that he still travels
to Illinois regularly to "bring closure to [his]
other business dealings that take place in
Illinois." (D.I. 24, Exh. 1 at ¶ 8). The Court
concludes that, for purposes of the instant
motion, this record sufficiently establishes
that Mr. Nilssen's principal place of business
is in Illinois.

OSRAM Sylvania, Inc. and OSRAM Sylvania
Products, Inc. (collectively "Defendants") are
Delaware corporations with their principal places of
business in Danvers, Massachusetts. (D.I. 13 at ¶
6-7). Defendants are engaged in the business of mak-
ing and selling electronic ballasts. (D.I. 13 at ¶¶ 11).

Plaintiffs filed the instant action against Defendants
on August 1, 2000. In their Complaint, Plaintiffs con-
tend that Defendants wilfully infringe twenty-six pat-
ents that were invented and are owned by Mr. Nilssen
and of which Geo holds exclusive licenses.[FN2] (D.I.
1 at ¶¶ 9, 10, 13). On January 24, 2001, Defendants
filed the instant motion to transfer the case to the
United States District Court for the Northern District
of Illinois. (D.I.15).

FN2. These patents include U.S. Patent No.
B1 4,667,345; U.S. Patent No. 4,857,806;
U.S. Patent No. 4,954,754; U.S. Patent No.
4,983,887; U.S. Patent No. 5,013,974; U.S.
Patent No. 5,047,690; U.S. Patent No.
5,164,637; U.S. Patent No. 5,185,560; U.S.
Patent No. 5,189,342; U.S. Patent No.
5,191,262; U.S. Patent No. 5,214,356; U.S.
Patent No. 5,233,270; U.S. Patent No.
5,341,067; U.S. Patent No. 5,343,123; U.S.
Patent No. 5,402,043; U.S. Patent No.
5,416,386; U.S. Patent No. 5,432,409; U.S.
Patent No. 5,446,347; U.S. Patent No.
5,471,118; U.S. Patent No. 5,479,074; U.S.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Patent No. 5,481,160; U.S. Patent No.
5,510,680; U.S. Patent No. 5,510,681; U.S.
Patent No. 5,621,279; U.S. Patent No.
5,736,819 and U.S. Patent No. 6,002,210.
(D.I. 1 at ¶ 9).

## DISCUSSION

Under 28 U.S.C. § 1404(a), "for the convenience of
the parties and witnesses, in the interest of justice, a
district court may transfer any civil action to any oth-
er district or division where it might have been
brought." 28 U.S.C. § 1404(a). Since it is undisputed
that Plaintiffs could have brought the instant action in
the Northern District of Illinois, the Court's only task
is to determine whether the factors enumerated in §
1404(a) warrant a transfer under the circumstances.

In determining whether or not to transfer venue under
§ 1404(a), a district court must consider a number of
different factors. These factors include several private
interests: (1) the convenience of the parties due to
their relative physical and financial conditions, (2)
the convenience of the expected witnesses, but only
so far as the witnesses might be unavailable for trial
if the trial is conducted in a certain forum, and (3) the
location of books and records, to the extent that these
books and records could not be produced in a certain
forum. *Memminger v. InfoCure Corp.,* C.A. No.
00-707-JJF, slip op. at 4 (D.Del. Nov. 14,
2000)(citing *Jumara v. State Farm Ins. Co.,* 55 F.3d
873, 879 (3d Cir.1995)).[FN3] These factors also in-
clude several public interests:

> FN3. *Jumara* also listed the following
> private interests that district courts should
> consider: (1) the plaintiff's choice of forum,
> (2) the defendant's preferred forum, and (3)
> whether the claim arose elsewhere. 55 F.3d
> at 879. Subsequent decisions of this Court,
> however, have determined that these in-
> terests are subsumed by the other *Jumara*
> factors. *Memminger,* slip op. at 5. Therefore,
> to avoid considering the same interests
> twice, the Court will not considered them
> separately. *Id.*

(1) the enforceability of the judgment, (2) practical

considerations regarding the ease, speed, or expense
of trial, (3) the administrative difficulty due to court
congestion, (4) the local interest in deciding local
controversies in the home forum, (5) the public
policies of the two fora, and (6) the trial judge's fa-
miliarity with the applicable state law in diversity
cases.
*2 *Id.* (citing *Jumara,* 55 F.3d at 879-80). When de-
termining whether or not transfer is warranted under
the circumstances, district courts must balance all of
the relevant factors. *Jumara,* 55 F.3d at 883. "The
burden is upon the [moving party] to establish that
the balance of the [factors] strongly weighs in favor
of the requested transfer, and a transfer will be denied
if the factors are evenly balanced or weigh only
slightly in favor of the transfer." *Memminger,* slip op.
at 4-5. Below, the Court will analyze the factors rel-
evant to the instant motion.

### A. Convenience of the Parties

The Court concludes that the convenience of the
parties due to their relative physical and financial
conditions weighs slightly in favor of transfer. De-
fendants' principal places of business are located in
Danvers, Massachusetts. (D.I. 16 at 5). Many of De-
fendants' accused products are manufactured in Lake
Zurich, Illinois, which is within the Northern District
of Illinois. (D.I. 16 at 5). Defendants' contacts with
Delaware, on the other hand, are minimal: Defend-
ants are incorporated under Delaware law, Defend-
ants have one salesperson who works out of a home
office in Delaware, and some of Defendants' accused
products are sold in Delaware.[FN4] (D.I. 16 at 5). *See
Memminger,* slip op. at 6-7 (recognizing that the
mere fact a defendant is incorporated in a given for-
um does not mean that transfer to another forum is
not warranted); *Amersham Pharmacia Biotech, Inc.
v. Perkin-Elmer Corp.,* 11 F.Supp.2d 729, 730-30
(S.D.N.Y.1998)(holding that the Southern District of
New York's connection to the litigation was
"tenuous" for purposes of venue transfer analysis
when the defendant was incorporated in New York
and over 100 of the defendant's allegedly infringing
products were sold in New York). Also supporting
the requested transfer is the fact that Mr. Nilssen's
principal place of business is in Illinois, and that sev-
eral of his current and former employees reside in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Illinois.

> FN4. Plaintiffs' contention that their "claim arose" in Delaware, because some of Defendants' accused products are sold in Delaware, lacks merit. Defendants' products are sold nationwide; therefore, Delaware does not have any special "connection" to the case that would weigh against the requested transfer.

Based on these considerations, the Court concludes that it would be more convenient to litigate in the Northern District of Illinois rather than in Delaware. However, this factor weighs only slightly in favor of transfer because both Defendants are large companies that are financially capable of litigating in a distant forum. *Motorola Inc. v. PC-Tel. Inc.*, 58 F.Supp.2d 349, 358 (D.Del.1999)(holding that when the party seeking transfer is a multimillion dollar company, unless the company can articulate "some unique or unexpected burden" associated with litigating in a distant forum, this factor only weighs slightly in favor of transfer).

### B. Convenience of the Witnesses

The Court concludes that the convenience of the witnesses weighs strongly in favor of transfer. The convenience of the witnesses is the most important factor in venue transfer analysis. *Mentor Graphics v. Quickturn Design Sys., Inc.*, 77 F.Supp.2d 505, 510 (D.Del.1999). The convenience of a witness is only relevant, however, "to the extent that the witness may actually be unavailable for trial in one of the fora." *Asten Inc. v. Weavexx Corp.*, 2000 WL 1728354, at *4 (D.Del. Feb. 11, 2000)(quoting *Jumara*, 55 F.3d at 879). A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power. *Mentor Graphics*, 77 F.Supp.2d at 511. However, witnesses employed by the parties are not considered by a court conducting venue transfer analysis because the parties are obligated to procure the presence of their own employees at trial. *Id.*

*3 In the instant case, Defendants contend that no

witnesses reside in Delaware but that a number of principal witnesses reside in the Northern District of Illinois, including: (1) Dale Fiene-an employee of Mr. Nilssen, (2) Robert Schneider-a former employee of Mr. Nilssen, (3) employees of Defendants, (4) employees of Motorola, Inc., and (5) employees of Advance Transformer, Inc. ("Advance"). (D.I. 16 at 10). In response, Plaintiffs contend that Defendants' contentions are unavailing because (1) Defendants have failed to explain the nature of these witnesses' testimony, and in several cases, have even failed to name the witnesses, (2) Defendants have failed to show that the use of videotaped deposition testimony would be an inadequate substitute for live trial testimony, and (3) Defendants have not alleged that any witnesses actually will be unavailable for trial. (D.I. 25 at 11).

The Court concludes that Plaintiffs' second and third arguments can be summarily rejected. As to Plaintiffs' third argument, as previously discussed, a party only needs to establish that witnesses might be unavailable for trial. As to Plaintiffs' second argument, the Court concludes that videotaped depositions are not an adequate substitute for live trial testimony when conducting venue transfer analysis because "[v]ideo depositions ... are unlikely to hold the rapt attention of a jury." *AlliedSignal, Inc. v. Cooper Auto., Inc.*, 1997 U.S. Dist. LEXIS 22902, at *11 n. 4 (D.Del. July 30, 1997).

Plaintiffs' first argument warrants more consideration. One of these witnesses, Dale Fiene, is a current employee of Mr. Nilssen; therefore, the Court concludes that Mr. Fiene should not be considered in the analysis. [FN5] (D.I. 24 at 9). The Court also agrees that Defendants' employees do not weigh into the analysis. However, Mr. Schneider, a former employee of Mr. Nilssen, and employees from Motorola and Advance do warrant consideration because they are potential third party witnesses.

> FN5. To the extent that Mr. Nilssen admits that Mr. Fiene is a current employee, such admission belies Mr. Nilssen's attempt to downplay the extent of his business contacts in Illinois.

Plaintiffs contend that these potential third party wit-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

nesses do not weigh in favor of transfer because Defendants have failed to specifically identify many of these witnesses by name and/or the content of their testimony. (D.I. 24 at 10-11). However, Defendants specifically identify Mr. Schneider and note that his testimony is relevant because Mr. Schneider has submitted a number of affidavits to the PTO on Mr. Nilssen's behalf. (D.I. 16 at 10). Mr. Schneider's knowledge is relevant to Defendants' affirmative defenses, especially Defendants' allegations of inequitable conduct by Mr. Nilssen during the prosecution of many of the patents in suit.

Defendants' potential witnesses from Motorola and Advance have not been identified by name. However, Defendants indicate that Motorola's employees will testify about Motorola's business dealings with Mr. Nilssen and about prior art to the patents in suit. (D.I. 16 at 10). Defendants also indicate that Advance's employees will provide relevant testimony about a reasonable royalty and about prior art.[FN6] (D.I. 16 at 10). The Court concludes that such identification, especially when fact discovery has yet to take place and when Plaintiffs have yet to specify the specific patent claims and products implicated in the lawsuit, is sufficient for purposes of venue transfer analysis.[FN7] Therefore, the Court concludes that the convenience of the witnesses strongly weighs in favor of transfer.

> FN6. Advance's employees are knowledgeable on such issues because Advance has a license agreement with Mr. Nilssen. (D.I. 16 at 10).

> FN7. The cases cited by Plaintiffs in which the Court refused to afford unnamed witnesses any weight in the analysis involved situations where the movant merely stated that some witnesses existed that would not be available for trial. (D.I. 24 at 10-11)(citing *Motorola,* 58 F.Supp.2d at 359; *Sunds Defribator, Inc. v. Durametal Corp.,* 1997 WL 74660, at *3 (D.Del. Jan. 31, 1997)). Defendants' identification of the witnesses distinguishes the instant case from *Motorola* and *Sunds Defribator.*

C. Practical Considerations

*4 The Court also concludes that practical considerations regarding the ease, speed, or expense of trial strongly weigh in favor of the requested transfer. If related cases are pending in the district to which transfer is sought, such fact weighs in favor of the transfer. *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 206 (D.Del.1998). In a recent case granting a motion to transfer, the Court relied heavily on the existence of patent litigation in another forum involving "a parent patent of the one at issue" and a patent involving a similar type of product which was arguably "directly related" to the patent at issue. *Brunswick Corp. v. Precor Incorp.,* 2000 WL 1876477, at *3, n. 2 (D.Del. Dec. 12, 2000).

In the instant action, Plaintiffs allege infringement of twenty-six patents, at least six of which are also being litigated in the Northern District of Illinois.[FN8] In the Illinois cases, *Markman* rulings have already been issued and case dispositive motions have already been filed. (D.I. 16 at 4). Therefore, the Court concludes that the waste of judicial resources in requiring two different courts to construe at least six of the same patents,[FN9] and to render *Markman* rulings on each of these patents, is a factor that strongly weighs in favor of transfer.[FN10]

> FN8. The number of patents in the instant case that overlap with patents involved in cases pending in the Northern District of Illinois is in dispute. Defendants contend that thirteen of the patents in this case are being litigated in *Nilssen v. Motorola, Inc.,* Case No. 96-5571, and that three of these patents are also being litigated in *Nilssen v. MagneTek, Inc.,* Case No. 98-2229. (D.I. 16 at 4). Plaintiffs respond that only six patents overlap between the *Motorola* case and the action presently before the Court. (D.I. 24 at 12 & n. 4). The Court concludes that it is unnecessary to determine exactly how many of the patents overlap and will accept as true, for purposes of this motion, that only six patents overlap.

> FN9. Defendants point out that the file wrapper for one of the overlapping patents consists of over 1,700 pages.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

FN10. Plaintiffs contend that the doctrine of collateral estoppel will prevent any waste of judicial resources by precluding duplicative litigation. However, collateral estoppel only applies when a final judgment is rendered, so it could take months or years for collateral estoppel to become applicable. If *Markman* rulings are issued in the instant case that conflict with those rendered in the Northern District of Illinois prior to collateral estoppel becoming applicable, this could result in inconsistent judgments virtually guaranteeing that one of the judgments will get reversed on appeal. This judicial waste can be avoided by granting the instant motion to transfer.

### CONCLUSION

In balance, the Court concludes that the relevant factors strongly weigh in favor of a transfer to the Northern District of Illinois. Both the convenience of the witnesses and practical considerations strongly weigh in favor of transfer, and the convenience of the parties weighs slightly in favor of transfer. On the other hand, no factors weigh against the requested transfer. FN11 As a result, the Court concludes that a transfer to the Northern District of Illinois is warranted under the circumstances.

FN11. Plaintiffs contend that they have a legitimate desire to litigate in Delaware in order to quickly resolve the matter, and that this factor weighs in favor of transfer. (D.I. 24 at 12). However, the statistical evidence submitted by Defendants reveal that civil cases are, on average, resolved more quickly in the Northern District of Illinois than in Delaware; however, in cases that ultimately go to trial, Delaware is a more expedient forum. (D.I.16, Exh. H). Furthermore, Plaintiffs have admitted that the slow pace in the cases pending in the Northern District of Illinois is "due to the pace set by the lawyers." (D.I. 25, Exh. B at 2). Plaintiffs nonetheless assert that, because a trial date has already been set in the instant case for February 11, 2002, the instant suit will be re-solved more quickly if tried in Delaware. However, in complex patent cases such as this, the initial trial date is often pushed back as discovery problems arise. Considering the number of patents at issue in this case and that discovery has yet to commence, the February 11, 2002 trial date looks unrealistic.

After the briefing in this matter was completed, Plaintiffs sent two letters to the Court (D.I. 27; D.I. 28) indicating that the summary judgment motions pending in the Northern District of Illinois cases were going to be further delayed because the motions had been referred to a special master. However, the Northern District of Illinois's referral order, which is attached to one of Plaintiffs' letters, highlights the fact that quick resolution of the lawsuit in this District is unlikely. The Order stated that: "the voluminous documents and arguments involved in the case" and "the legal and factual complexity of the case" would be such a drain on judicial resources that the appointment of a special master is warranted. (D.I.28). The Court concludes that requiring two different courts to duplicate much of the same work would be inefficient and would not produce a more expedient resolution in this forum.

An appropriate Order will be entered.

### ORDER

At Wilmington, this *1* day of May, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (D.I.15) is *GRANTED.*

D.Del.,2001.
Nilssen v. Osram Sylvania, Inc.
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

• 1:00cv00695 (Docket) (Aug. 01, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


ALCON LABORATORIES, INC., :
                              :
              Plaintiff,      :
                              :     Civil Action No. 95-233-LON
    v.                        :
                              :
STAAR SURGICAL COMPANY,       :
                              :
              Defendant.      :


## MAGISTRATE'S REPORT AND RECOMMENDATION

Edward M. McNally, Esquire, and Kent A. Jordan, Esquire, Morris, James, Hitchens & Williams, 222 Delaware Avenue, P.O. Box 2306, Wilmington, Delaware 19899, attorneys for plaintiff, Alcon Laboratories, Inc.

Richard H. Morse, Esquire, Young, Conaway, Stargatt & Taylor, Rodney Square North, Eleventh Floor, P.O. Box 391, Wilmington, Delaware 19899-0391, attorney for defendant, Staar Surgical Company

Dated:  October 26, 1995

Wilmington, Delaware

TROSTLE, U.S. Magistrate-Judge

## PROCEEDINGS

Plaintiff Alcon Laboratories, Inc. ("Alcon"), brought this action against Staar Surgical Company ("Staar") on April 11, 1995, requesting declaratory judgment that: (1) Staar's U.S. Patent No. 4,573,998 ("the Mazzocco patent"), issued to Dr. Thomas R. Mazzocco and entitled "Methods for Implantation of Deformable Intraocular Lenses," is invalid; (2) the Mazzocco patent is not infringed by Alcon's ongoing sales of foldable intraocular lenses; and (3) Staar has breached the license of the Mazzocco patent (D.I. 24).[1]

Staar now moves for transfer of the action from this Court to the U.S. District Court for the Central District of California, under 28 U.S.C. §1404 (D.I. 24). Staar argues that: (1) while Alcon is incorporated in Delaware (as is Staar), this forum has no relationship with the occurrences giving rise to Alcon's allegations, nor is it the site of Alcon's principal place of business, which is located in Fort Worth, Texas; (2) California

---

[1]    On April 12, 1995, Staar filed a breach of contract lawsuit in state court in California. Alcon removed the California state court action to the United States District Court for the Central District of California with the express intent to transfer the case to Delaware and consolidate it into this proceeding, based on the premise that Staar's California claims are more appropriately counterclaims in Delaware rather than grounds for an independent action (D.I. 26). However, the U.S. District Court for the Central District of California, after consideration of the parties' submissions showing cause why removal was proper, remanded the case to California Superior Court upon finding that neither of Staar's breach of contract claims necessarily depend upon the resolution of substantial questions of federal patent law.

is intimately related to the occurrences giving rise to Alcon's complaint, where Dr. Mazzocco, the inventor of the patent-in-suit, resides in the state, all work concerning the development and commercialization of the patent at issue was performed there, where Staar's principal place of business and its trial witnesses are located, and Staar's other licenses under the Mazzocco patent are situated in California; and (3) the March 1986 CooperVision license, which was subsequently transferred to Alcon and is now at issue, was negotiated between Staar and CooperVision in California and requires interpretation under California law (D.I. 24).

Alcon opposes Staar's motion for transfer, arguing that: (1) Delaware, its state of incorporation, is Alcon's "home turf" for purposes of this action, where its facility manufacturing the Acrysof® lenses that Staar asserts are covered by the Mazzocco patent is located in West Virginia, a state closer to Delaware than to California; (2) the key witnesses to the production and marketing of the lenses at issue work at that plant and reside in West Virginia; and (3) judicial economy supports Alcon's choice of Delaware as its forum, where this court has widely recognized expertise in handling patent litigation, and where the docket would permit the quickest possible resolution of this controversy (D.I. 26). Moreover, according to Alcon, Staar has not met its burden of showing that factors such as convenience of the parties and the witnesses or the interests of justice strongly support transfer, while Alcon has rational and legitimate reasons for choosing this forum (D.I. 26).

3

**BACKGROUND FACTS**

      Staar, a company incorporated in Delaware in 1986, is the surviving corporation of a merger with its corporate predecessor Staar Surgical Company, a California corporation. With its principal place of business located in Monrovia, California, Staar's ventures are centered in California, as are approximately 150 of its 170 employees, with particular focus in the Central District of California (D.I. 24).

      Staar's patent in question, U.S. patent number 4,573,998 ("Methods for Implantation of Deformable Intraocular Lenses") was issued to California ophthalmic surgeon Dr. Thomas Mazzocco, and formally assigned to Staar in June of 1983. During the subsequent years, Staar commercialized many of the embodiments of Dr. Mazzocco's inventions in California, having first obtained approval from the FDA for marketing the inventive deformable intraocular lens (IOL) and related small incision surgical products. Staar also negotiated a number of licenses involving the Mazzocco patent with other corporations, including CooperVision, Chiron Corporation, Allergan Medical Optics, Optical Radiation Corporation, and entered into a similar agreement with another organization, entitled the Cannon/Staar joint venture. All of the aforementioned organizations were headquartered in California at the respective times of contract, and remain so, with the exception of CooperVision, which now principally operates in Fort Worth, Texas, under the corporate umbrella of Alcon (D.I. 24).

      The March 1986 CooperVision license, based on the

Mazzocco patent and now the subject at issue, was negotiated between Staar and CooperVision in California, where both corporations were headquartered at the time. Subsequent to the March 1986 closing, a transfer of Licensed Technology was made by Staar employees from its Monrovia, California facility. As per the terms of their contract, California law controls any interpretation of the license (D.I. 24).

Alcon, a Delaware corporation with its principal place of business in Fort Worth, Texas, purchased the assets of Cooper's Surgical Business and acquired the CooperVision license under the terms of the Omnibus Agreement between Alcon Surgical, Inc. and The Cooper Companies, Inc., which closed in California on November 23, 1988 (D.I. 24). While contending that the Mazzocco patent is invalid and that its Acrysof® lenses (foldable intraocular lenses) are not covered by that patent, Alcon, in compliance with the licensing agreement, reports royalties on its quarterly sales of Acrysof® and Iogel lenses, although the company does not presently make out-of-pocket quarterly royalty payments because the first 3 million dollars ($3,000.000.00) in royalties under the Mazzocco patent license were prepaid. At the current rate of payment, the advance royalties will be depleted by December 31, 1995 (D.I. 26).

While Alcon's headquarters are in Texas, its major manufacturing facility for the lenses in issue is in Huntington, West Virginia. This facility makes all of the Acrysof®® lenses which Staar asserts are covered by the Mazzocco patent (D.I. 26).

The parties have identified a number of expected key

witnesses and their geographic locales in this patent infringement action. Alcon anticipates that several of its employees intimately familiar with the design, manufacture and marketing of the Acrysof® lenses will serve as witnesses. The company also believes that third-party witnesses, some of whom are experts in the field, will play a significant role. These witnesses are located in no particular portion of the United States, and include published physicians who will testify as experts about prior art in the area of the Mazzocco patent, as well as Staar's former president, Mr. Thomas Waggoner, who executed the Mazzocco patent license on Staar's behalf and currently resides in Arkansas (D.I. 26).

The majority of Staar's anticipated witnesses emanate from California, as does substantial documentation related to the action. Specifically, Dr. Mazzocco,[2] a renowned ophthalmic surgeon with an active hospital and patient practice in California, is expected to testify about the conception and development of the patent at issue, all of which occurred in California, as did the inventions' reductions to practice. California additionally serves as the site of those documents recording the evolution of the patent, as well as Staar's records concerning its licensing and receipt of royalties and the company's receipts regarding its technology and product sales. Also located in California are three of Staar's licensees under the Mazzocco patent, Chiron Corporation, Allergan Medical Optics and Optical Radiation Corporation (D.I. 24).

---

[2]    Dr. Mazzocco is not an employee of Staar (D.I. 24).

Staar anticipates requesting the testimony of several of its California-based employees, including Mr. John Wolf, its president and chief executive officer, who is a resident of California. Mr. Wolf has percipient knowledge regarding Staar's development efforts and its commercialization and licensing of ophthalmic products embodying the Mazzocco inventions, with the resultant revolution in the worldwide cataract surgical marketplace. Mr. Wolf also possesses extensive knowledge about the Cannon/Staar joint venture, a transaction which includes a license for the patent at issue. Records concerning the Cannon/Staar joint venture are located at Staar's Monrovia headquarters (D.I. 24).

Additional California-based employees whom Staar expects to serve as witnesses include: (1) Mr. Carl Manisco, vice-president of marketing and sales, who has knowledge about the success of Staar's less invasive surgical products used in the ophthalmic community and the continued growth in the company's product sales; (2) Mr. William C. Huddleston, Staar's chief financial officer, who is most knowledgeable about licenses granted by Staar to Alcon and other third parties, maintains and reviews all royalty reports and is also familiar with the operations of the Cannon/Staar joint venture; and (3) Mr. Thomas Chambers, Staar's director of research and development, who will likely testify about the Mazzocco patent and the licensed technology rights defined in the CooperVision license (D.I. 24).

## DISCUSSION

### Standard of Review for Motion to Transfer

7

Title 28, Section 1404(a) provides:

> For the convenience of the parties and the witnesses in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The preliminary consideration facing the Court in a motion to transfer is whether the transferee district is one in which the action "might have been brought." <u>Minstar, Inc. v. Laborde</u>, 626 F.Supp. 142 (D.Del. 1985). The Court has no discretion with regard to this jurisdictional issue. <u>Id</u>. However, if the Court finds that the transferee district is one in which the action could have originally been brought, it must then determine whether transfer to that district would be proper.

The determination of the appropriateness of the transfer of a case requires examination of the three remaining statutory criteria: (1) convenience to parties; (2) convenience to witnesses; and (3) interest of justice.[3]  <u>Id</u>. at 145; <u>Waste Distillation</u>

---

[3]    In <u>Jumara v. State Farm Ins. Co.</u>, the Third Circuit noted that courts have not limited their transfer analysis to the three enumerated factors in section 1404(a), instead considering a number of variants of the public and private interests protected by the statute. 55 F.3d 873, 879 (3rd Cir. 1995). Such public interests have included: the enforceability of the judgment; practical considerations which could make the trial expeditious, easy or inexpensive; court congestion in the two fora, with the resulting administrative difficulty; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.  <u>Id</u>.  The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (also limited to the extent that the documents could not be

<u>Technology, Inc. v. Pan American Resources, Inc.</u> 775 F.Supp. 759,
762 (D.Del. 1991).  "Because plaintiff's choice of forum is
accorded substantial weight, the burden is on the defendants to
establish that the balance of the convenience of the parties and
witnesses **strongly** favors the defendants." <u>Bergman v. Brainin</u>, 512
F.Supp. 972, 973 (D.Del. 1981) (citing <u>Shutte v. Armco Steel Corp.</u>,
431 F.2d 22, 25 (3rd Cir. 1970), <u>cert</u>. <u>denied</u>, 401 U.S. 910 (1971))
(emphasis added).  Indeed, the burden remains at all times on the
defendant to show that the balance of convenience *and* the interests
of justice weigh strongly in favor of transfer.  <u>SAS of Puerto Rico</u>
<u>v. Puerto Rico Telephone Co.</u>, 833 F.Supp. 450, 452 (D.Del. 1993).
The  court  has  broad  discretion  in  this  analysis.    <u>Waste</u>
<u>Distillation</u>, 775 F.Supp. at 762.  As the U.S. Supreme Court stated
in <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, section 1404(a) is
intended to place discretion in the district court to adjudicate
motions to transfer according to an "individualized, case-by-case
consideration of convenience and fairness."    487 U.S. 22, 29
(1988).

> **The action at issue could have been brought in the United
> States District Court for the Central District of
> California**

The general venue statute, as it pertains to corporate
defendants, provides that the defendant "shall be deemed to reside
in any judicial district in which it is subject to personal

---

produced in the alternative forum).  <u>Id</u>.  An additional private
interest considered is the availability of compulsory process over
unwilling witnesses.  <u>Hudson United Bank v. Chase Manhattan Bank</u>,
832 F.Supp. 881, 888 (D.N.J. 1991), <u>aff'd</u>, 43 F.3d 843 (3rd Cir.
1994) (citing <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1947)).

jurisdiction at the time the action is commenced." 28 U.S.C. §1391(c). The Federal Circuit has concluded that this definition of "reside" applies to the venue of patent and copyright cases, as provided by 28 U.S.C. §1400(b), and that the first test for venue under that section is therefore whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced.  See Amalia v. Conopco, Inc. and Kirker Chemical Corporation, 1995 WL 8055 (E.D. Pa. 1995).

In the case at bar, defendant's principal place of business is located in Monrovia, California, which is within the central district of California, as defined by the federal government for jurisdictional purposes. As such, and where it is undisputed that defendant was subject to personal jurisdiction in the aforementioned court at the time this action was commenced, personal jurisdiction requirements are satisfied and venue is proper in the United States District Court for the Central District of California. As is also required, subject matter jurisdiction additionally is satisfied in the aforementioned California federal court, given the nature of the action.

### Should the Action be Transferred under Section 1404?

#### Convenience to the Parties

It is well recognized that plaintiff's choice of a forum is paramount. Tuff-Torq Corp. v. Hydro-Gear LTD. Partnership, 882 F.Supp. 359, 362 (D.Del. 1994); Critikon Inc. v. Becton Dickinson Vascular Access, 821 F.Supp. 962, 964 (D.Del. 1993); Waste Distillation, 775 F.Supp. at 762; Willemijn Houdstermaatschaapij BV

10

v. Apollo Computer, Inc., 707 F.Supp. 1429, 1436 (D.Del. 1989). Such deference is accorded to plaintiff's forum choice when plaintiff has chosen his "home turf" as the forum for the lawsuit. According to the court in Kirschner Bros. Oil, Inc., v. Pannill, 'home turf' has been defined as "the forum closest to [plaintiff's] home in which plaintiff could affect personal jurisdiction over the principal defendant." 697 F.Supp. 804, 806 (D.Del. 1988). However, even if the selected forum is not plaintiff's "home turf," his choice of forum is still accorded substantial weight.

> While transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its 'home turf' or a forum where allegedly wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendant to show the balance of convenience and the interests of justice weigh strongly in favor of transfer.

In re ML-Lee Acquisition Fund II. L.P., 816 F.Supp. 973, 976 (D.Del. 1993). Thus, this degree of deference to plaintiff's choice will nonetheless apply, when the plaintiff has chosen the forum which is not its "home turf" for a legitimate, rational reason.

> Courts will not blindly prefer the plaintiff's choice of forum. The forum must reflect the plaintiff's rationale and legitimate concerns. The movant's burden is easier when the plaintiff has not brought suit on its home turf because the interest in litigation in a convenient forum is reduced....However, it is sufficient that the forum is near the plaintiff's place of business and/or that it is consistent with the plaintiff's legitimate concerns.

Waste Distillation, 775 F.Supp. at 764.

11

Staar argues that Delaware is not Alcon's "home turf" for the purposes of this action, where Alcon's headquarters are located in Fort Worth, Texas, with its key personnel and relevant records also at this site, as evidenced by that facility's generation of the Mazzocco patent royalty and licensing income reports directed to Staar. While Delaware is concededly the state of incorporation for both Staar and Alcon, it is not the site of the activities at issue and has no connection with any acts giving rise to the lawsuit, as all relevant events have occurred in California. Nor is Delaware's proximity to Alcon's West Virginia manufacturing facility of particular relevance, where the commercial success of Staar's patented invention and the method of implantation of the lenses in question, rather than the manufacturing process of the Acrysof® lenses produced by Alcon, are dispositive to the action (D.I. 28). Thus, Staar's sales records, located at its Monrovia, California headquarters, and the company's substantially California-based licensees bear greatest relevance to the patent issue, as would the testimony of Staar's California-based employees, including its president, marketing and sales vice-president, chief financial officer and director of research and development (D.I. 24).

In light of the aforementioned, Staar contends that Alcon's non-"home turf" forum choice must be accorded less deference. And, where Staar is located in California, the site of the Mazzocco patent's development and licensing agreements, and Alcon's Texas base is equidistant from Los Angeles and Delaware,

California is the more appropriate forum for this action (D.I. 24).

Alcon maintains that Delaware is its "home turf" for the purposes of this action,[4] where the company is incorporated in Delaware, with all the benefits and responsibilities which attach, and where its major intraocular lens manufacturing facility is in Huntington, West Virginia, a state far closer to Delaware than to California and therefore more accessible to Alcon's employees intimately involved with the production and marketing of the Acrysof® lenses.

Moreover, Alcon's choice of Delaware as its forum reflects rational and legitimate concerns, particularly the company's desire for efficient and expert resolution of the controversy. In support of this contention, Alcon cites this district's acceptance of new, streamlined pretrial procedures, which are embodied largely in Rule 26 of the Federal Rules of Civil Procedure and have been adopted *only in part* by the judges of the Central District of California,[5] this Court's high level of experience in patent cases and efficient management of its caseload,[6] and Alcon and Staar's incorporation in Delaware (D.I.

---

[4]    Alcon's forum choices are clearly limited, as Delaware and California appear to be the only states where Staar would be subject to personal jurisdiction.

[5]    Alcon notes that the U.S. District Court for the Central District of California has not adopted such new procedures as requirements for mandatory disclosure and early entry of a scheduling order to govern the case (D.I. 26).

[6]    Based on docket information taken from 1994 JUDICIAL BUSINESS OF THE UNITED STATE COURTS, Report to the Director, Alcon emphasizes that the judges in the Central District of California have a much larger civil docket backlog (approximately 80% more

26). In light of the aforementioned considerations, in addition to the modern technologies which would make testimony of Staar's employees less inconvenient,[7] Alcon asserts that its forum choice is entitled to paramount consideration, and that Staar has failed to meet the requisite burden for transfer of the action, where a shift in forum would simply shift the burden of inconvenience (D.I. 26).

As previously discussed, defendant bears the burden of showing that the balance of convenience weighs *strongly* in favor of transfer. SAS of Puerto Rico, 833 F.Supp. at 452. "[U]nless the balance of convenience of parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." Waste Distillation, 775 F.Supp. at 762 (emphasis in original). Thus, where transfer **merely shifts** the inconvenience from the defendant to the plaintiff, the motion should not be granted. Bergman, 512 F.Supp. at 973; Waste Distillation, 775 F.Supp. at 765. In the case at bar, the Court finds that Staar has met its burden, where

---

pending civil cases) than do the judges of this district. Furthermore, those California judges have, on average, over twice as many civil cases which have been pending for over three years as do the judges of the Delaware District (D.I. 26).

[7]    Alcon notes that Staar identifies only one non-employee, Dr. Mazzocco, as a potential witness. The remainder of Staar's anticipated witnesses are its employees. To this end, Alcon argues that Staar has overstated the burdens imposed upon its company were trial held in Delaware, where modern technology such as portable computers, fax machines and cellular telephones have eased the conduct of business away from home. For instance, the same technology that Staar's president, Mr. Wolf, uses in connection with his joint business venture in Japan, of which he also holds the title "president," will mitigate the inconvenience of his presence at trial in Delaware (D.I. 26).

14

the overwhelming amount of evidence, including documentation, relevant witnesses and the development and licensing of the patent in question, emanates from California.

A significant number of Staar's critical witnesses, including its president, will be expected to testify at length in this litigation. And, it is well recognized that the disruption of a defendant's on-going business activities is a relevant consideration in a motion to transfer. Rosen v. Fidelity, 1995 WL 560037 (E.D. Pa. 1995). Indeed, despite this district's acknowledgement that the factors of the convenience to both the parties and witnesses are somewhat antiquated in light of technological changes, courts have nonetheless found it appropriate to consider the prolonged absence of proposed witnesses in assessing the convenience of parties and witnesses. Tuff Torq Corp., 882 F.Supp at 363; Wesley-Jessen Corp. v. Pilkington Visioncare, Inc., 157 F.R.D. 215, 218-19 (D.Del. 1993); Burstein v. Applied Extrusion Technologies, Inc., 829 F.Supp. 106, 112 (D.Del. 1992). See also, Magee v. Essex-Tec. Corp., 704 F.Supp. 543, 548 (D.Del. 1988) (where witnesses were key employees of defendant, their prolonged absences would cause defendant severe financial hardship). Several of Alcon's employees may also offer significant evidence at trial. However, the Court finds that these employees are situated in both Alcon's West Virginia manufacturing facility and its headquarters in Texas, and, under the circumstances of this case, may incur minimal disruption to Alcon's operations. Indeed, those witnesses from Texas will have to travel regardless of the

forum. Where the development and licensing of the Mazzocco patent occurred in California under the auspices of Staar personnel, it is arguable that Staar, and not Alcon, will be obligated to provide the lion's share of evidence, including testimony, which strongly suggests that Alcon's business will be significantly less disrupted by the inconvenience of trial in California, versus the potentially more damaging financial hardship Staar would endure were trial held in Delaware.

The Court does not take the parties' incorporation in this state lightly. As a corporate citizen of Delaware, accepting the accompanying benefits such incorporation accords, defendant and its managers must have anticipated the possibility of litigation in this court. See, e.g., Tuff Torq Corp., 882 F. Supp. at 363; Critikon, 821 F.Supp. at 965; Waste Distillation, 775 F.Supp. at 766. However, incorporation in Delaware alone, as in the case at bar, will not necessarily prevent transfer, where a defendant demonstrates that "an alternate forum would be more convenient and would better serve the interests of justice because that forum, **and only that forum**, has substantial connections with the litigation." SAS of Puerto Rico, Inc., 833 F.Supp. at 453. In this instance, Staar has demonstrated that California is the appropriate forum, where it is the location of the inventor of the patent-in-suit, all work concerning the development and commercialization of the patent at issue, Staar's principal place of business and its trial witnesses, and Staar's other licensees under the Mazzocco patent. Moreover, the March 1986 CooperVision license, now at issue, was

16

negotiated between Staar and CooperVision in California and requires interpretation under that state's law. And, Alcon and Staar are current parties to a breach of contract suit involving the Mazzocco patent in a California state court.

### Convenience to the Witnesses

In order to demonstrate alleged inconvenience to witnesses, defendant must show the number of witnesses involved, the location of the witnesses, the materiality of the testimony and the importance of the witnesses to the defendant's business. See, e.g., Rosen v. Fidelity, 1995 WL 560037 (E.D. Pa. 1995); Salperto v. Pohlad, No. 93-167, 1994 WL 794756 (D.Del. 1994). Since the convenience of the parties, including their employee-witnesses, already has been addressed, the Court now focuses on third-party witnesses.

Staar's anticipated non-employee witnesses include Dr. Thomas Mazzocco, inventor of the patent-in-suit, and unidentified employees of three corporations currently licensed under the Mazzocco patent. Dr. Mazzocco, located in California, would testify about the patent's conception and development, which occurred in California, as did the inventions' reductions to practice. The three identified licensees, Chiron Corporation, Allergan Medical Optics and Optical Radiation Corporation, who would undoubtedly speak of the salient terms of their respective licenses, also are based in California (D.I. 24). In light of the concentration of these witnesses in California, and the business and personal inconvenience they (particularly Dr. Mazzocco) would

17

experience were trial held in Delaware, Staar argues that California is the more appropriate forum (D.I. 24).

Alcon disputes Staar's assertion, again arguing that transfer of the action to California would merely shift the burden of inconvenience to plaintiff, where its proposed expert witnesses, who would testify about relevant prior art to the Mazzocco patent, either reside in Massachusetts or abroad. In fact, Alcon purports that the balance of convenience among the various witnesses does not weigh substantially in favor of either party, offering as an example Thomas Waggoner, Staar's former president, who resides in Arkansas and would thereby be subject to significant travel regardless of the forum. Mr. Waggoner served as Staar's president when many of the significant events in this case occurred, including the execution of the Mazzocco patent on Staar's behalf, and is just as likely to be called as a witness by either party (D.I. 26).

The Court finds Staar's argument more persuasive, where several of the aforementioned witnesses critical to the respective cases of **both** parties are located in California and would be subject to subpoena power there. As these witnesses, including the other licensees to the patent, may not necessarily be motivated to testify voluntarily, compulsory power of the court may be a significant factor. Moreover, even previously cooperative witnesses may become reluctant participants where a trial in a distant state such as Delaware promises the incurrence of substantial, prolonged inconvenience.

Alcon's list of outside witnesses consists almost exclusively of experts in the field, admittedly located throughout the United States and abroad, and therefore favoring neither forum. However, in a patent infringement action under circumstances similar to the case at bar, where transfer was sought, the court accorded plaintiff's preference for expert witnesses located in its chosen forum little weight, where the infringing products were manufactured in another state and witnesses involved in the infringing activities were more available to both parties there. Max Planck v. General Electric Company, 858 F.Supp. 380, 383 (S.D.N.Y. 1994). See also, Cento Group, S.P.A. v. OroAmerica, Inc., 822 F.Supp. 1058 (S.D.N.Y. 1993) (convenience of expert witnesses not given great weight in determining whether to transfer venue).

### Interest of Justice

Courts accord this factor the greatest significance, and consider the cost of the litigation, access to proof, availability of compulsory process and economic use of judicial resources as components of the factor. See, e.g., Tuff Torq Corp., 882 F.Supp. at 364; Pall Corp. v. Bentley Laboratories, Inc., 523 F.Supp. 450, 453 (D.Del. 1981). When examining the interest of justice, "[t]he defendants are not required to make a positive showing on this point although a positive showing by plaintiffs might be determinative." Bergman, 512 F.Supp. at 974.

Staar argues that the vast majority of witnesses and documentation relevant to this case are located in California,

19

where the U.S. District Court for the Central District of California would be able to exercise compulsory process over potentially unwilling witnesses (such as the aforementioned three licensee corporations or Dr. Mazzocco, although Staar expects the doctor's cooperation in this matter). The Delaware court has no such power, and the significant distance between California and Delaware, with its concomitant impact on costs and time, could conceivably transform otherwise compliant witnesses into reluctant participants. Moreover, whereas Alcon is obligated to travel regardless of the resolution of this forum dispute, given the company's Texas base of operations, Staar is situated in California and would incur significantly less expense (including that generated by business disruption) if the trial were transferred to that state (D.I. 24).

Utilizing Alcon's aforementioned source of civil docket statistics, Staar purports that the likely time to trial is comparable in both districts. Staar's interpretation of the statistical data indicates that 66% of the cases in Delaware are pending less than one year, and 6.2% of the cases are pending more than three years, figures very analogous to the Central District of California's 66% of cases pending less than one year and approximately 7.1% of cases pending more than three years (D.I. 28).

However, while trial speed may be an inconclusive factor, public interest strongly favors transfer, where the contract under which Staar and Alcon are operating requires application of

20

California law, and the focus of controversy and substantially all of the events leading thereto are in California (D.I. 24).

Alcon maintains its position of the propriety of a Delaware forum, first arguing that the majority of expense generated by this action involves written motion practice, discovery, expert witnesses and trial preparation, pretrial factors which the physical location of the trial will not significantly affect. Thus, while at first blush it appears that California offers greater convenience due to the significant number of potential witnesses and relevant documents within the state, depositions may substantially alter its import, as would technological advances allowing immediate transfer of documentation to any trial location. The benefit of compulsory process available in California likewise is diminished where the majority of those California-based individuals potentially testifying are employees of Staar and therefore likely to be *voluntary* witnesses.

In light of the aforementioned considerations, efficient pretrial procedure, which Alcon contends that this Court has adopted and more effectively employs, is critical to both the cost of the litigation and the economic use of judicial resources. According to Alcon, it is axiomatic that the longer it takes to get the case to trial, the more depositions will be taken, with concomitant expense generated.[8]   Speedy resolution of the issue, which is more likely to occur in this Court, is of benefit to both

---

[8]     Alcon emphasizes that the proceeding to date has been marked by delay and extensions, instigated by Staar.

parties and certainly in the interest of justice.

While the Court finds merit in the respective arguments of both parties, it is persuaded that the interest of justice favors transfer of this action to California. Certainly with regard to the expense of litigation, it is more cost effective for the parties to argue the case in California, the site of the focus of controversy and substantially all of the events leading thereto,[9] and where Staar's business and a significant number of critical, employee and non-employee witnesses are based. While Delaware is more proximal to Alcon's manufacturing facility in West Virginia, where a few employee-witnesses are located, that proximity is outweighed by the considerable expense both parties would incur to shift what is essentially a California-based action to Delaware.

With regard to the factor of access to proof, Alcon is correct that technological advances such as computers, modems, facsimile machines, videotapes and express mail services have substantially reduced the burden of having to litigate in a distant forum. See, e.g., Wesley-Jessen Corp., 157 F.R.D. at 218 (D.Del. 1993). "Where documents can be transported and/or easily photocopied, their location is entitled to little weight." In re Laidlaw Securities Litigation, 1991 WL 170837 at *2 (E.D.Pa. 1991). Moreover, the location of documents, in the context of access to proof, may be misleading. Critikon, 821 F.Supp. at 966. As the

---

[9]    As previously discussed, California law controls interpretation of the terms of the Staar-CooperVision license, now transferred to Alcon.

court in <u>Critikon</u> noted, no matter where the trial is held, both plaintiff and defendant's counsel will be required to travel to various states to select and produce the requested discovery, and documents will be copied and mailed to the respective offices of counsel and subsequently transported to trial. <u>Id</u>. at 966-67. However, all of the aforementioned notwithstanding, it is the California court, rather than that in Delaware, which maintains compulsory process over several of both the employee **and** non-employee witness critical to both sides of this action, a legality which technological advances cannot alter.[10]

The final factor for consideration in the interest of justice is the economic use of judicial resources, such as the speedy resolution of the issue at hand. While each party claims that court management statistics favor its respectively-chosen forum,[11] this Court finds that the median time for both filing to disposition and filing to trial is comparable in California and Delaware, and therefore not dispositive in either party's favor.[12] Moreover, "[a]lthough the congestion of court dockets may be

---

[10]    According to Federal Rule of Civil Procedure 45(e)(1), subpoena power within the district extends to 100 miles from the place of a hearing or trial.

[11]    The scheduled date for trial of this action in Delaware is in June 1997. It is unknown when this case would be heard in the Central District of California.

[12]    According to 1994 Federal Court Management Statistics from the Administrative Office of the United States Courts, the median time from filing to disposition of a civil action in Delaware is 9 months, and the median time from filing to trial of a civil action is 16 months. In the Central District of California, those respective time frames are 6 months and 18 months.

23

evaluated in a motion to transfer, it is not a factor worthy of great weight." Rosen v. Fidelity, 1995 WL 560037 at *7. Indeed, a "backlog of cases is insufficient to prevent a §1404(a) transfer which is otherwise *mandated* by the convenience of the parties and the witnesses." Minstar, 626 F.Supp. at 148 (emphasis added).

While court congestion may not be dispositive in a motion to transfer under the aforementioned specific circumstances, the amount of time and resources already invested in a case is generally significant. However, in the case at bar, this consideration is not prohibitive of transfer, where the parties have engaged in limited discovery only to this point, and thus neither the parties nor the Court has expended substantial time and resources on this action to date.

Thus, in summary, although *some* of the aforementioned factors appear to favor defendant's argument for transfer, with the other factors neutral on the point, defendant is not required to make a positive showing on this issue, and the Court is persuaded by the evidence discussed herein that the overall interest of justice is best served by transfer of this action to the Central District of California.

**CONCLUSION**

In conclusion, for the reasons contained herein, I recommend that Staar's motion for transfer this action to the Central District of California be **GRANTED**.

The appropriate Order consistent with this Report and Recommendation shall follow.

24

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ALCON LABORATORIES, INC.,          :
                                   :
                 Plaintiff,        :
                                   :
      v.                           :        Civil Action No. 95-233-LON
                                   :
STAAR SURGICAL COMPANY,            :
                                   :
                 Defendant.        :

### ORDER

For the reasons set forth in the Magistrate's Report and Recommendation entered in this case on this date,

IT IS ORDERED that the Clerk shall mail a copy of the Magistrate's Report and Recommendation and this Order to Edward M. McNally, Esquire and Richard H. Morse, Esquire with notice that any objections thereto must be filed within ten days after service of the same.

Dated: *October 26, 1995*        _____
                                 UNITED STATES MAGISTRATE-JUDGE

# EXHIBIT F



Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2003 WL 402649 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

---

C

Briefs and Other Related Documents

Findwhat.Com    v.    Overture    Services, Inc.S.D.N.Y.,2003.Only the Westlaw citation is currently available.

United States District Court,S.D. New York.

FINDWHAT.COM, Plaintiff,

v.

OVERTURE SERVICES, INC., Defendant.

No. 02 Civ. 447(MBM).

Feb. 21, 2003.

**Background:** Corporation sought declaratory judgment of noninfringement of competitor's patent for pay-for-performance Internet search engine, on grounds of invalidity and unenforceability. Competitor moved to dismiss, or in the alternative, for transfer.

**Holdings:** The District Court, Mukasey, J., held that:

(1) case or controversy requirement was satisfied, and

(2) transfer was appropriate after weighing factors of residence of inventors and location of documents.

Motion to transfer granted.

**[1] Declaratory Judgment 118A ☞234**

118A Declaratory Judgment
    118AII Subjects of Declaratory Relief
        118AII(L) Patents
            118Ak231 Patents
                118Ak234 k. Claim of Infringement as Condition Precedent. Most Cited Cases
Case or controversy requirement was satisfied in corporation's action against competitor seeking declaration of non-infringement of patent, based on allegation that competitor's vice president had asserted in conversation with corporation's executive that corporation was already infringing patent. U.S.C.A. Const. Art. 3, § 2; 28 U.S.C.A. §§ 1338(a), 2201 et seq.

**[2] Federal Courts 170B ☞110**

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in Proper Forum
                170Bk106 Determination in Particular Transferable Actions
                    170Bk110 k. Patents, Copyrights and Trade Regulation. Most Cited Cases
District court in New York would transfer action seeking declaration of non-infringement of patent, to California district hearing patent infringement action between same parties, even though pending California action was later-filed; all 10 inventors listed in patent resided in California while executive of alleged infringer would have to travel significant distance regardless of venue, patent owner was headquartered in California and relevant documents were located there, development of invention had occurred in California, and licensing negotiation meeting between parties had occurred in California. 28 U.S.C.A. § 1404(a).

Robert Neuner, James J. Maune, Paul D. Ackerman, Baker Botts, New York, NY, for Plaintiff.

William H. Frankel, David S. Fleming, Jason C. White, Brinks Hofer Gilson & Lione, Chicago IL, for Defendant.

Margot J. Metzger, Thomas J. Schell, Bryan Cave LLP, New York, NY, for Defendant.

OPINION AND ORDER

MUKASEY, J.

*1 Plaintiff FindWhat.com ("FindWhat") sues its competitor Overture Services, Inc. ("Overture") under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (2000), asking for a declaration of invalidity, unenforceability, and noninfringement for U.S. Patent No. 6,269,361 ("the '361 patent"); an injunction against Overture's taking any further legal action concerning alleged infringement of the patent; and costs and fees. Defendant moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) or alternatively to transfer to the Central District of California pursuant to 28 U.S.C. § 1404(a) (2000). Defendant further moves to dismiss plaintiff's claim for a declaration of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 402649 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

unenforceability based on inequitable conduct pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6); to strike various paragraphs of plaintiff's First Amended Complaint pursuant to Fed.R.Civ.P. 9(b) and 12(f); and to order plaintiff to provide a more definite statement of its inequitable conduct allegations pursuant to Fed.R.Civ.P. 12(e). For the reasons set forth below, the motion to dismiss pursuant to Rule 12(b)(1) is denied without prejudice to renewal in the Central District of California, and the motion to transfer is granted. Because this action will be transferred to the Central District of California, I do not address defendant's other motions.

I.

Plaintiff FindWhat is a Nevada corporation that is headquartered in New York, with technical operations based in Florida. (Pisaris-Henderson Decl. ¶ 2) FindWhat is in the business of selling services related to its "proprietary pay for performance Internet search engine." (First Am. Compl. ¶ 1) Defendant Overture, formerly known as GoTo.com ("GoTo"), is a California corporation that is headquartered in a 500-person office in Pasadena, California, but also has a six-person advertising field office in the Southern District of New York. (Id. ¶ 2; Metzger Decl. ¶¶ 2, 3; Ryan Decl. ¶ 6) In promotional material, Overture describes itself as "an international corporation with offices in Pasadena, New York, San Francisco and London." (FindWhat's Mem. Opp'n Mot. to Dismiss or Transfer Ex. 1) FindWhat and Overture compete in "the pay for performance search engine market sector." (First Am. Compl. ¶ 9) A pay-for-performance search engine lists "results ... in an order that is determined, among other things, by how much the advertiser is willing to pay the service provider in the event a user selects its listing." (FindWhat's Mem. Opp'n Mot. to Dismiss or Transfer at 2)

FindWhat alleges that by January 19, 1998, GoTo was already using the system and services described in the '361 patent and had attracted 1000 advertisers. (First Am. Compl. ¶ 19) Several of these advertisers appear to be headquartered in the Southern District of New York. (Ackerman Decl. ¶ 11-14, Exs. 2-7)

On July 20, 1999, Emilia F. Cannella, counsel to GoTo, wrote to Robert Brahms of BeFirst Internet Corp. ("BeFirst"), now a subsidiary of FindWhat, to note that GoTo had applied for "comprehensive patent rights concerning its 'pay for placement' business model and features thereof," that GoTo would be monitoring BeFirst, and that it would "seek to enforce its patent rights against infringers upon issuance of its patent." (First Am. Compl. Ex. 2) The letter was forwarded also to the United States Patent and Trademark Office, which was at that time considering what would become the '361 patent. (Ackerman Decl. ¶ 3) On April 3, 2000, outside counsel for GoTo James P. Naughton wrote to his counterpart for FindWhat, Leonard D. Steinman, stating that the U.S.P.T.O. had granted GoTo's patent filing "expedited status due to the existence of potential infringements." (FindWhat's Mem. Opp'n Mot. to Dismiss or Transfer Ex. 4)

*2 Later that month, on July 31, 2001, the U.S.P.T.O. issued the '361 patent, entitled "System and Method for Influencing a Position on a Search Result List Generated by a Computer Network Search Engine," with GoTo.com identified as the assignee of the entire interest in and to the patent. (First Am. Compl. Ex. 1) Earlier, in a declaration in support of a petition to expedite consideration of the proposed '361 patent, inventor Darren J. Davis had asserted that FindWhat's product would infringe the patent, if granted. (FindWhat's Mem. Opp'n Mot. to Dismiss or Transfer Ex. 3, ¶¶ 6(c)-(d), 7(e), 8, 11)

On August 3, 2001, FindWhat listed the threat of litigation from Overture as a risk factor in its 10-QSB quarterly SEC report. (Pisaris-Henderson Decl. ¶ 8)

On November 27, 2001, Overture wrote to FindWhat concerning a potential license of the '361 patent. (First Am. Compl. ¶ 11) Discussions commenced, and, during those discussions, FindWhat alleges, Overture's vice president of business affairs, Joshua Metzger, asserted in a conversation with FindWhat COO Phillip R. Thune that FindWhat was infringing the '361 patent. (Id. ¶ 12; Thune Decl. ¶ 9) Later, at a meeting held on January 10, 2002, Overture set out licensing terms that FindWhat found "financially and structurally oppressive" and "unreasonable" and, ac-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 402649 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

cording to FindWhat, stated that FindWhat must comply with those terms within two weeks or present a substantially similar counteroffer. (First Am. Compl. ¶ 13; Pisaris-Henderson Decl. ¶ 17) Overture does not characterize this two-week date as an ultimatum, but instead as an agreed-upon time for a counterproposal by FindWhat and further discussion of the matter. (Metzger Decl. ¶ 9) At that meeting, FindWhat President and CEO Craig Pisaris-Henderson gave Metzger a business card and informed him that he maintained his office in Florida. (Id. ¶ 8, Ex. B)

FindWhat filed its initial complaint seeking a declaratory judgment on January 17, 2002, two weeks after the meeting. A few days later, on January 21, 2002, Pisaris-Henderson tried to contact Meisel in an attempt at "an alternate course to find a business resolution." (Pisaris-Henderson Decl. ¶ 22) Meisel asked Metzger to follow up on the call. (Metzger Decl. ¶ 11) Pisaris-Henderson refused to speak with Metzger, saying that he would only speak with Meisel. (Id.) On January 25, 2002, eight days after FindWhat filed its action, Overture countered by filing a patent infringement suit in the Central District of California. (Mem. Supp. Def. Overture's Mot. to Dismiss or Transfer at 3) In that Court, Judge George H. King has deferred any further action until this court rules on the motions before it. (Ackerman Decl. ¶ 16) Judge King has indicated that he will likely dismiss the action before him if I deny Overture's motions to dismiss and to transfer. (Id. ¶ 17)

Overture has informed this court that Thune has publicly announced that FindWhat is moving its headquarters to Florida. (Frankel Letter of 8/7/02) FindWhat calls to my attention that Overture recently brought a case against the search engine company Google in the Central District of California, unsuccessfully tried to get it assigned to Judge King's docket, and eventually withdrew it voluntarily and refiled in the Northern District of California. (Ackerman Letter of 8/14/02)

II.

*3 FindWhat asserts subject-matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (2000), and the federal patent laws, pursuant to 28 U.S.C. § 1338(a) (2000). Overture moves to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) or alternatively to transfer. Before a district court can consider a motion to transfer, it must determine whether it has subject-matter jurisdiction. Levitt v. Md. Deposit Ins. Fund Corp., 643 F.Supp. 1485, 1489 n. 3 (E.D.N.Y.1986); United States ex rel. Jimenez v. Conboy, 310 F.Supp. 801, 802 (S.D.N.Y.1970) (Weinfeld, J.) ("The defect here is not merely one of improper venue, but of lack of subject matter jurisdiction, which is fundamental and cannot be disregarded.")

The Declaratory Judgment Act does not expand the scope of the case or controversy requirement. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." Id. at 240-41. "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character...." Id. at 241. When a plaintiff seeks a declaration that its product does not infringe a patent, the Federal Circuit has established a two-pronged test to determine whether there is a justiciable controversy. "First, the plaintiff must actually produce or be prepared to produce an allegedly infringing product.FN1 Second, the patentee's conduct must have created an objectively reasonable apprehension on the part of the plaintiff that the patentee will initiate suit if the activity in question continues." EMC Corp. v. Norand Corp., 89 F.3d 807, 811 (Fed.Cir.1996). The plaintiff has the burden to establish the second prong by a preponderance of the evidence. See Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 887 (Fed.Cir.1992). The Federal Circuit's test is applied to the facts as they were at the time when the complaint was filed. Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed.Cir.1988)

> FN1. Overture does not dispute the fact that FindWhat could meet this prong of the EMC test.

[1] "If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 402649 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

*Id.* at 736. In this case, plaintiff has twice alleged that Metzger, Overture's vice president of business affairs, asserted in a conversation with FindWhat COO Thune that FindWhat was infringing the '361 patent. (First Am. Compl. ¶ 12; Thune Decl. ¶ 9) Overture does not expressly deny this claim. In his declaration, Metzger claims merely to have given Thune "an overview of the license terms that Overture was offering." (Metzger Decl. ¶ 7) I find that Overture has expressly charged FindWhat with infringement. *See Applexion S.A. v. Amalgamated Sugar Co.,* No. 95 C 858, 1995 WL 229049 (N.D.Ill. Apr.17, 1995) (finding an express charge of infringement).

*4 Overture argues that the negotiations between itself and FindWhat provide evidence that FindWhat did not suffer under a reasonable apprehension of an infringement suit. It cites *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,* 57 F.3d 1051 (Fed.Cir.1995), in which the Federal Circuit said that "[w]hen there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken down," *id.* at 1053. However, the case before me is distinguishable from *Phillips* in that there has been an express charge of infringement here.

Thus, following *Arrowhead,* I find based on what is now in the record that there is an actual controversy and that this court has subject-matter jurisdiction over the case. I therefore deny Overture's motion to dismiss pursuant to Rule 12(b)(1), but I do so without prejudice to renewal of the motion in the Central District of California, to where this action will be transferred for the reasons explained below.[FN2]

> FN2. I also will not exercise my discretion to decline jurisdiction over this declaratory judgment action, as Overture has requested that I do. In reviewing the parties' submissions, I have seen no reason to limit FindWhat's access to a declaratory judgment if it can prove its case.

### III.

[2] Overture has moved, pursuant to 28 U.S.C. § 1404(a), for an order transferring this action to the Central District of California. In the Federal Circuit, the first-filed rule, which states that an action will normally remain in the jurisdiction in which it was first filed, is the norm, but it has exceptions. *Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081 (Fed.Cir.1989). "To overcome the preference for the forum of the first-filed suit, a sound reason must exist that would make it unjust or inefficient to continue the first-filed action." *Bank of Tokyo-Mitsubishi, Ltd. v. J.A. Jones, Inc.,* No. 98 Civ. 2494, 1998 WL 283355, at *2 (S.D.N.Y. May 29, 1998).

Overture offers several reasons to depart from the first-filed rule. In one, it accuses FindWhat of forum shopping and asks this court to transfer on those grounds. However, in order for transfer to be proper as an antidote to forum shopping, Overture would have to prove that forum shopping was the "sole reason" that FindWhat brought its action here. *See Novo Nordisk of N. Am., Inc. v. Genentech, Inc.,* 874 F.Supp. 630, 632 (S.D.N.Y.1995). Overture cannot prove any such thing in this case. FindWhat's corporate headquarters are in New York, which represents a perfectly good reason, not necessarily related to forum shopping, for it to have brought its action here.

Overture argues that the difference in time between the filing of the two actions, only eight days, weakens the force of the first-filed rule. That is not the case under the law of the Federal Circuit. *Genentech,* 998 F.2d at 938 ("However, the rule favoring the right of the first litigant to choose the forum, absent countervailing interests of justice or convenience, is supported by '[reasons] just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between the suits.' " (quoting *Crosley Corp. v. Westinghouse Electric & Manufacturing Co.,* 130 F.2d 474, 475 (3d Cir.1942))), *abrogated on other grounds by Wilton v. Seven Falls Co.,* 515 U.S. 277, 289, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

*5 Overture argues also that the lack of progress in either action mitigates the effect of the first-filed rule. Indeed, Judge King has deferred any further action in the infringement case until my decision on these motions. Because "[a] lack of progress in either litigation may also warrant an exception to the first-filed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 5
Not Reported in F.Supp.2d, 2003 WL 402649 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

rule," *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.,* 119 F.Supp.2d 433, 441 (S.D.N.Y.2000), I will take this factor into consideration in deciding whether to make an exception to the first-filed rule.

To determine whether the first-filed rule should be set aside in this case, I employ the same nine-factor interest analysis used to decide a convenience transfer motion under 28 U.S.C. § 1404(a). *See 800-Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 133 (S.D.N.Y.1994). The factors are as follows:
(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* at 133.

Convenience of witnesses is "perhaps the most important consideration of a Section 1404(a) motion." *Invivo,* 119 F.Supp.2d at 437 (quoting *Garrel v. NYL-Care Health Plans, Inc.,* No. 98 Civ. 9077, 1999 WL 459925, at *5 (S.D.N.Y. June 29, 1999) (internal quotation marks omitted)). This factor tips heavily in Overture's factor. All ten inventors listed in the '361 patent reside in the greater Los Angeles area. (Ryan Decl. ¶ 3) Additionally, Pisaris-Henderson has an office in Florida, so he will have to travel a significant distance regardless of whether this case is heard here or in California. (Metzger Decl. ¶ 8, Ex. B) FindWhat is headquartered in New York. It asserts also that it will need to examine Overture's advertisers to prove its claim that Overture's prior public use and sale of the claimed invention more than one year prior to the filing of the patent invalidates the patent. Many of these advertisers are located in New York. (Ackerman Decl. ¶¶ 11-14, Exs. 2-7) However, because Overture has named ten specific witnesses with personal knowledge of the details of the patent and its prosecution-the ten inventors-and because the patent

is central to both cases, convenience of the witnesses weighs heavily in favor of transfer.

The location of relevant documents and the relative ease of access to sources of proof also favors Overture, which is headquartered in California. It asserts that all documents relating to the invention and all ancillary documentation for communications with advertisers are located at headquarters. (Ryan Decl. ¶ 4) Given the importance of the patentee's documents in cases like this one, *see Riviera Trading Corp. v. Oakley, Inc.,* 944 F.Supp. 1150, 1159 (S.D.N.Y.1996), this factor favors Overture.

**\*6** The convenience of the parties does not weigh heavily in either party's favor. Overture is headquartered in California with a small sales office in New York, and FindWhat is headquartered in New York but has an office in Florida where its president and CEO works. Thus, each party would be inconvenienced to some degree by having to travel to the forum of the other party's choosing.

Considering the locus of operative facts suggests that California would be the more appropriate forum. In infringement cases, the operative facts usually relate "to the design, development, and production of a patented product." *Invivo,* 119 F.Supp.2d at 439. The same would seem to be true for this declaratory judgment action. The development of the invention took place in California. Furthermore, the licensing negotiation meeting in this case also took place at Overture's headquarters in California. (Metzger Decl. ¶ 8)

The availability of process to compel the attendance of witnesses also weighs in Overture's favor. Five of the ten inventor witnesses it has identified are no longer employed by Overture (Ryan Decl. ¶ 3) and are thus non-parties. Because they live in California (*id.*), they may be unwilling to travel to New York for judicial proceedings. FindWhat has not been as specific in naming and locating its non-party witnesses.

FindWhat asserts that Overture has reported earnings and profits over ten times larger than its own. (Pisaris-Henderson Decl. ¶ 3) However, although Overture's means may be greater than FindWhat's,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                  Page 6
Not Reported in F.Supp.2d, 2003 WL 402649 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

neither party's means are so minimal as to make this factor relevant. *See Computer Generated Solutions, Inc. v. L'Koral Inc.,* No. 97 Civ. 6298, 1999 WL 14012, at *2 (S.D.N.Y. Jan. 14, 1999). The forum's familiarity with the governing law is also immaterial here, because all federal district courts are assumed to be equally familiar with federal patent law. *Recoton Corp. v. Allsop, Inc.,* 999 F.Supp. 574, 578 (S.D.N.Y.1998).

Turning to the eighth factor, I do put weight in the plaintiff's choice of forum, but it must be balanced against the other interests discussed in this section. Finally, examination of trial efficiency and the interests of justice, based on the totality of the circumstances, a catch-all factor, adds nothing new to the analysis.

Based on all nine of the factors above, and also taking into account the lack of progress in both cases, I find that there is sufficient reason to depart from the general rule favoring the forum of the first-filed action. The convenience of witnesses and the location of documents are particularly persuasive in this regard. Therefore, Overture's motion is granted, and this action will be transferred to the Central District of California, pursuant to 28 U.S.C. § 1404(a). Because the case will proceed in another district, I will not rule on any of Overture's remaining motions.

For the reasons set forth above, the motion to dismiss pursuant to Rule 12(b)(1) is denied without prejudice to renewal in the Central District of California, and the motion to transfer is granted. The Clerk will transfer the case to the Central District of California.

S.D.N.Y.,2003.
Findwhat.Com v. Overture Services, Inc.
Not Reported in F.Supp.2d, 2003 WL 402649 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:02cv00447 (Docket) (Jan. 17, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.